**DAVIS WRIGHT TREMAINE LLP**
865 S. FIGUEROA ST.
SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
TELEPHONE (213) 633-6800
FAX (213) 633-6899

KELLI L. SAGER (State Bar No. 120162)
  kellisager@dwt.com
KAREN A. HENRY (State Bar No. 229707)
  karenhenry@dwt.com
COLLIN J. PENG-SUE (State Bar No. 302227)
  collinpengsue@dwt.com

Attorneys for Defendants
UNIVERSAL CITY STUDIOS LLC,
BLUMHOUSE PRODUCTIONS, LLC,
OVERLORD PRODUCTIONS, LLC,
PLATINUM DUNES PRODUCTIONS,
WHY NOT PRODUCTIONS, INC., and
JAMES DEMONACO

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS JORDAN-BENEL, an individual,<br><br>                    Plaintiff,<br><br>        vs.<br><br>UNIVERSAL CITY STUDIOS LLC, a Delaware corporation; UNITED TALENT AGENCY, INC., a California corporation; BLUMHOUSE PRODUCTIONS, LLC, a Delaware Limited Liability Company; OVERLORD PRODUCTIONS LLC, a California Limited Liability Company; PLATINUM DUNES PRODUCTIONS, a California Corporation, WHY NOT PRODUCTIONS, INC. d/b/a WHY NOT FILMS, a Nevada Corporation; JAMES DEMONACO, an individual; and DOES 1 to 50, inclusive,<br><br>                    Defendants. | Case No. **14-cv-05577-MWF-MRW**<br>Assigned to Hon. Michael W. Fitzgerald<br><br>**FILM DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[**FED. R. CIV. P. 12(b)(6)**]<br><br>Hearing Date:  May 18, 2015<br>Time:            10:00 a.m.<br>Courtroom:    1600<br><br>[Motion To Strike (FRCP (12(f)); Special Motion To Strike (C.C.P. § 425.16); Request For Judicial Notice; Notice Of Lodging With Exhibits I-J; and Declaration Of Karen A. Henry With Exhibits A-H, K Filed Concurrently]<br><br>Action Filed: July 17, 2014 |

MOTION TO DISMISS
DWT 25549061v12 0020040-000121

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 18, 2015, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Michael W. Fitzgerald of the United States District Court for the Central District of California, in Courtroom 1600 of the Spring Street Courthouse, located at 312 N. Spring Street, Los Angeles, California 90012, defendants Universal City Studios LLC ("Universal"), Blumhouse Productions, LLC ("Blumhouse"), Overlord Productions, LLC ("Overlord"), Platinum Dunes Productions ("Platinum Dunes"), Why Not Productions, Inc. ("WNP"), and James DeMonaco ("DeMonaco") (collectively the "Film Defendants"), will and hereby do move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing with prejudice Plaintiff's Second Amended Complaint ("SAC") and its First, Second, Fourth, and Fifth Claims For Relief against the Film Defendants.[1] This Motion is made on the following grounds:

1.    Plaintiff's First and Second Claims for Relief for copyright infringement against the Film Defendants should be dismissed because Plaintiff has failed to allege facts that, if proven, would establish that any of them had access to his screenplay titled "Settler's Day" (the "Screenplay"), which is the subject of his infringement claims.  Plaintiff does not allege any direct contact with any of the Film Defendants; instead, he asserts a convoluted theory of "access" based on the submission of his Screenplay to two men who were employed at the same talent agency (UTA) as the talent agent who represented defendant DeMonaco.  SAC ¶¶ 22, 31.  But the law does not support a finding of "access" based on this kind of bare corporate receipt, particularly involving a third party.  See Section III(A), infra.

2.    Plaintiff's Fourth Claim for Relief for breach of implied-in-fact contract against DeMonaco and WNP also should be dismissed because Plaintiff has failed to

---

[1] The Third Claim For Relief is only alleged against defendant United Talent Agency ("UTA"), which is separately represented.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

adequately plead facts that, if proven, would meet his burden of demonstrating that DeMonaco or WNP had access to his Screenplay.  Plaintiff's theory of access for this claim is the same second-hand, roundabout theory alleged for his copyright claims, and is similarly inadequate for his implied contract claim.  See Section III(A), infra.[2]

3.   Plaintiff's Fourth Claim for Relief for breach of implied-in-fact contract against DeMonaco and WNP should be stricken for the independent reason that Plaintiff has failed to plead facts that, if proven, would meet his burden of demonstrating the necessary elements of a claim for breach of an implied contract:[3]

a.   Plaintiff has not pleaded facts establishing any privity between him, on the one hand, and DeMonaco or WNP, on the other hand; nor has he pleaded facts sufficient to show that the two UTA employees to whom Plaintiff's manager allegedly submitted the Screenplay had any authority to bind DeMonaco and/or WNP to contractual obligations. See Sections III(B)(1)-(3), infra.

b.   Plaintiff also has failed to plead facts sufficient to establish the other required elements for an implied-in-fact contract claim, including a mutual understanding about the purpose for and conditions upon which he was submitting his Screenplay.  This deficiency is especially glaring where, as here, the purported submission was not to DeMonaco or

_____

[2] See also Film Defendants' concurrently-filed Special Motion To Strike (C.C.P. 425.16) ("SLAPP Motion").  Plaintiff also has attempted to add a new theory of "access" in his SAC, in violation of this Court's order granting limited leave to amend. Dkt. No. 26 at 6.  He now claims that his Screenplay also was submitted to a literary agent who previously had some kind of unspecified "working relationship" at some unspecified time with two other defendants, Universal and Platinum Dunes. SAC at ¶ 41.  Even if this improper new pleading is allowed, it is even more absurdly attenuated than Plaintiff's original claim of "access," and should be rejected.  See Section III(A), infra; see also Film Defendants' Motion To Strike Portions Of Plaintiff's SAC (F.R.C.P. 12(f) ("12(f) Motion")).  The Film Defendants incorporate by reference the arguments and authorities included in their SLAPP Motion and 12(f) Motion.

[3] If the Court grants the SLAPP Motion, it need not reach the arguments presented here concerning the Fourth and Fifth Claims For Relief.

MOTION TO DISMISS
DWT 25549061v12 0020040-000121

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

WNP, or even to an agent at UTA who represented either of them. There is not – nor could there be – any claim that Plaintiff submitted his Screenplay to the two agents at UTA with the express intention of "selling" it to DeMonaco or WNP.  Nor is there any allegation that the two UTA agents to whom the Screenplay was submitted voluntarily accepted it with the understanding that they were thereby binding DeMonaco and WNP to an implied contract.  See Section III(B)(4), infra.

4.      Plaintiff's Fifth Claim for Relief against the Film Defendants for declaratory relief should be stricken:[4]

a.      This entire claim is based on the same deficient allegations as Plaintiff's other claims; and

b.      Plaintiff's demand for a writing "credit" on the Film is a disguised reverse-passing-off claim that is barred by controlling United States Supreme Court authority.

c.      To the extent this claim is not intended to allege a reverse-passing-off claim, it is preempted by federal copyright law.  See Section III(C), infra.

For each of these reasons, this Court should grant the Film Defendants' Motion in its entirety, and dismiss Plaintiff's Second Amended Complaint against these defendants with prejudice.[5]

This Motion is based on this Notice; on the attached Memorandum Of Points And Authorities; on the concurrently-filed Declaration Of Karen A. Henry With Exhibits A-H, K; on the concurrently-filed Request For Judicial Notice; on the

---

[4] See note 2, supra.

[5] Plaintiff already has filed two amended pleadings.  Having failed three times to plead a valid claim against the Film Defendants, his lawsuit against them should be dismissed with prejudice.

MOTION TO DISMISS
DWT 25549061v12 0020040-000121

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

concurrently-filed Notice Of Lodging With Exhibits I-J; on any other matters of which this Court may take judicial notice; on all pleadings, files and records in this action; and on such argument as may be received by this Court at the hearing on this Motion.

This Motion is made following the conference of counsel that occurred on March 5, 2015, pursuant to Local Rule 7-3.  See Henry Decl. ¶¶ 2-3.

DATED: March 13, 2015                    DAVIS WRIGHT TREMAINE  LLP
                                         KELLI L. SAGER
                                         KAREN A. HENRY
                                         COLLIN J. PENG-SUE


                                         By: /s/  Kelli L. Sager
                                                  Kelli L. Sager

                                         Attorneys for Defendants
                                         UNIVERSAL CITY STUDIOS LLC,
                                         BLUMHOUSE PRODUCTIONS, LLC,
                                         OVERLORD PRODUCTIONS, LLC,
                                         PLATINUM DUNES PRODUCTIONS,
                                         WHY NOT PRODUCTIONS, INC., and
                                         JAMES DEMONACO

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF CONTENTS

Page

I.    SUMMARY OF ARGUMENT ........................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND .................................. 3

III.  PLAINTIFF'S SECOND AMENDED COMPLAINT FAILS TO STATE FACTS SUFFICIENT TO SUPPORT ANY CLAIM FOR RELIEF. .................................................................................. 4

    A.   Plaintiff's Claims Fail Because He Does Not Plausibly Allege That Any Film Defendant Had Access To His Screenplay ................. 5

        1.   Plaintiff Has The Burden Of Proving That The Film Defendants Had Access To His Screenplay ............................ 5

        2.   Allegations Of Bare Corporate Receipt Cannot Give Rise To An Inference Of Access ..................................... 8

    B.   Plaintiff Has Failed To Allege Facts Adequate To State A Claim For Breach Of Implied-In-Fact Contract. ............................... 12

        1.   Plaintiff  Did Not Allege Privity With DeMonaco Or WNP ........................................................................ 14

        2.   Plaintiff Has Failed to Allege An Agency Relationship Between UTA and DeMonaco Or WNP That Is Sufficient To Establish Privity .......................... 16

        3.   Plaintiff Cannot Evade Dismissal By Omitting Facts From His SAC. ............................................... 19

        4.   Plaintiff's Claims Fails Because His SAC Fails To Adequately Allege Other Elements Required For An Implied-In-Fact Contract ................................................. 20

    C.   Plaintiff's Declaratory Relief Claim Also Should Be Dismissed. ..... 22

        1.   The Declaratory Relief Claim Is Impermissibly Duplicative. ............................................................... 22

        2.   Plaintiff's Request For A Writing Credit Is A Disguised Reverse-Passing-Off Claim That Is Barred As A Matter of Law. ................................................. 23

MOTION TO DISMISS
DWT 25549061v12 0020040-000121

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

Page

CASES

A Slice of Pie Prods. v. Wayans Bros. Entm't,
    392 F. Supp. 2d 297 (D. Conn. 2005)..................................................25

Aagard v. Palomar Builders,
    344 F. Supp. 2d 1211 (E.D. Cal. 2004) ...............................................23

Aliotti v. R. Dakin & Co.,
    831 F.2d 898 (9th Cir. 1987) ...............................................................21

Art Attacks Ink, LLC v. MGA Entm't Inc.,
    581 F.3d 1138 (9th Cir. 2009) ...............................................................8

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)......................................................................passim

Bauer v. Tacey Goss, P.S.,
    2012 WL 2838834 (N.D. Cal. July 10, 2012)......................................20

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007)......................................................................passim

Benay v. Warner Bros. Entm't, Inc.,
    607 F.3d 620 (9th Cir. 2010) ...............................................................14

Briggs v. Blomkamp,
    2014 WL 4961396 (N.D. Cal. Oct. 3, 2014) .........................................6

Britz Fertilizers, Inc. v. Bayer Corp.,
    665 F. Supp. 2d 1142 (E.D. Cal. 2009) ...............................................23

Buchanan v. Neighbors Van Lines,
    2010 WL 4916644 (C.D. Cal. Nov. 29, 2010)................................16, 18

Chandler v. Roach,
    156 Cal. App. 2d 435 (1957) ...............................................................14

Cole v. Sunnyvale,
    2010 WL 532428 (N.D. Cal. Feb. 9, 2010) ..........................................20

MOTION TO DISMISS
DWT 25549061v12 0020040-000121

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

D.R. Horton L.A. Holding Co. v. Am. Safety Indem. Co.,
  2012 U.S. Dist. LEXIS 1881 (S.D. Cal. Jan. 5, 2012)........................................23

Dastar Corp. v. 20th Century Fox Film Corp.,
  539 U.S. 23 (2003)....................................................................................24, 25

Desny v. Wilder,
  46 Cal. 2d 715 (1956) ...........................................................................passim

Dillon v. NBCUniversal Media LLC,
  2013 WL 3581938 (C.D. Cal. June 18, 2013) ....................................................18

Donahue v. Ziv Television Programs, Inc.,
  245 Cal. App. 2d 593 (1966) ...........................................................................15

Eb-Bran Prods., Inc. v. Warner Elektra Atl., Inc.,
  2005 WL 3107738 (W.D. Mich. Nov. 18, 2005) .................................................25

Faris v. Enberg,
  97 Cal. App. 3d 309 (1979) ...........................................................6, 13, 21, 22

Fasugbe v. Willms,
  2011 WL 2119128 (E.D. Cal. May 26, 2011) ....................................................20

Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,
  499 U.S. 340 (1991)....................................................................................5, 12

Funky Films, Inc. v. Time Warner Entm't Co., L.P.,
  462 F. 3d 1072 (9th Cir. 2006) ...........................................................................6

Gable v. Nat'l Broad. Co.,
  727 F. Supp. 2d 815 (C.D. Cal. 2010) ........................................................5, 6, 10

General of America Ins. v. Lilly,
  258 Cal. App. 2d 465 (1968) ...........................................................................22

Goodspeed v. Nichols,
  2012 U.S. Dist. LEXIS 165927 (E.D. Cal. Nov. 19, 2012)...............................23

Hill v. Gaylord Entm't,
  2008 WL 783756 (S.D. Fla. March 20, 2008)...............................................7, 12

Hood v. Superior Court,
  33 Cal. App. 4th 319 (1995) ...........................................................................23

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Howard v. First Horizon Loan Corp.,
    2013 U.S. Dist. LEXIS 85585 (N.D. Cal. June 18, 2013) ..........................2, 7, 23

Hupp v. City of Beaumont,
    2011 U.S. Dist. LEXIS 151709 (C.D. Cal. Dec. 12, 2011) ................................23

Imageline, Inc. v. CafePress.com, Inc.,
    2011 WL 1322525 (C.D. Cal. Apr. 6, 2011) ......................................................18

J.L. v. Children's Inst., Inc.,
    177 Cal. App. 4th 388 (2009) ............................................................................17

Jones v. Blige,
    558 F. 3d 485 (6th Cir. 2009) ..............................................................................8

Jules Jordan Video, Inc. v. 144942 Canada Inc.,
    617 F.3d 1146 (9th Cir. 2010) ...........................................................................25

Kenney v. Warner Bros. Entm't Inc.,
    984 F. Supp. 2d 9 (D. Mass. 2013) ........................................................5, 6, 7, 8

Kim v. Sumitomo Bank,
    17 Cal. App. 4th 974 (1993) ..............................................................................12

Klekas v. EMI Films,
    150 Cal. App. 3d 1102 (1984) ..............................................................................1

Mann v. Columbia Pictures, Inc.,
    128 Cal. App. 3d 628 (1982) .................................................................6, 11, 13

Meta-Film Assocs., Inc. v. MCA Inc.,
    586 F. Supp. 1346 (C.D. Cal 1984) ........................................................8, 11, 19

Moore v. Lightstorm Entm't,
    2013 WL 4052813 (D. Md. Aug. 9, 2013) .........................................................25

Muench Photography, Inc. v. Pearson Education, Inc.,
    2013 U.S. Dist. LEXIS 167726 (N.D. Cal. Nov. 25, 2013) .................................9

Richteck Tech. Corp. v. UPI Semiconductor Corp.,
    2011 WL 166198 (N.D. Cal. Jan. 18, 2011) .........................................................4

Richter v. Mutual of Omaha Ins. Co.,
    2007 U.S. Dist. LEXIS 102301 (C.D. Cal. Feb. 1, 2007) ............................22, 23

iv

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Rokos v. Peck*,
    182 Cal. App. 3d 604 (1986) ................................................................. 14

*Rood v. County of Santa Clara*,
    113 Cal. App. 4th 549 (2003) .......................................................... 12, 17

*Simonyan v. Ally Fin. Inc.*,
    2013 WL 45453 (C.D. Cal. Jan. 3, 2013) .............................................. 9

*Smith v. Wilt*,
    2013 WL 5675897 (N.D. Cal. Oct. 17, 2013) .................................... 19

*Solis v. City of Fresno*,
    2012 WL 868681 (E.D. Cal. March 13, 2012) .................................... 9

*Spinner v. ABC, Inc.*,
    215 Cal. App. 4th 172 (2013) ........................................... 6, 10, 12, 13

*Sutton v. Walt Disney Prods.*,
    118 Cal. App. 2d 598 (1953) ................................................................. 6

*Tarantino v. Gawker Media, LLC*,
    2014 U.S. Dist. LEXIS 77726 (C.D. Cal. April 22, 2014) ................ 9

*Teixeira v. County of Alameda*,
    2013 WL 4804756 (N.D. Cal. Sept. 9, 2013) ...................................... 4

*Three Boys Music Corp. v. Bolton*,
    212 F.3d 477 (9th Cir. 2000) ................................................................. 6

*U.S. Commodity Futures Trading Comm'n v. Paron Capital Mgmt., LLC*,
    2012 WL 1156396 (N.D. Cal. Apr. 6, 2012) ..................................... 16

*van't Rood v. County of Santa Clara*,
    113 Cal. App. 4th 549 (2003) .............................................................. 12

*Vivendi SA v. T-Mobile USA Inc.*,
    586 F.3d 689 (9th Cir. 2009) ................................................................. 9

*Williams v. UMG Recordings*,
    281 F. Supp. 2d 1177 (C.D. Cal. 2003) ............................................. 25

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

STATUTES

15 U.S.C. § 1125(a)(1)(A) ............................................................... 24

17 U.S.C. § 301 ............................................................................. 25

California Civil Code
    § 2316 ................................................................................... 16
    § 2317 ................................................................................... 16

Lanham Act § 43(a) ...................................................................... 25

RULES

Federal Rules of Civil Procedure
    Rule 8(a)(2) ............................................................................ 4
    Rule 12(b)(6) ...................................................................... 4, 7

OTHER AUTHORITIES

Melville Nimmer & David Nimmer,
    NIMMER ON COPYRIGHT (Bender, 2011) ................................ 14

MOTION TO DISMISS
DWT 25549061v12 0020040-000121

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# I.

## SUMMARY OF ARGUMENT

This lawsuit epitomizes "that obsessive conviction, so frequent among authors and composers, that all similarities between their works and any others which appear later must inevitably be ascribed to plagiarism."[1]  Self-styled screenwriter Douglas Jordan-Benel ("Plaintiff") has sued virtually every person and entity credited with the creation or production of the full-length feature film "The Purge"  ("the Film") and its sequel "The Purge: Anarchy" ("Anarchy") (collectively, "the Works"),[2] claiming that they were copied from Plaintiff's unpublished Screenplay ("the Screenplay").

Notably, Plaintiff does not allege that he <u>ever</u> had contact with <u>any</u> Film Defendant[3] concerning his Screenplay, or that it ever was sent directly to any of these defendants.  Instead, he claims that the Works must have copied from his Screenplay because, two years before the Film premiered, his manager emailed the Screenplay to Emerson Davis and David Kramer, two agents at United Talent Agency ("UTA"). DeMonaco's agent, Charlie Ferraro, also works at UTA.[4]  Because Davis, Kramer and Ferraro are all associated with the same talent agency, Plaintiff alleges that his submission of the Screenplay to Davis and Kramer somehow was transformed into a submission to DeMonaco.  More remarkably, Plaintiff claims that this imputed secondhand "submission" created an <u>implied contract</u> between him and DeMonaco and WNP.  But this claim dramatically expands agency law and implied contract law:

---

[1] <u>Klekas v. EMI Films</u>, 150 Cal. App. 3d 1102, 1114 (1984).

[2] Plaintiff's claims also are purported to arise from the "shooting script" for the Film.  References to "the Works" in this Motion include the Shooting Script.

[3] References to the "Film Defendants" are to defendants Universal City Studios LLC ("Universal"), Blumhouse Productions, LLC ("Blumhouse"), Overlord Productions, LLC ("Overlord"), Platinum Dunes Productions ("Platinum Dunes"), Why Not Productions, Inc. ("WNP"), and James DeMonaco ("DeMonaco").

[4] The SAC now alleges that Sebastien Lemercier, a principal of WNP, currently is represented by an unidentified agent at UTA.  SAC, ¶ 38.  (<u>Compare</u> SAC ¶ 31, alleging that DeMonaco "is, and at all times was," represented by UTA.)

---

MOTION TO DISMISS
DWT 25549061v12 0020040-000121

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

under Plaintiff's theory, every time an idea is disclosed to any talent agent, the disclosure creates binding legal obligations for every other client represented by any agent working at same agency, even if the clients are represented by different talent agents. Not surprisingly, there is no authority supporting such a dramatic expansion of well-settled law, and this Court should not do so here.

First, Plaintiff's claims should be dismissed because he fails to plausibly allege that any Film Defendant ever had access to Plaintiff's Screenplay, which is an essential element of his claims. At most, Plaintiff alleges that two agents at UTA received the unpublished Screenplay. But mere corporate receipt is inadequate to establish access for copyright infringement, let alone the requisite nexus for an implied-in-fact contract claim. All of his claims against the Film Defendants should be dismissed for this reason alone. Section III(A), infra.

Second, Plaintiff's implied contract claim against DeMonaco and WNP[5] independently fails because he has not alleged facts sufficient to meet his burden of proving contractual privity with either of them. Plaintiff does not claim that there was any direct contact with DeMonaco or WNP, nor has he alleged facts that would establish that the two UTA agents who were sent the Screenplay had authority to bind these two defendants to a contract, particularly given that they are not (and cannot be) alleged to be these defendants' agents. Section III(B)(1)-(2), infra.

Third, Plaintiff also has not sufficiently alleged facts establishing the other elements of an implied-in-fact contract claim. This narrow claim requires Plaintiff to plead and prove that there was a mutual understanding that DeMonaco and WNP would pay him if they ever used any of his ideas. But because Plaintiff never submitted any ideas to DeMonaco or WNP, or to an agent at UTA who represented either of them, there could not be any such "understanding." Moreover, there is no allegation that Plaintiff submitted his Screenplay to Davis and Kramer with the

---

[5] Plaintiff has abandoned this claim with respect to the other Film Defendants.

MOTION TO DISMISS
DWT 25549061v12 0020040-000121

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

intention of "selling" it <u>to DeMonaco or WNP</u>, or that Davis and Kramer voluntarily accepted the Screenplay with the understanding that they were binding DeMonaco and WNP to a contract.  No court has ever stretched the legal fiction of an implied contract claim so far, nor should this Court do so here.  <u>See</u> Section III(B)(4), <u>infra</u>.

<u>Fourth</u>, Plaintiff's declaratory relief claim fails because it arises from the same allegations as his copyright and implied contract claims, and fails for the same reasons.  Moreover, because this claim seeks an order compelling the Film Defendants to "credit" him as a writer of the Works, it is a thinly disguised claim for reverse-passing-off, which independently is barred by controlling United States Supreme Court authority.  <u>See</u> Section III(C), <u>infra</u>.[6]

Because Plaintiff failed to allege facts sufficient to state a claim that is even plausible on its face, this Court should dismiss the SAC and its First, Second, Fourth, and Fifth Claims For Relief against the Film Defendants with prejudice.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's initial complaint was filed on July 17, 2014, and amended on October 10, 2014.  Dkt. Nos. 1, 11.  On November 25, 2014, UTA moved to dismiss Plaintiff's breach of implied-in-fact contract claim, arguing the First Amended Complaint ("FAC") failed to sufficiently allege the elements of that claim.  Dkt. No. 18.  This Court granted UTA's motion on February 13, 2015, holding that to state a claim for breach of implied contract under <u>Desny v. Wilder</u>, 46 Cal. 2d 715, 739 (1956), "the submitter must have 'clearly conditioned his offer to convey the idea upon an obligation to pay for it if it is used' and recipient must 'know[] the condition before he knows the idea' and must 'voluntarily accept [] its disclosure.'"  Dkt. 26 at 5.  Because the FAC failed to "allege that defendant UTA knew and accepted the condition of the submission" (<u>id.</u> at 5), the Court dismissed the FAC as to UTA.

---

[6] Absent this impermissible claim for relief, it merely restates Plaintiff's copyright claim and is preempted.  <u>See</u> note 19, <u>infra</u>.

MOTION TO DISMISS
DWT 25549061v12 0020040-000121

3

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Moreover, because "much of the Court's reasoning applie[d] to all Defendants," the Court also dismissed that claim against the Film Defendants.  Id. at 6.  The Court granted leave to amend only as to the implied contract claim.  Id.

On February 27, 2015, Plaintiff filed a Second Amended Complaint ("SAC"), which reiterated most of his prior claims, but abandoned his implied-in-fact contract claim against all but two of the Film Defendants.  Despite the Court's clear instruction to limit any amendments to the implied contract claim only, Plaintiff's SAC includes new allegations for his copyright claim, namely, a new theory of "access."  SAC, ¶ 41.  Because the SAC still is legally deficient, this Court should dismiss all of the claims against the Film Defendants, with prejudice.

### III.   PLAINTIFF'S SECOND AMENDED COMPLAINT FAILS TO STATE FACTS SUFFICIENT TO SUPPORT ANY CLAIM FOR RELIEF.

Under F.R.C.P. 8(a)(2), a complaint must include a "short and plain statement of the claim," showing that the pleader is entitled to relief and giving the defendant "fair notice of what the … claim is and the grounds upon which it rests."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).   "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Richteck Tech. Corp. v. UPI Semiconductor Corp., 2011 WL 166198, *2 (N.D. Cal. Jan. 18, 2011), quoting Twombly, 550 U.S. at 545.

A motion to dismiss under F.R.C.P. 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint; to avoid dismissal, a complaint must contain sufficient factual allegations that "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  "[A] complaint does not suffice if it tenders naked assertions devoid of further factual enhancement."  Teixeira v. County of Alameda, 2013 WL 4804756, *4 (N.D. Cal. Sept. 9, 2013) (quoting Iqbal, 556 U.S. at 678).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft, 556 U.S. at 678. Indeed, a complaint should be dismissed where, as here, it fails to allege "enough facts to state a claim for relief that is plausible on its face."[7] Twombly, 550 U.S. at 570.

### A. Plaintiff's Claims Fail Because He Does Not Plausibly Allege That Any Film Defendant Had Access To His Screenplay.

Plaintiff's claims require him to plead facts that, if proven, would demonstrate that the Film Defendants had access to his unpublished Screenplay, because all of his claims derive from the assertion that the Works copied ideas and expression from the Screenplay. But despite his third attempt, Plaintiff still has not adduced facts sufficient to meet his burden of demonstrating that any of the Film Defendants ever had access to the Screenplay. His attenuated claims, which are based solely on allegations that the Screenplay was sent to third parties who do not represent any of the Film Defendants, fail as a matter of law.

### 1. Plaintiff Has The Burden Of Proving That The Film Defendants Had Access To His Screenplay.

To state a claim for copyright infringement, a plaintiff must "plausibly allege" (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991); Gable v. Nat'l Broad. Co., 727 F. Supp. 2d 815, 823 (C.D. Cal. 2010); Kenney v. Warner Bros. Entm't Inc., 984 F. Supp. 2d 9, 12 (D. Mass. 2013). For purposes of this motion, the Film Defendants do not dispute that Plaintiff owns a copyright in the Screenplay. But Plaintiff has the burden of alleging facts sufficient to create a reasonable inference that the Film Defendants "copied" protected expression from his Screenplay.

---

[7] A claim has facial plausibility only when the pleaded factual content "allows the court to draw a reasonable inference that defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (emphasis added).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

A plaintiff may allege "copying" either by stating facts demonstrating direct copying, or by stating facts sufficient to show that the defendant had "reasonable access" to the plaintiff's copyrighted work and that a sufficient degree of similarity exists between the plaintiff's work and the allegedly infringing work to raise an inference of actual copying.  Gable, 727 F. Supp. 2d at 823; Funky Films, Inc. v. Time Warner Entm't Co., L.P., 462 F. 3d 1072, 1076 (9th Cir. 2006).[8]

Of particular importance here, "[r]easonable access requires more than a bare possibility, and may not be inferred through mere speculation or conjecture."  Gable, 727 F. Supp. 2d at 824 (emphasis added); see also Briggs v. Blomkamp, 2014 WL 4961396, *14 (N.D. Cal. Oct. 3, 2014) (access may not be inferred through speculation); Three Boys Music Corp. v. Bolton, 212 F. 3d 477, 482 (9th Cir. 2000) (access requires more than a "bare possibility," and "may not be inferred through mere speculation or conjecture").  Instead, the plaintiff's allegations must be sufficient for the court to reasonably infer access, either because the plaintiff's copyrighted work was widely disseminated, or because the specific facts demonstrate a chain of events showing that access is not only "possible," but "plausible."  Gable, 727 F. Supp. 2d at 824.  Failure to plausibly allege access warrants dismissal of claims for copyright infringement and breach of implied-in-fact contract.  Id.

Kenney is instructive on this point.  The plaintiff there – a self-proclaimed

---

[8] The same requirement exists for a claim for breach of an implied contract:  the plaintiff must plead, among other things, facts sufficient to show that the defendant "used" the plaintiff's idea without authorization or compensation.  See Desny v. Wilder, 46 Cal. 2d 715, 738-739 (1956); Spinner v. ABC, Inc., 215 Cal. App. 4th 172, 184 (2013); Mann v. Columbia Pictures, Inc., 128 Cal. App. 3d 628, 647 n.6 (1982); Faris v. Enberg, 97 Cal. App. 3d 309, 318 (1979).  As with copyright, a plaintiff can raise an inference of "use" for an idea submission claim by plausibly alleging the defendant had access to the idea and that the defendant's work and the plaintiff's idea are "substantially similar."  Sutton v. Walt Disney Prods., 118 Cal. App. 2d 598, 603 (1953).  Because the framework for establishing "use" in connection with an idea submission claim is parallel to the framework for establishing copying in a copyright claim, courts may rely on copyright cases to evaluate whether a plaintiff alleging a Desny claim has established the requisite access.  Spinner, 215 Cal. App. 4th at 186; see also SLAPP Motion Section III(A).

MOTION TO DISMISS
DWT 25549061v12 0020040-000121

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

screenwriter, director, and actor – brought a copyright infringement action against Warner Bros. (and others), alleging that a movie for which Warner Bros. had acquired rights infringed the copyright in his screenplay.  Kenney, 984 F. Supp. 2d at 11.  Warner Bros. moved to dismiss, arguing the plaintiff failed to sufficiently allege access.  See id. at 12.  In response, the plaintiff asserted three theories:  (1) he registered his screenplay with the Writer's Guild of America; (2) he purchased a web domain to promote his work; and (3) he promoted his work through "press interviews" and "media outlets."  Id.  The court rejected each of these theories.

First, the court held that merely registering a work with the Writer's Guild of America cannot establish access, because "registration does not place a work in the public arena – only the registrant or listed author(s) may request access to records or information pertaining to registered material."  Id. at 13.  Second, the plaintiff's reliance on his website to establish access failed because "he d[id] not allege that the site included [his work], or any significant amount of material that Warner Brothers could have substantially (and successfully) plagiarized."  Id.  Finally, the plaintiff's alleged publication of his work through "press interviews" and "media outlets" also failed to plausibly allege access, because the plaintiff's amended complaint "d[id] not identify even a single instance of such publication."  Id.  Moreover, although the plaintiff's amended complaint contained a bare statement that his work had been widely disseminated, the court held that such "[c]onclusory allegations will not carry a plaintiff's burden of showing a defendant's reasonable opportunity of access[,] even under the permissive Rule 12(b)(6) standard."  Kenney, 984 F. Supp. 2d at 13.  Because the plaintiff had "failed to plead sufficient facts to show that Warner Brothers had anything more than a bare possibility of access" to his screenplay, that defect was "fatal" to the his lawsuit  Id.

The court in Hill v. Gaylord Entm't, 2008 WL 783756 (S.D. Fla. March 20, 2008), reached the same conclusion.  The plaintiff there sued Gaylord for copyright infringement, alleging the movie "Donnie Darko" (which Gaylord financed) was

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

based on plaintiff's unpublished manuscript. See id. at *1.  Gaylord filed a motion for judgment on the pleadings, arguing the plaintiff failed to allege facts from which the court could infer Gaylord had access to the plaintiff's manuscript. See id.  The court agreed and granted the motion, explaining that, although the plaintiff alleged that he sent his work to "publishers and literary agents," he did not allege any facts sufficient to show that Gaylord had access to the manuscript. See id. at *2.[9]

As in these cases, Plaintiff's SAC fails to plausibly allege that any of the Film Defendants had access to his Screenplay.  The SAC does not allege (and cannot allege) that Plaintiff or his manager provided a copy of his Screenplay directly to any of the Film Defendants, or ever contacted any of them about the Screenplay.  Indeed, there is not a single allegation in the SAC that any of the Film Defendants ever read or even knew about Plaintiff's Screenplay.  Plaintiff concedes, by failing to allege, that the Screenplay was not publicly available; his allegation that he registered the Screenplay with the Writer's Guild of America cannot be used to show access because, as explained above, registered works are not available to the public.  See Kenney, 984 F. Supp. 2d at 13.  The only allegations of "access" are based on Plaintiff's alleged submission of the Screenplay to two third-party talent agents; as discussed below, this is inadequate to meet his burden under Iqbal and Twombly.

**2.**     **Allegations Of Bare Corporate Receipt Cannot Give Rise To An Inference Of Access.**

Plaintiff alleges that, on July 8, 2011, his manager submitted the Screenplay to two agents at UTA – Kramer and Davis.  See SAC, at ¶¶ 22, 24.  Almost two years

---

[9] See also Art Attacks Ink, LLC v. MGA Entm't Inc., 581 F. 3d 1138, 1145 (9th Cir. 2009) (failure to show access defeated copyright infringement claim); Meta-Film Assocs., Inc. v. MCA Inc., 586 F. Supp. 1346, (C.D. Cal 1984) (to show access, "plaintiff must show something more than that he sent his work to a director who was under contract to the defendant and had an office on the defendant's lot"); Jones v. Blige, 558 F. 3d 485, 493 (6th Cir. 2009) (insufficient showing of access where defendants were affiliated with the purported intermediary "only through an attenuated corporate connection").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

later, on June 7, 2013, "The Purge" was released.  See id. at ¶¶ 30, 44.[10]  Plaintiff also alleges that DeMonaco "is, and at all times was, represented by UTA," and that DeMonaco's producing partner, Sebastian Lemercier of WNP, also is represented by UTA.  Id. ¶¶ 31, 38.  Based solely on these allegations, Plaintiff concludes that "*Settler's Day* was received by DeMonaco's agency, which in the entertainment industry, is receipt by DeMonaco[,]"[11] and that, on information and belief,[12] UTA transmitted the Screenplay to DeMonaco.  Id. at ¶¶ 32, 40.

In short, Plaintiff's claims are based on the premise that he can establish "access" to his unpublished work merely by alleging that he sent it to a talent agent at one of the largest talent agencies in the world.[13]  This expansive reading of the "access" requirement is preposterous on its face.  Under Plaintiff's theory, a submission to any agent at a talent agency would be deemed to have been made to every single client of every agent who works at the same agency.  No court ever has

---

[10] "Anarchy" was released the following year, on July 18, 2014.  Id. ¶ 44.

[11] Plaintiff's allegation that UTA's supposed receipt of his Screenplay automatically is imputed to DeMonaco (and apparently to every other client of UTA, under Plaintiff's theory) is precisely the type of "threadbare" conclusion that Iqbal, Twombly and their progeny instruct courts to ignore.

[12] Allegations made on information and belief generally are insufficient to defeat a 12(b)(6) motion.  See, e.g., Vivendi SA v. T-Mobile USA Inc., 586 F. 3d 689, 694 (9th Cir. 2009) (finding allegations on information and belief insufficient); Tarantino v. Gawker Media, LLC, 2014 U.S. Dist. LEXIS 77726, *14 n. 4 (C.D. Cal. April 22, 2014) ("[i]n addition, all of Plaintiff's allegations related to his contributory infringement claim are based on information and belief, and such allegations are insufficient as a matter of law"); Muench Photography, Inc. v. Pearson Education, Inc., 2013 U.S. Dist. LEXIS 167726, *18 (N.D. Cal. Nov. 25, 2013) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"; rejecting allegations made on information and belief); Simonyan v. Ally Fin. Inc., 2013 WL 45453, *2 (C.D. Cal. Jan. 3, 2013) (noting that "factual allegations … based on 'information and belief' and contain[ing] nothing more than a rote recitation of the required elements of each respective claim … fall well short of the requirements set forth in Iqbal"); Solis v. City of Fresno, 2012 WL 868681, *8 (E.D. Cal. March 13, 2012) ("[i]n post-Twombly and Iqbal era, pleading on information and belief, without more, is insufficient to survive a motion to dismiss for failure to state a claim").

[13] See Henry Decl. Ex. K; RJN Section III.

---

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

adopted such a dramatic departure from well-established laws of agency.  To the contrary, courts unequivocally have rejected this sweeping theory of access.

In <u>Gable</u>, for example, the plaintiff sued the creator of "My Name Is Earl" (among others), alleging the television program infringed the copyright in his script titled "Karma!"  <u>Gable</u>, 727 F. Supp. 2d at 818.  He argued the television program's creator – Gregory Thomas Garcia – had access to "Karma!" because the plaintiff had submitted the script to a person employed at the talent agency representing Garcia.  <u>See</u> <u>id.</u> at 825.  The plaintiff alleged that once the agency received his screenplay, "it [was] reasonable that Garcia, as a client of [the agency], would have access to it."  <u>Id.</u>

The court rejected this theory, holding that a plaintiff cannot establish access by showing "bare corporate receipt of his work [.]"  <u>Id.</u> at 826 (internal quotations omitted).  Instead, "a plaintiff must show that he submitted his work to an intermediary who is in a position to transmit the plaintiff's work to the creators of the infringing work."  <u>Id.</u>  The plaintiff in <u>Gable</u> failed to establish the requisite nexus; the fact that the recipient and Garcia's agent were at the same agency did not suffice to establish that they had discussed the plaintiff's submission.  <u>Id.</u> at 828.  Thus, the court held that the plaintiff had failed to meet his burden.

The court in <u>Spinner</u> also rejected a theory of access based on corporate receipt.  There, the plaintiff brought a claim for breach of implied-in-fact contract against defendants – the creators of the popular television program "LOST" – alleging the program was based on a script he had submitted decades earlier to development executives at ABC.  215 Cal. App. 4th at 175-176.  Although the plaintiff could not plead or prove direct access to any of the defendants, he theorized that the development executives involved in the creation of "LOST" had an opportunity to view his script "because ABC had a policy of permanently retaining unreturned scripts, and [his] script must have been present somewhere in a script library at ABC."  <u>Id.</u> at 187.  The court rejected this theory as pure "guesswork."  <u>Id.</u> As the court explained, "[a]ccess means that the defendants had an opportunity to

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

view or to copy the plaintiff's work[,]" and more than a "bare possibility" of access is required to make that showing.  Id. at 185.  Instead, where a plaintiff relies on corporate receipt to establish access, he must demonstrate "a sufficiently strong nexus between the intermediary to whom the plaintiff[] submitted [his] work and the creator of the allegedly infringing work."  Id. at 186.  Importantly, the court noted, "[t]he relationship linking the intermediary and the creator should be more than the simple fact that they share a common employer."  Id.  See also Mann, 128 Cal. App. 3d at 631, 636 (rejecting idea submission claim based on the plaintiff's allegations that she had submitted her story outline to an executive employed by a company that was affiliated with the studio that made the allegedly infringing film); Meta-Film Assocs., Inc. v. MCA Inc., 586 F. Supp. 1346, 1356-1359 (C.D. Cal. 1984) (claim rejected where the plaintiff allegedly showed its work to a director who was under contract with the defendant and worked on the studio lot, but could not demonstrate any connection between the director and the studio's allegedly infringing project).

Similarly, Plaintiff has failed to plead facts sufficient to support his theory of access.  He does not allege that DeMonaco or WNP ever had any relationship or communications with Kramer or Davis, or that Kramer or Davis ever talked to the defendants' agent, Charlie Ferraro, about Plaintiff's Screenplay.  Instead, he simply speculates that there might have been contact – which is precisely the kind of "conjecture" that courts have found to be inadequate as a matter of law.

Plaintiff's improper new allegations[14] as to Universal and Platinum Dunes – to the extent the Court even considers them at all – also are insufficient to establish access.  Plaintiff vaguely alleges on information and belief that Levin, the literary

_____

[14] The Court was clear that any amendments to the FAC were limited to the breach of implied-in-fact contract claim.  Dkt. No. 26 at 6.  Plaintiff's reliance on these new allegations for purposes of his copyright claims is barred by the Court's Order.  Plaintiff cannot claim that his allegations as to Universal and Platinum Dunes apply to his implied contract claim, because that claim has been asserted only against UTA, DeMonaco, and WNP.  SAC at 22.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

agent to whom he submitted the Screenplay, had an unspecified "preexisting working relationship" with Universal and "Platinum Dunes' owner, Michael Bay" at some unspecified point in time.  SAC, ¶ 41.  But again, Plaintiff fails to allege any specific <u>facts</u> explaining the nature of the so-called "relationship," let alone any facts explaining the circumstances under which the purported intermediary – here, Levin – would have plausibly provided the Screenplay to Universal or Platinum Dunes, and how it would then have wound up with DeMonaco.  As the court in <u>Hill</u> made clear, a plaintiff cannot raise a reasonable inference of access merely by alleging that he sent his work to a literary agent.  2008 WL 783756 at *1.  <u>See also</u> <u>van't Rood v. County of Santa Clara</u>, 113 Cal. App. 4th 549, 572 (2003) ("[t]he fact that parties had a preexisting relationship is not sufficient to make one party the agent for the other.") (<u>citing</u> <u>Kim v. Sumitomo Bank</u>, 17 Cal. App. 4th 974, 983 (1993)).

Because Plaintiff has failed to allege facts from which this Court could reasonably infer that <u>any</u> of the Film Defendant had access to the Screenplay, his claims against these defendants should be dismissed.

**B.    Plaintiff Has Failed To Allege Facts Adequate To State A Claim For Breach Of Implied-In-Fact Contract.**

The California Supreme Court has recognized that as a general rule, there is no protectable property interest in "ideas."  <u>Desny</u>, 46 Cal. 2d at  732.  To the contrary, "[t]he general rule of law is, that the noblest of human productions – knowledge, truths ascertained, conceptions, and ideas – become, after voluntary communication to others, free as the air to common use."  <u>Spinner</u>, 215 Cal. App. 4th at 184, <u>quoting</u> <u>Desny</u>, 46 Cal. 2d at 731-732.  Thus, under copyright law, there is no protection for mere ideas; only <u>expression</u> is protected.  <u>Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.</u>, 499 U.S. 340, 350 (1991).  The California Supreme Court recognized a limited exception to this general rule in <u>Desny</u>, however, whereby parties can <u>contract</u> for the right to receive payment for disclosing "idea," under very narrowly-conscribed circumstances.  <u>Desny</u>, 46 Cal. 2d at 731.  The Court reasoned that where a party

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

"commercially solicits" the disclosure of a valuable idea, and "voluntarily accepts it knowing that it is tendered for a price," the contract between the disclosing party and the recipient can be enforced.  Id. at 734 (emphasis added).

That does not mean that every disclosure of an idea for a television show or film, no matter what circumstances surround the disclosure, gives rise to an implied contract.  As the Desny Court held, "[t]he law will not imply a promise to pay for an idea from the mere facts that the idea has been conveyed, is valuable, and has been used for profit; this is true even though the conveyance has been made with the hope or expectation that some obligation will ensue."  Id. at 739 (emphasis added).

Instead, a "Desny" claim requires a clear and mutually understood expectation of payment for an idea before any liability will be imposed.  Thus, to state a claim for breach of implied-in-fact contract under California law, the plaintiff must allege facts from which the court can reasonably infer that:  (1) the plaintiff clearly conditioned the submission of his idea to the defendant upon the defendant's promise to pay for it if the defendant used it; (2) the defendant, knowing this condition before the plaintiff disclosed the idea, voluntarily accepted the submission of the idea; (3) the defendant actually used the idea – that is, the defendant based its work substantially on the plaintiff's idea, rather than on its own idea or ideas from other sources; and (4) the plaintiff incurred damages.  Desny, 46 Cal. 2d at 738-739; see also Spinner, 215 Cal. App. 4th at 184; Mann, 128 Cal. App. 3d at 647 n.6; Faris, 97 Cal. App.3d at 318.  As the Supreme Court explained, "[o]ne party cannot, by unilateral words or deeds, thrust upon another a contractual relationship unless the latter has, by his own words and deeds, consented thereto."  Desny, 46 Cal. 2d at 730 (emphasis added).

Plaintiff has not pleaded facts sufficient to meet this strict burden, nor has any Court adopted his theory that an implied-in-fact contract claim can be imposed on a defendant who has no contact whatsoever with the Plaintiff, and who has not expressly authorized a third party to accept disclosures and enter into implied agreements on the defendant's behalf.

13

MOTION TO DISMISS
DWT 25549061v12 0020040-000121

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**1.** **Plaintiff Did Not Allege Privity With DeMonaco Or WNP.**

Plaintiff's <u>Desny</u> claim should be dismissed because he has failed to allege contractual privity between himself and DeMonaco or WNP, either directly, or because UTA as was acting as DeMonaco or WNP's agent.

As the Ninth Circuit has held, "[p]rivity between the parties is a necessary element of an implied-in-fact contract claim." <u>Benay v. Warner Bros. Entm't, Inc.</u>, 607 F. 3d 620, 634 (9th Cir. 2010).  "[T]he creation of an implied-in-fact contract between an author, on the one hand, and an agent, producer, or director, on the other hand, is of such a personal nature that it is effective <u>only</u> between the contracting parties." <u>Rokos v. Peck</u>, 182 Cal. App. 3d 604, 617 (1986) (emphasis added); <u>see also</u> <u>Chandler v. Roach</u>, 156 Cal. App. 2d 435, 441 (1957) ("[u]nlike a copyright, a contract … is effective only between the contracting parties; it does not withdraw the idea from general circulation").  <u>See also</u> 4 Melville Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 19D.05[C] (Bender, 2011) ("a contract action will fail if the person to whom the plaintiff submitted the idea was not authorized – actually or apparently – to enter into contracts on behalf of the defendant.")

This limitation only makes sense:  a plaintiff cannot possibly have "clearly conditioned" his submission to the defendant on a promise to pay – nor can the defendant "voluntarily" have accepted such a condition prior to the disclosure, as <u>Desny</u> requires – if there was never any contact between the plaintiff and the defendant, and the person who received the submission was never asked about the particular defendant, did not accept it on behalf of that defendant, and was not expressly authorized to accept it on behalf of that defendant.

Here, even though this is Plaintiff's <u>third</u> attempt to plead a claim, the SAC still fails to include <u>any</u> factual allegations sufficient to demonstrate privity between Plaintiff, on the one hand, and DeMonaco and/or WNP, on the other hand.  Clearly there was no direct contact – Plaintiff effectively has conceded as much, by never

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

even suggesting that he or his manager <u>ever</u> had any contact with DeMonaco or WNP, or ever sent the Screenplay directly to either one of them.

Moreover, although Plaintiff has included several allegations about his manager's interactions with Kramer and Davis (<u>see</u> SAC ¶¶ 19-28), the SAC does not allege <u>any</u> facts showing that Plaintiff was seeking to submit the Screenplay <u>to these defendants</u>; that Plaintiff told Kramer or Davis that he was sending them the Screenplay so that they would provide it to DeMonaco or WNP; or that Kramer or Davis had the authority to accept submissions on behalf of either DeMonaco or WNP.  Indeed, the SAC does not contain a single factual allegation showing <u>any mention whatsoever</u> of DeMonaco or WNP in any communications between or by Plaintiff, his manager, Kramer, or Davis.   Instead, Plaintiff simply recites the language from <u>Desny</u>, making the conclusory assertion that DeMonaco and WNP "voluntarily accepted the disclosure knowing they had an obligation to compensate and credit Plaintiff[,]" and "had multiple opportunities to reject" the submission, without alleging any facts whatsoever that support those conclusions.  To the contrary, the remarkably ambiguous allegations in the SAC make clear that Plaintiff's manager simply sent the Screenplay to Kramer and Davis with no direction whatsoever about what they should do with it, and certainly without any indication that it was to be sent to <u>these defendants</u>.  The notion that a contract can somehow be formed under these circumstances is completely untenable.  <u>See</u>, <u>e.g.</u>, <u>Donahue v. Ziv Television Programs, Inc.</u>, 245 Cal. App. 2d 593, 607 (1966) (rejecting idea submission claim because no contractual privity existed between the plaintiffs and defendant, where defendant was a former employee of an entity with whom the plaintiff had alleged an implied contract; court noted "[i]t was not [the defendant] who before or at the time of the submission impliedly promised to pay and certainly he, at no time, made any express promise").

Similarly, Plaintiff has alleged that there was a submission to a corporate entity – UTA.  Even taking that allegation at face value, that does not establish

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

privity with uninvolved third parties, namely, DeMonaco and WNP.  Because Plaintiff has failed to plead privity with these defendants, his claim for breach of implied-in-fact contract against DeMonaco and WNP must be dismissed.

**2.    Plaintiff Has Failed to Allege An Agency Relationship Between UTA and DeMonaco Or WNP That Is Sufficient To Establish Privity.**

Plaintiff cannot circumvent the privity requirement by arguing, as he did previously  (see Dkt. No. 18), that "UTA acts as the agent for The Purge writer and director DeMonaco …." (Dkt. No. 20 at 5).  The allegations in the SAC fail to establish an essential requirement for an agency relationship to exist – that the two agents who received Plaintiff's Screenplay had the authority to bind DeMonaco or WNP, and could therefore enter into implied contracts on their behalf.

"To plead an agency relationship, a plaintiff must allege: (1) that the agent or apparent agent holds power to alter legal relations between the principal and third persons and between the principal and himself; (2) that the agent is a fiduciary with respect to matters within the scope of the agency; and (3) that the principal has right to control the conduct of the agent with respect to matters entrusted to him." Buchanan v. Neighbors Van Lines, 2010 WL 4916644, *3 (C.D. Cal. Nov. 29, 2010) (internal marks omitted).  With respect to the first prong, California recognizes two types of authority that are sufficient to permit an agent to bind a third party "principal" to a contract:  actual authority and ostensible authority.  Actual authority is that which "a principal intentionally confers upon the agent," or "by want of ordinary care, allows the agent to believe himself to possess."  Cal. Civ. Code § 2316.  Ostensible authority occurs when a principal "causes or allows a third person to believe the agent to possess" valid authority to bind the principal.  Cal. Civ. Code § 2317; see also U.S. Commodity Futures Trading Comm'n v. Paron Capital Mgmt., LLC, 2012 WL 1156396, *3 (N.D. Cal. Apr. 6, 2012).  For ostensible authority, "the representations of the purported agent are irrelevant; instead the relevant inquiry is whether … the principals, did anything that intentionally or

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

negligently caused" the plaintiff to reasonably believe that the agent was authorized.  Id. (emphasis added).

The SAC is devoid of any facts that would show Kramer or Davis had either kind of authority.  Plaintiff does not allege that Kramer or Davis had actual authority to bind DeMonaco or WNP to any contractual obligations, whether related to the Screenplay or otherwise.  The SAC merely states that "DeMonaco is, and at all times was, represented by UTA."  SAC, ¶ 31.  That statement, even taken as true, does not come close to meeting Plaintiff's burden.[15]  Thus, even if Plaintiff knew at the time of his submission that an agent at UTA represented DeMonaco and/or WNP, and that there was a relationship between Kramer and Davis and DeMonaco's agent (neither of which is alleged), Plaintiff still could not plausibly allege a mutual understanding that Kramer or Davis had actual authority to bind DeMonaco or WNP to a contract.  "Persons dealing with an assumed agent are bound at their peril to ascertain the extent of the agent's authority."  van't Rood, 113 Cal. App. 4th at 573.

Nor has Plaintiff sufficiently pled the existence of ostensible authority.  Under California law, "[b]efore recovery can be had against the principal for the acts of an ostensible agent, three requirements must be met: The person dealing with an agent must do so with a reasonable belief in the agent's authority, such belief must be generated by some act or neglect by the principal sought to be charged and the person relying on the agent's apparent authority must not be negligent in holding belief."  J.L. v. Children's Inst., Inc., 177 Cal. App. 4th 388, 403-04 (2009) (emphasis added).  But the SAC does not contain a single allegation that the principals – DeMonaco and WNP – gave Plaintiff  (or his manager) any reason to believe that Kramer or Davis had any authority to bind them, let alone that Plaintiff (or his manager) relied on such a belief.  Nor could such an allegation be made, given

---

[15] In fact, Plaintiff alleged previously that a different agent, Charles Ferraro, represents DeMonaco.  See Section III(B)(3), infra.  UTA has more than 135 talent agents.  See Henry Decl. Ex. K; RJN Section III.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

that Plaintiff never had any contact with DeMonaco or WNP.

In <u>Dillon v. NBCUniversal Media LLC</u>, 2013 WL 3581938 (C.D. Cal. June 18, 2013), another judge in this District rejected this kind of vague and attenuated pleading.  In that case, the plaintiff alleged that David Hurwitz, a producer of the NBC program "Stars Earn Stripes," had "actual or apparent authority to act on behalf of NBC and/or Universal" and that "Hurwitz indicated that he discussed [plaintiff]'s Work with an 'exec' of either NBC or Universal."  2013 WL 3581938, at *11. Nonetheless, the Court granted NBCUniversal's 12(b)(6) motions as to the breach of implied contract claims, noting that the Plaintiff's allegation was "nothing more than the kind of threadbare recital of the elements of a cause of action, supported by mere conclusory statements that the Supreme Court found to be insufficient in <u>Iqbal</u> and <u>Twombly</u>."  <u>Id.</u> (internal marks omitted).  Moreover, as the Court noted, "Hurwitz's actions … are not relevant as to whether he had the authority to so bind NBC and Universal; rather, it is the actions of NBC and Universal that are the subject of inquiry."  <u>Id.</u>  Because there were insufficient allegations that Hurwitz had authority to act on behalf of NBC and Universal, those defendants could not be bound by an implied-in-fact contract based on an alleged "pitch" to Hurwitz.   <u>Id.</u>

Here, Plaintiff's allegations provide even <u>less</u> plausible and more attenuated allegations about the purported relationship between Kramer, Davis, UTA, DeMonaco, and WNP.  Plaintiff has alleged only that his Screenplay "was received by DeMonaco's <u>agency</u>, which in the entertainment industry, is receipt by DeMonaco."  SAC, ¶ 40 (emphasis added).  But such bare, conclusory allegations are insufficient to allege agency as a matter of law.  <u>See</u> <u>Buchanan</u>, 2010 WL 4916644, at *3 (generic allegations that defendants were all agents etc. of each other "are nothing more than legal conclusions of the type prohibited by <u>Iqbal</u> and <u>Twombly</u>") (internal citations omitted); <u>Imageline, Inc. v. CafePress.com, Inc.</u>, 2011 WL 1322525, *4 (C.D. Cal. Apr. 6, 2011) (same).

Indeed, allowing an implied-in-fact contract claim against DeMonaco and

18

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

WNP based on Plaintiff's bare allegations of supposed authority would dramatically expand the law of implied-in-fact contracts, with absurd consequences.  If merely the submission to one agent at a large, successful agency could bind all of the clients of any and all of its agents, would-be authors like Plaintiff could force nearly any member of the entertainment industry into court to defend against meritless claims, no matter how attenuated the relationship between the parties allegedly involved.  As one court noted, "countless unsolicited scripts are submitted to numbers of individuals on studio lots every day."  Meta-Film, 586 F. Supp. at 1357.  A contract claim cannot be based on such shaky ground, nor has any court adopted this expansive theory of contract privity.  Plaintiff's implied contract claim should be dismissed for this additional reason.

### 3.   Plaintiff Cannot Evade Dismissal By Omitting Facts From His SAC.

In his FAC, Plaintiff alleged that DeMonaco was represented by UTA agent Charlie Ferraro – not by either of the two UTA agents who allegedly received Plaintiff's Screenplay.  He did not (and could not) allege that DeMonaco's relationship with Ferraro somehow gave Kramer and Davis authority to enter into contracts on DeMonaco's behalf; instead, he alleged only that Davis and Kramer had worked with Ferraro on other, unrelated projects.  See FAC ¶¶ 24, 32.  But evidently realizing that his access arguments are hampered by the fact that DeMonaco is, "and at all times was" represented by a different UTA agent than the individuals to whom he sent his Screenplay, Plaintiff deleted the reference to Ferraro, and now alleges only that DeMonaco is "represented by UTA."  Compare FAC, ¶ 24 with SAC, ¶ 31.

But Plaintiff's attempt to obscure the underlying facts does not save his claims.  The omission of contradictory facts contained in an earlier pleading may render allegations in a subsequent pleading implausible and subject to a motion to dismiss.  See, e.g., Smith v. Wilt, 2013 WL 5675897, *4 (N.D. Cal. Oct. 17, 2013) ("[t]he alteration of the allegations about plaintiffs' own knowledge of the fraud, and omission of the contradictory allegations, make plaintiffs' current allegations

MOTION TO DISMISS
DWT 25549061v12 0020040-000121

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

regarding their delayed discovery of the alleged fraud simply <u>not plausible</u>")
(emphasis original); <u>Bauer v. Tacey Goss, P.S.</u>, 2012 WL 2838834, *3 (N.D. Cal.
July 10, 2012) ("[o]ther than the fact these judicial admissions hinder Plaintiffs'
ability to challenge the motion to dismiss, which must have become clear to Plaintiffs
when Defendants moved to dismiss Plaintiff's original complaint, Plaintiffs have not
provided any legitimate basis for withdrawing these allegations"); <u>Fasugbe v.
Willms</u>, 2011 WL 2119128, *5 (E.D. Cal. May 26, 2011) ("plaintiffs may alter their
allegations in an amended complaint, but the court may properly consider the
plausibility of the FAC in light of the prior allegations"); <u>Cole v. Sunnyvale</u>, 2010
WL 532428, *4 (N.D. Cal. Feb. 9, 2010) ("[t]he court may also consider the prior
allegations as part of its 'context-specific' inquiry based on its judicial experience
and common sense to assess whether the Third Amended Complaint plausibly
suggests an entitlement to relief, as required under <u>Iqbal</u>").

Here, there are no plausible allegations supporting the clam that there was an
implied contract between DeMonaco, WNP, and Plaintiff, especially in light of
Plaintiff's earlier claims that DeMonaco was represented by an entirely different
agent at UTA.  Plaintiff's transparent obfuscation should be rejected.

## 4.    Plaintiff's Claims Fails Because His SAC Fails To Adequately Allege Other Elements Required For An Implied-In-Fact Contract.

Plaintiff has also failed to include other factual allegations necessary to
support his implied contract claim – namely, that he conditioned the submission of
his idea upon UTA's promise to pay, and that UTA, knowing of this condition,
voluntarily accepted the submission of the idea.  To state a claim for breach of
implied-in-fact contract under California law, the plaintiff must allege facts from
which the court can reasonably infer that:  (1) the plaintiff clearly conditioned the
submission of his idea to the defendant upon the defendant's promise to pay for it if
the defendant used it; (2) the defendant, knowing this condition <u>before</u> the plaintiff
disclosed the idea, voluntarily accepted the submission of the idea.  <u>See Desny</u>, 46

MOTION TO DISMISS
DWT 25549061v12 0020040-000121

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Cal. 2d at 738-739.  See also Faris,  97 Cal. App. 3d at 318 ("for an implied-in-fact contract one must show: that he or she prepared the work; that he or she disclosed the work to the offeree for sale; under all circumstances attending disclosure it can be concluded that the offeree voluntarily accepted the disclosure knowing the conditions on which it was tendered").  Thus, as courts have concluded, "no contract may be implied where an idea has been disclosed not to gain compensation for that idea but for the sole purpose of inducing the defendant to enter a future business relationship."  Aliotti v. R. Dakin & Co., 831 F.2d 898, 902 (9th Cir. 1987).

In its prior ruling dismissing this claim, the Court pointed to these requirements, noting that Plaintiff had "identified no allegations to show that UTA ever understood [Plaintiff's intent to be compensated], or agreed to that condition before receiving the idea."  Dkt. No. 26 at 3-4.  As the Court explained, "there needs to be more than a unilateral offer and Benel only offers argument as to his intent, not UTA's understanding or conduct."  Id. at 4.  Plaintiff failed to allege facts that "show that UTA voluntarily accepted the conveyance on the condition that it had an obligation to pay for it"; instead, "[t]he facts alleged by Benel would remove any requirement of assent or an agreement that is the heart of the claim."  Id. at 5.

The SAC does not correct this glaring defect.  Plaintiff now claims that Peck asked for "permission to submit the Screenplay," but requesting permission to send someone something does not amount to a mutual understanding as to payment, let alone an understanding or agreement that the two agents involved were contracting for every client of the entire agency.  The email correspondence attached to the SAC states simply that Peck "look[ed] forward to hearing [Davis's] thoughts on the material" (SAC Ex. C).  The new allegations that UTA and Peck's clients are involved in purported unrelated "entertainment-related projects," or that Peck's wife is represented by UTA (SAC ¶¶ 26-28), are meaningless; neither factually supports the assumption that the submission was made on the condition that any use of a

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

similar idea, by any UTA client, would result in a payment to Plaintiff.[16]

Plaintiff's allegations are even more far afield with respect to DeMonaco and WNP.  There are <u>no</u> facts alleged that can support a conclusion that Plaintiff's manager, Kramer, and Davis arrived at a clear and <u>mutual</u> understanding that Kramer and Davis were accepting the condition of payment on behalf of <u>all</u> of UTA's clients such that Plaintiff would be paid if any client of the agency ever used a similar idea.  As this Court previously found, if Plaintiff did not have a mutual understanding with UTA – the <u>only</u> party with whom Plaintiff had contact – then it certainly cannot be said that there was a mutual understanding between Plaintiff,  DeMonaco and WNP.  Because Plaintiff's allegations are woefully inadequate, despite three opportunities to plead a claim, his implied contract claim should be dismissed with prejudice.

**C.     Plaintiff's Declaratory Relief Claim Also Should Be Dismissed.**

Plaintiff's SAC asserts a claim for declaratory relief against all Film Defendants.  This claim also should be dismissed because it is based on the same inadequate allegations made for Plaintiff's implied contract claim, and because it seeks relief foreclosed by controlling United States Supreme Court authority.

**1.     The Declaratory Relief Claim Is Impermissibly Duplicative.**

It is well settled that "[t]he declaratory relief statute should not be used for the purpose of anticipating and determining an issue which can be determined in the main action.  The object of the statute is to afford a new form of relief where needed and not to furnish a litigant with a second cause of action for the determination of identical issues."  <u>General of America Ins. v. Lilly</u>, 258 Cal. App. 2d 465, 470

---

[16] Plaintiff's claims regarding his request for "permission" to send the Screenplay echoes another allegation made in <u>Faris</u>.  There, plaintiff argued that Enberg had solicited the submission by returning his phone call.  The court rejected the argument, holding that "[i]t would be entirely inconsistent with Desny to hold that an implied-in-fact contract could be created because a telephone call was returned or because a request was made for an opportunity to read the work that was unconditionally submitted."  <u>Id.</u>  The same result is compelled here – requesting and receiving permission to send a Screenplay does not create a mutual understanding of compensation sufficient to create an implied contract.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

(1968).  Where a declaratory relief claim does not clarify the rights and obligations of the parties beyond the other claims in the action, or where "[t]he issues invoked in [the declaratory-relief claim] already were fully engaged by other causes of action," the claim for "declaratory relief [i]s unnecessary and superfluous."  Hood v. Superior Court, 33 Cal. App. 4th 319, 324 (1995).[17]

The declaratory relief claim here purports to arise from the same conduct as his implied contract claim and seeks the same relief – compensation and credit.  Compare SAC ¶ 73 with ¶ 78.  That issue, however, is "fully engaged by" his copyright and contract claims, making the declaration Plaintiff seeks "unnecessary and superfluous."  For this reason, Plaintiff's duplicative declaratory relief claim should be dismissed for the same reasons as his copyright and contract claims.

### 2.     Plaintiff's Request For A Writing Credit Is A Disguised Reverse-Passing-Off Claim That Is Barred As A Matter of Law.

Plaintiff's claim for declaratory relief also appears to be an inartful "reverse-passing-off" claim under Section 43(a) of the Lanham Act.[18]  Plaintiff alleges that the Film Defendants engaged in an "orchestrated, willful and malicious effort … to steal the core plot and story of Plaintiff's copyrighted expression, camouflage it, and pass

---

[17] See also Howard v. First Horizon Loan Corp., 2013 U.S. Dist. LEXIS 85585, *16 (N.D. Cal. June 18, 2013) (granting 12(b)(6) motion to dismiss claim for declaratory relief against Metlife where all other substantive claims were dismissed); D.R. Horton L.A. Holding Co. v. Am. Safety Indem. Co., 2012 U.S. Dist. LEXIS 1881, *65 (S.D. Cal. Jan. 5, 2012) (finding declaratory relief claim "unnecessary and superfluous" because issues raised in that claim fully addressed in other claims).Goodspeed v. Nichols, 2012 U.S. Dist. LEXIS 165927, *23-*24 (E.D. Cal. Nov. 19, 2012) (where plaintiff has alleged substantive causes of action, declaratory relief claim should not be used as a superfluous additional claim); Hupp v. City of Beaumont, 2011 U.S. Dist. LEXIS 151709, *18 (C.D. Cal. Dec. 12, 2011) (declaratory relief "should not be used to determine issues already fully engaged by other causes of action"); Britz Fertilizers, Inc. v. Bayer Corp., 665 F. Supp. 2d 1142, 1173 (E.D. Cal. 2009) (same); Richter v. Mutual of Omaha Ins. Co., 2007 U.S. Dist. LEXIS 102301, *14 (C.D. Cal. Feb. 1, 2007) (same).

[18] Reverse-passing-off "occurs when one party obtains a second party's goods, removes the second party's name, and then markets the product under its own name." Aagard v. Palomar Builders, 344 F. Supp. 2d 1211, 1217 (E.D. Cal. 2004).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

it off as the script and motion picture, *The Purge*[.]"  SAC ¶ 59, 76.  These allegations parallel Section 43(a) of the Lanham Act, which prohibits the use in commerce of "any false designation of origin … which is likely to cause confusion, or to cause mistake, or to deceive … as to the origin, sponsorship, or approval of [] goods, services, or commercial activities[.]"  15 U.S.C. § 1125(a)(1)(A).

But the United States Supreme Court has held that a plaintiff cannot maintain a reverse-passing-off claim based on a defendant's purported use of the plaintiff's ideas, concepts, or "communicative products," like the Screenplay here.  <u>Dastar Corp. v. 20th Century Fox Film Corp.</u>, 539 U.S. 23 (2003).  In <u>Dastar</u>, the defendant purchased videotapes of a 26-episode television series called "Crusade in Europe" ("Crusade") that had fallen into the public domain; edited and repackaged the series, and retitled it "World War II Campaigns in Europe" ("Campaigns").  <u>Id.</u>  Although Campaigns retained much of Crusade's original content, Campaigns did not include any reference to Crusade in the credits.  <u>Id.</u> at 27.  The plaintiffs sued, claiming that the failure to credit Crusade violated Section 43(a) of the Lanham Act.  <u>Id.</u>  They argued that by "marketing and selling Campaigns as its own product without acknowledging its nearly wholesale reliance on the Crusade television series," the defendant was "likely to cause confusion" about the origin of the work.  <u>Id.</u> at 31.

The Supreme Court rejected the claim, however, finding the phrase "origin of goods" in the Lanham Act "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods."  <u>Dastar</u>, 539 U.S. at 37.  Any other interpretation of that phrase, the Court reasoned, "would not only stretch the text, but [] would be out of accord with the history and purpose of the Lanham Act and inconsistent with precedent."  <u>Id.</u> at 32.  The Court also refused to create an exception to this rule for communicative products – those valued "for the intellectual content that [they] convey."  <u>Id.</u> at 33.  "[A]ccording special treatment to communicative products [would] cause[] the Lanham Act to conflict with the law of copyright, which

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

addresses that subject specifically," and impermissibly extend "trademark and related protections into areas traditionally occupied by patent or copyright." Id.

Courts have made clear that the Dastar rule also bars reverse-passing-off claims based on a defendant's alleged use of a plaintiff's copyrighted work, like the Screenplay here. See, e.g., Williams v. UMG Recordings, 281 F. Supp. 2d 1177, 1185 (C.D. Cal. 2003) (dismissing plaintiff's suit for "credit" after film incorporating his copyrighted narration script excluded him from the film's credits, based on Dastar); A Slice of Pie Prods. v. Wayans Bros. Entm't, 392 F. Supp. 2d 297, 312 (D. Conn. 2005) (rejecting claim that defendants violated Lanham Act by purportedly misrepresenting the origin of their film "White Chicks").

Plaintiff's masked reverse-passing-off claim is similarly barred. His declaratory relief claim complains that the Film Defendants allegedly used his screenplay without crediting him. But Dastar and its progeny make clear that "any protection for the misappropriation of [] content comes from the Copyright Act, not from the Lanham Act." Slice of Pie, 392 F. Supp. 2d at 313. Accordingly, Plaintiff's declaratory relief claim fails as a matter of law and should be dismissed.[19]

DATED: March 13, 2015                    By:   /s/ Kelli L. Sager
                                              Kelli L. Sager

_____

[19] If Plaintiff's declaratory relief claim is not intended as a reverse-passing-off claim under Section 43(a), then it is preempted by federal copyright law, and should be dismissed for this additional reason. Plaintiff alleges that the Screenplay falls within the subject matter of copyright, and the declaratory relief claim – which is based solely on the purported copying of the Screenplay, other than the impermissible demand for "credit" – is indistinguishable from his copyright claims. See 17 U.S.C. § 301 ("all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright … are governed exclusively by this title"); Jules Jordan Video, Inc. v. 144942 Canada Inc., 617 F.3d 1146, 1152 (9th Cir. 2010) ("[s]ection 301 of the Act provides for exclusive jurisdiction over rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified in the Act."); Moore v. Lightstorm Entm't, 2013 WL 4052813, *2 (D. Md. Aug. 9, 2013) (dismissing declaratory relief claim on preemption grounds); Eb-Bran Prods., Inc. v. Warner Elektra Atl., Inc., 2005 WL 3107738, *3 (W.D. Mich. Nov. 18, 2005) (same).

MOTION TO DISMISS
DWT 25549061v12 0020040-000121

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899