**DAVIS WRIGHT TREMAINE LLP**
865 S. FIGUEROA ST.
SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
TELEPHONE (213) 633-6800
FAX (213) 633-6899

KELLI L. SAGER (State Bar No. 120162)
  kellisager@dwt.com
KAREN A. HENRY (State Bar No. 229707)
  karenhenry@dwt.com
COLLIN J. PENG-SUE (State Bar No. 302227)
  collinpengsue@dwt.com

Attorneys for Defendants
UNIVERSAL CITY STUDIOS LLC,
BLUMHOUSE PRODUCTIONS, LLC,
OVERLORD PRODUCTIONS, LLC,
PLATINUM DUNES PRODUCTIONS,
WHY NOT PRODUCTIONS, INC., and
JAMES DEMONACO

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS JORDAN-BENEL, an individual,<br><br>                    Plaintiff,<br><br>        vs.<br><br>UNIVERSAL CITY STUDIOS LLC, a Delaware corporation; UNITED TALENT AGENCY, INC., a California corporation; BLUMHOUSE PRODUCTIONS, LLC, a Delaware Limited Liability Company; OVERLORD PRODUCTIONS LLC, a California Limited Liability Company; PLATINUM DUNES PRODUCTIONS, a California Corporation, WHY NOT PRODUCTIONS, INC. d/b/a WHY NOT FILMS, a Nevada Corporation; JAMES DEMONACO, an individual; and DOES 1 to 50, inclusive,<br><br>                    Defendants. | Case No. **14-cv-05577-MWF-MRW**<br>Assigned to Hon. Michael W. Fitzgerald<br><br>**FILM DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE PORTIONS OF PLAINTIFF'S SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[Fed. R. Civ. P. 12(f)]**<br><br>Hearing Date:     May 18, 2015<br>Time:                10:00 a.m.<br>Courtroom:        1600<br><br>[Motion To Dismiss (FRCP 12(b)(6)); Special Motion To Strike (C.C.P. § 425.16); Request For Judicial Notice; Notice Of Lodging With Ex. I-J; and Declaration Of Karen A. Henry With Exhibits A-H, K Filed Concurrently]<br><br>Action Filed:  July 17, 2014 |

---

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 18, 2015 at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Michael W. Fitzgerald of the United States District Court for the Central District of California, in Courtroom 1600 of the Spring Street Courthouse, located at 312 N. Spring Street, Los Angeles, California 90012, defendants Universal City Studios LLC ("Universal"), Blumhouse Productions, LLC ("Blumhouse"), Overlord Productions, LLC ("Overlord"), Platinum Dunes Productions ("Platinum Dunes"), Why Not Productions, Inc. ("WNP"), and James DeMonaco ("DeMonaco") (collectively, "Film Defendants"),[1] will and hereby do move this Court, pursuant to Federal Rule of Civil Procedure 12(f), for an order striking the following portions of Plaintiff's Second Amended Complaint ("SAC"):

- **The Facts (pp. 8-9) – Paragraph 41 (in its entirety)**: "In the alternative, Plaintiff is informed and believes and thereon alleges that Defendants accessed and copied from *Settler's Day* via another route of access. On or about February 2, 2011, Plaintiff electronically submitted *Settler's Day* to Ken F. Levin ('Levin'), a literary agent. Plaintiff is informed and believes and thereon alleges that Levin has and had a preexisting working relationship with Defendant Universal and Michael Bay ('Bay'), who is the owner of Defendant Platinum Dunes. Therefore, in the alternative, Defendants accessed *Settler's Day* through Universal/Platinum Dunes as early as February 2011."

- **First Claim for Relief (p. 19) – Paragraph 51:19-21 (underlined portion)**: "Said infringement entitles Plaintiff to actual and statutory damages, injunctive and other relief provided by the Copyright Act."

---

[1] Plaintiff also has sued United Talent Agency ("UTA"), which is separately represented.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

- **Second Claim for Relief (p. 20) – Paragraph 57:16-17 (underlined portion)**: "Said infringement entitles Plaintiff to actual <u>and statutory</u> damages, injunctive and other relief provided by the Copyright Act."

- **Fifth Claim for Relief (p. 23) – Paragraphs 77-79 (underlined portions)**: "An actual dispute and controversy now exists between the Defendants and Plaintiff as to whether Plaintiff should be entitled to compensation, <u>and credit</u> as writer and creator of both *The Purge* and the Shooting Script. Plaintiff believes that he is <u>both</u> entitled to compensation, <u>and credit</u> as writer of both *The Purge* and the Shooting Script, as well (*Anarchy*) [sic] <u>(which again credits DeMonaco as the sole author</u>. Plaintiff is informed and believes and on that basis alleges, that Defendants dispute Plaintiff's contentions. Plaintiff therefore desires and requests a judicial determination and declaration of the respective rights and obligations of the parties."

- **Prayer (p. 24) – Paragraph 4:17-18 (underlined portion)**: "For <u>statutory damages,</u> costs, <u>and attorney fees</u> with respect to *The Purge: Anarchy* and any other derivative works."

- **Prayer (pp. 24-25) – Paragraph 9 (underlined portion)**: "For declaratory relief to <u>credit and</u> pay Plaintiff as the writer of *The Purge*, and to <u>credit and</u> pay Plaintiff as the writer on all future broadcasts, DVD releases, licenses, etc. of *The Purge*, without exclusion."

This Motion is made on the following grounds:

<u>First</u>, references to statutory damages and attorneys' fees should be stricken because Plaintiff is not entitled to seek either type of relief in this case. Where, as here, a plaintiff alleges copyright infringement based on an unpublished work, statutory damages and attorneys' fees may not be recovered unless the work was registered with the Copyright Office at the time that the alleged infringement commenced. <u>See</u> 17 U.S.C. § 412(1). Because the allegations in the SAC and the attached Copyright Registration Certificate make clear that the Film Defendants' purported infringement of Plaintiff's screenplay (the "Screenplay") commenced

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

nearly four months <u>before</u> Plaintiff registered the Screenplay with the Copyright Office, he is not entitled to recover either statutory damages or attorneys' fees in this action.  Consequently, all references to statutory damages and attorneys' fees are immaterial and impertinent under Rule 12(f), and should be stricken.

<u>Second</u>, Plaintiff's claim for declaratory relief should be stricken to the extent that it seeks a ruling that he is entitled to receive "credit" as the "writer" of the films "The Purge" and "The Purge: Anarchy," and the "Shooting Script" for "The Purge." Plaintiff's claim for "credit" is a thinly disguised reverse-passing-off claim under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), but the United States Supreme Court has held that such claims cannot arise from a defendant's purported use of the plaintiff's ideas, concepts, or "communicative products," like Plaintiff's Screenplay at issue here.  <u>See</u> <u>Dastar v. 20th Century Fox</u>, 539 U.S. 23, 37 (2003).

<u>Third</u>, Paragraph 41 of the SAC should be stricken because it contains an entirely new theory and new factual allegations concerning the Film Defendants' purported "access" to Plaintiff's Screenplay for purposes of his copyright claims. The Court was clear that any amendments were "limited to the fourth claim for relief," <u>i.e.</u>, Plaintiff's claim for breach of an implied-in-fact agreement.  Dkt. No. 26 at 6.  Because Plaintiff's new theory of "access" is relevant only to his copyright claims, and attempts to amend those claims in violation of this Court's order, it should be stricken.

This Motion is based on this Notice; on the attached Memorandum Of Points And Authorities; on the concurrently-filed Declaration of Karen A. Henry In Support Of Motion To Dismiss, Motion To Strike, And Special Motion To Strike With Exhibits A-H, K; on the concurrently-filed Request For Judicial Notice In Support Of Motion To Dismiss, Motion To Strike, And Special Motion To Strike; on the concurrently-filed Notice Of Lodging With Exhibits I-J; on any other matters of which this Court may take judicial notice; on all pleadings, files and records in this

DEFENDANTS' MOTION TO STRIKE PORTIONS OF PLAINTIFF'S SAC
DWT 25589558v8 0020040-000121

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

action; and on such argument as may be received by this Court at the hearing on this Motion.

    This Motion is made following the conference of counsel that occurred on March 5, 2015, pursuant to Local Rule 7-3.  <u>See</u> Henry Decl. ¶¶ 2-3.


DATED: March 13, 2015                DAVIS WRIGHT TREMAINE LLP
                                     KELLI L. SAGER
                                     KAREN A. HENRY
                                     COLLIN J. PENG-SUE


                                     By: /s/ Kelli L. Sager
                                              Kelli L. Sager
                                     Attorneys for Defendants
                                     UNIVERSAL CITY STUDIOS LLC,
                                     BLUMHOUSE PRODUCTIONS, LLC,
                                     OVERLORD PRODUCTIONS, LLC,
                                     PLATINUM DUNES PRODUCTIONS,
                                     WHY NOT PRODUCTIONS, INC., and
                                     JAMES DEMONACO

DEFENDANTS' MOTION TO STRIKE PORTIONS OF PLAINTIFF'S SAC
DWT 25589558v8 0020040-000121

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF CONTENTS

Page

I.    SUMMARY OF ARGUMENT ................................................................ 1

II.   A COURT MAY STRIKE A PRAYER FOR RELIEF AND RELATED
      ALLEGATIONS WHERE A PLAINTIFF SEEKS DAMAGES THAT
      ARE NOT RECOVERABLE, AS A MATTER OF LAW. ........................... 3

      A.    Section 412 Forecloses An Award of Statutory Damages Or
            Attorney's Fees For The Alleged Infringement Of A Work That Is
            Unpublished And Unregistered When The Infringement
            Purportedly Commences. .................................................... 5

      B.    The Alleged Infringement Of "Settler's Day" "Commenced"
            Months Before The Screenplay Was Registered................................. 7

      C.    Because Plaintiff Cannot Recover Statutory Damages Or
            Attorney's Fees, References To Those Remedies Should Be
            Stricken From The SAC. ................................................... 14

III.  COURT SHOULD STRIKE PORTIONS OF PLAINTIFF'S
      DECLARATORY RELIEF CLAIM THAT SEEK AN ORDER
      GIVING HIM "CREDIT" AS A WRITER OF THE FILMS AND
      SCRIPT. ........................................................................ 15

IV.   PLAINTIFF'S NEW ALLEGATIONS CONCERNING A DIFFERENT
      THEORY OF "ACCESS" VIOLATE THE COURT'S ORDER AND
      SHOULD BE STRICKEN. ......................................................... 19

V.    CONCLUSION .................................................................. 21

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

<u>Page</u>

**Cases**

<u>A Slice of Pie Productions v. Wayans Bros. Entm't</u>,
   392 F. Supp. 2d 297 (D. Conn. 2005) .................................................... 17

<u>Aagard v. Palomar Builders</u>,
   344 F. Supp. 2d 1211 (E.D. Cal. 2004) ................................................ 15

<u>B2B CFO Partners, LLC v. Kaufman</u>,
   787 F. Supp. 2d 1002 (D. Ariz. 2011) ...................................... 10, 11, 13

<u>Becker v. Wells Fargo Bank, NA, Inc.</u>,
   2012 WL 3647916 (E.D. Cal. Aug. 22, 2012) ....................................... 20

<u>Benton v. Baker Hughes</u>,
   2013 WL 3353636 (C.D. Cal. June 30, 2013) ....................................... 19

<u>BJC Health Sys. v. Columbia Casualty Co.</u>,
   478 F.3d 908 (8th Cir. 2007) ................................................................... 4

<u>Cable News Network, Inc. v. Video Monitoring Services of America, Inc.</u>,
   940 F. 2d 1471 (11th Cir. 1991) .............................................................. 5

<u>California ex rel. State Lands Comm'n v. U.S.</u>,
   512 F. Supp. 36 (N.D. Cal. 1981) ............................................................ 4

<u>Carroll v. Kahn</u>,
   2003 WL 22327299 (N.D.N.Y. 2003) .................................................... 17

<u>City of Carlsbad v. Shah</u>,
   850 F. Supp. 2d 1087 (S.D. Cal. 2012)................................................... 10

<u>Cognotec Servs. Ltd. v. Morgan Guaranty Trust</u>,
   862 F. Supp. 45 (S.D.N.Y. 1994) ...................................................... 4, 14

<u>Crane v. Yarborough</u>,
   2012 WL 1067965 (C.D. Cal. Feb. 6, 2012) ......................................... 19

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Curtis v. Benson,
    1997 WL 189135 (E.D. La. 1997) ......................................................... 4

Dastar v. 20th Century Fox,
    539 U.S. 23 (2003) ....................................................... 3, 15, 16, 17

Derek Andrew, Inc. v. Poof Apparel,
    528 F.3d 696 (9th Cir. 2008) ....................................................... 5, 8, 9

Dichter-Mad Family Partners, LLP v. U.S.,
    709 F. 3d 749 (9th Cir. 2013) ......................................................... 6

Duke University v. Elan Corp.,
    2006 WL 267185 (M.D.N.C. 2006) ........................................................ 4

Dyer v. Napier,
    2006 WL 680551 (D. Ariz. Mar. 16 2006) ............................................... 10

Equine Legal Solutions v. Buntrock,
    2008 WL 111237 (N.D. Cal. 2008) ...................................................... 4

Fantasy, Inc. v. Fogerty,
    984 F.2d 1524 (9th Cir. 1993) ................................................. 3, 4, 6, 14

Gardner v. CafePress Inc.,
    2014 U.S. Dist. LEXIS 25405 (S.D. Cal. Feb. 26, 2014) ................................ 10

Gerig v. Krause Publications,
    58 F. Supp. 2d 1261 (D. Kan. 1999) ........................................... 4, 6, 14

Holabird and Root Architects Engineers Interiors v. Physicians
    Management of Indiana,
    1994 WL 395126 (N.D. Ill. 1994) ...................................................... 4

Hustlers Inc. v. Thomasson,
    73 U.S.P.Q.2d 1923 (N.D. Ga. 2004) ................................................... 17

Inland Cities Express, Inc. v. Diamond Nat'l Corp.,
    524 F.2d 753 (9th Cir. 1975) .......................................................... 19

Johnson v. Metropolitan Sewer Dist.,
    926 F. Supp. 874 (E.D. Mo. 1996) ...................................................... 4

Kim v. Sumitomo Bank,
    17 Cal. App. 4th 974 (1993) ........................................................... 20

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Mason v. Montgomery Data, Inc.,
   967 F.2d 135 (5th Cir. 1992) .................................................................... 7, 8

McNabb Bennett & Associates v. Terp Meyers Architects,
   1987 WL 7817 (N.D. Ill. 1987) ...................................................................... 5

Michaels v. Internet Entertainment Group,
   1998 WL 882848 (C.D. Cal. 1998)................................................................. 6

Morgan v. Hawthorne Homes, Inc.,
   2011 U.S. Dist. LEXIS 59210 (W.D. Pa. June 2, 2011)........................... 11, 12, 13

Palm Beach Strategic Income, LP v. Salzman,
   457 F. App'x 40 (2d Cir. 2012) .................................................................... 19

Parfums Givenchy, Inc. v. C & C Beauty Sales, Inc.,
   832 F. Supp. 1378 (C.D. Cal. 1993) ............................................................. 10

Singh v. Famous Overseas, Inc.,
   680 F. Supp. 533 (E.D.N.Y. 1988) ................................................................. 6

Tokidoki v. Fortune Dynamic,
   2009 WL 2366439 (C.D. Cal. 2009) ............................................................... 6

van't Rood v. County of Santa Clara,
   113 Cal. App. 4th 549 (2003) ...................................................................... 20

Warren v. Fox Family Worldwide,
   171 F. Supp. 2d 1057 (C.D. Cal. 2001) .......................................................... 6

Wilkerson v. Butler,
   229 F.R.D. 166 (E.D. Cal. 2005) ................................................................ 3, 4

Williams v. UMG Recordings,
   281 F. Supp. 2d 1177 (C.D. Cal. 2003) ......................................................... 17

Yue v. Chordiant Software, Inc.,
   2009 U.S. Dist. LEXIS 118824 (N.D. Cal. Dec. 21, 2009)................................. 10

Zito v. Steeplechase Films, Inc.,
   267 F. Supp. 2d 1022 (N.D. Cal. 2003) ........................................................ 1, 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANTS' MOTION TO STRIKE PORTIONS OF PLAINTIFF'S SAC
DWT 25589558v8 0020040-000121

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**Statutes**

15 U.S.C.
   § 1125(a) ...................................................................................... 3, 16, 17
   § 1125(a)(1)(A) ....................................................................................... 15
   § 1125(a)(43)(a) ................................................................................*passim*

17 U.S.C.
   § 412...............................................................................................*passim*
   § 412(1) ..................................................................................... 1, 2, 5, 6
   § 412(2) ...................................................................................................... 5
   § 504(c) ...................................................................................................... 8

**Rules**

Federal Rule of Civil Procedure 12(f)..............................................*passim*

**Other Authorities**

Hawes and Dietz, <u>Copyright Registration Practice</u> (2d ed.), §§ 23:9.1-
   23:9.2.......................................................................................................... 6

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### SUMMARY OF ARGUMENT

Plaintiff Douglas Jordan-Benel has filed a Second Amended Complaint ("SAC") against defendants Universal City Studios LLC, Blumhouse Productions, LLC, Overlord Productions, LLC, Platinum Dunes Productions, Why Not Productions, Inc., and James DeMonaco (collectively, "Film Defendants"), alleging they infringed the copyright in his unpublished screenplay, titled "Settler's Day" (the "Screenplay") by copying "wholly original elements" of the Screenplay in the full-length feature film "The Purge," the shooting script for that film ("Shooting Script"), and in the Film's sequel, "The Purge: Anarchy" ("Anarchy") (collectively "the Works").  SAC, ¶¶ 48-51 and 54-57.  Plaintiff prays for statutory damages and attorney's fees for the alleged infringements of "Anarchy" "and any other derivative works[,]" and also seeks a declaration from this Court ordering that he is entitled to "credit" as the writer of "The Purge," the Shooting Script, and "Anarchy."  See id. at ¶ 78 and Prayer at ¶ 9.  For the reasons discussed below, the Court should strike the relief Plaintiff seeks from his SAC, as well as new factual allegations that were added in violation of the Court's limited order permitting further amendment.  SAC ¶ 41.

First, Plaintiff indisputably is precluded from recovering statutory damages or attorney's fees for the Film Defendants' alleged infringement of the copyright in "Settler's Day," because the unpublished Screenplay was not registered with the Copyright Office at the time the alleged infringement commenced.  Section 412(1) of the Copyright Act makes clear that "no award of statutory damages or of attorney's fees … shall be made for … any infringement of copyright in an unpublished work commenced before the effective date of its registration."  17 U.S.C. § 412(1).  Put simply, "if a work is unpublished and unregistered at the time of infringement, no statutory damages or attorney's fees are available[.]"  Zito v. Steeplechase Films,

DEFENDANTS' MOTION TO STRIKE PORTIONS OF PLAINTIFF'S SAC
DWT 25589558v8 0020040-000121

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

_Inc._, 267 F. Supp. 2d 1022, 1026 (N.D. Cal. 2003).  This rule bars Plaintiff from recovering statutory damages or attorney's fees in this action.

Plaintiff misapprehends the statutory limitation, apparently believing (inaccurately) that a lawsuit that alleges more than one infringing work can automatically extend the limitation on damages.  According to Plaintiff, the Film Defendants infringed his Screenplay by "copying wholly original elements" from the Screenplay in the Shooting Script, "The Purge," and "Anarchy" and "other related media."  SAC, ¶¶ 48, 51, 54.  But where, as here, a plaintiff alleges multiple, continuing infringements of the same work by the same defendants, the alleged infringements "commence," within the meaning of Section 412(1), upon the _first act_ of infringement.  This means, even in a case of multiple alleged infringements, a plaintiff only is permitted to recover statutory damages and/or attorney's fees if the _first act of infringement_ in the series of ongoing infringements occurs _after_ the effective date of the copyright registration for the allegedly infringed work.

Here, there is no dispute that the first act of alleged infringement in the series of purported infringements claimed by Plaintiff occurred, _at the latest_, when "The Purge" was released on June 7, 2013[2] – nearly four months _before_ Plaintiff's Screenplay was registered.  _See_ SAC, ¶ 16, 30.  Stated differently, Plaintiff's Screenplay was unpublished and unregistered when the alleged infringement "commenced" (_i.e._, upon the first act of alleged infringement).  As a result, Plaintiff cannot recover statutory damages or attorney's fees.[3]  _See_ Section II, _infra_.

---

[2] The Copyright Office catalog entry for "The Purge" demonstrates that the film was first published on May 31, 2013.  _See_ http://cocatalog.loc.gov/cgi-bin/Pwebrecon.cgi?v1=13&ti=1,13&Search_Arg=purge&Search_Code=TALL&CNT=25&REC=0&RD=0&RC=0&PID=FgMjtEfW3UT-vplxeAdBDWoCEa&SEQ=20150306182311&SID=1.  Nevertheless, statutory damages and attorney's fees are unavailable even applying the June 7, 2013 date in the SAC.

[3] The Film Defendants dispute that Plaintiff's copyright claims have any merit, and expressly reserve their defenses to the alleged infringement.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Second, Plaintiff's claim for declaratory relief – which, in essence, is a thinly disguised reverse-passing-off claim under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) (see SAC, ¶¶ 59, 77-79) – is barred by controlling Supreme Court authority.  See Dastar v. 20th Century Fox, 539 U.S. 23 (2003).  As the Supreme Court made clear, the Lanham Act does not create a remedy for a defendant's alleged unauthorized use of a plaintiff's idea, concept, or communicative work.  Id. at 37.  Thus, even if the Film Defendants had infringed Plaintiff's Screenplay – which they did not – Plaintiff could not, as a matter of law, maintain a claim for reverse-passing-off, no matter how the claim is styled.  See Section III, infra.

Finally, this Court should strike Paragraph 41 of the SAC because it contains additional factual allegations of purported access supporting Plaintiff's copyright claims, and the Court was clear in ordering that any amendments to Plaintiff's First Amended Complaint should be limited to those allegations supporting his Fourth Claim For Relief for breach of implied contract.  Dkt. No. 26 at 6.  See Section IV, infra.

## II.

## A COURT MAY STRIKE A PRAYER FOR RELIEF AND RELATED ALLEGATIONS WHERE A PLAINTIFF SEEKS DAMAGES THAT ARE NOT RECOVERABLE, AS A MATTER OF LAW.

Federal Rule of Civil Procedure 12(f) provides that a "court may strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter."  Of particular importance here, courts have defined "immaterial" matter to include allegations that "ha[ve] no essential or important relationship to the claim for relief or defenses pleaded."  Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993) rev'd on other grounds, 510 U.S. 517, 535 (1994); see also Wilkerson v. Butler, 229 F.R.D. 166, 170 (E.D. Cal. 2005) (same).  Similarly, courts have defined "impertinent" matter to include allegations "that do not pertain, and are not necessary, to the issues in question."  Fantasy, 984 F.2d at 1527; Wilkerson, 229

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

F.R.D. at 170.  Courts enjoy "liberal discretion" to strike "immaterial" and "impertinent" matters from pleadings.  BJC Health Sys. v. Columbia Casualty Co., 478 F.3d 908, 917 (8th Cir. 2007).

The Ninth Circuit has emphasized that the use of motions to strike under Rule 12(f) serves an important purpose – specifically, "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."  Fantasy, 984 F.2d at 1527; see also Wilkerson, 229 F.R.D. at 170.  A district court may "properly grant [a] motion to strike for the purpose of streamlining the ultimate resolution of the action and focusing the jury's attention on the real issues in the case."  Fantasy, 984 F.2d at 1528, citing California ex rel. State Lands Comm'n v. U.S., 512 F. Supp. 36, 38 (N.D. Cal. 1981).

Under Rule 12(f), "[a] prayer for relief not available under the applicable law ... is properly the subject of a motion to strike."  Johnson v. Metropolitan Sewer Dist., 926 F. Supp. 874, 875 (E.D. Mo. 1996).  Such prayers are both "immaterial" and "impertinent" within the meaning of Rule 12(f).  In BJC Health, for example, the court struck a prayer for punitive damages because the plaintiff had failed to allege fraud with the requisite particularity.  478 F.3d at 916-917.  Without proper allegations of fraud, the court held that the plaintiff could not possibly recover punitive damages, and thus granted the defendant's motion to strike.  Id.  See also Wilkerson, 229 F.R.D. at 172 (striking claim for punitive damages that "add[ed] nothing to further [the plaintiff's] … cause of action").

Applying these principles, courts regularly have granted Rule 12(f) motions to strike prayers for statutory damages and attorneys' fees in copyright-infringement actions where, as here, those remedies were barred by Section 412.  See, e.g., Equine Legal Solutions v. Buntrock, 2008 WL 111237, *1 n.1 (N.D. Cal. 2008); Duke University v. Elan Corp., 2006 WL 267185, *4 n.4 (M.D.N.C. 2006); Gerig v. Krause Publications, 58 F. Supp. 2d 1261, 1268-1269 (D. Kan. 1999); Curtis v. Benson, 1997 WL 189135, *2 (E.D. La. 1997); Cognotec Servs. Ltd. v. Morgan

DEFENDANTS' MOTION TO STRIKE PORTIONS OF PLAINTIFF'S SAC
DWT 25589558v8 0020040-000121

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Guaranty Trust, 862 F. Supp. 45, 52 (S.D.N.Y. 1994); Holabird and Root Architects Engineers Interiors v. Physicians Management of Indiana, 1994 WL 395126, *2 (N.D. Ill. 1994); McNabb Bennett & Associates v. Terp Meyers Architects, 1987 WL 7817, *3 (N.D. Ill. 1987).  The Court should do the same here.

**A.     Section 412 Forecloses An Award of Statutory Damages Or Attorney's Fees For The Alleged Infringement Of A Work That Is Unpublished And Unregistered When The Infringement Purportedly Commences.**

Plaintiff demands remedies – statutory damages and attorney's fees – that are not recoverable in this action as a matter of law.  Section 412 of the Copyright Act requires that a plaintiff who seeks to recover statutory damages or attorney's fees for copyright infringement must meet certain prerequisites.  Subject to narrow exceptions that are not relevant here, Section 412(1) provides that "no award of statutory damages or of attorney's fees … shall be made for … any infringement of copyright in an unpublished work commenced before the effective date of its registration."  17 U.S.C. § 412(1) (emphasis added).[4]  The Ninth Circuit has observed that Section 412 was designed to implement two fundamental policies.  First, "by denying an award of statutory damages and attorney's fees where infringement takes place before registration, Congress sought to provide copyright owners with an incentive to register their copyrights promptly."  Derek Andrew, Inc. v. Poof Apparel, 528 F.3d 696, 700 (9th Cir. 2008).  Second, "§ 412 encourages potential infringers to check the Copyright Office's database."  Id.

_____

[4] Section 412(2) provides a different standard for an award of statutory damages and attorneys' fees for infringement of a published work.  See 17 U.S.C. § 412(2).  Because Plaintiff had not published "Settler's Day" at the time of the purported infringement, however, Section 412(2) is irrelevant.  The registration number assigned to Plaintiff's Screenplay confirms that it was unpublished when the registration certificate was issued.  See Cable News Network, Inc. v. Video Monitoring Services of America, Inc., 940 F. 2d 1471, 1475 (11th Cir. 1991) ("the lower case 'u' which follows 'PA' in the registration number at the top right of the registration certificate signifies the unpublished nature of the work").

Courts interpreting Section 412(1) consistently have recognized that if a work is unpublished and unregistered at the time the alleged infringement commences, no statutory damages or attorney's fees are available.  See Zito, 267 F. Supp. 2d at 1026. As one federal district court stated, "statutory damages and attorney's fees are not recoverable for infringement of unpublished, unregistered works."  Singh v. Famous Overseas, Inc., 680 F. Supp. 533, 535 (E.D.N.Y. 1988).  See also Gerig, 58 F. Supp. 2d at 1269 (recognizing that Section 412(1) barred recovery of statutory damages and attorney's fees with respect to three photographs that were unpublished and unregistered at time of alleged infringement); Michaels v. Internet Entertainment Group, 1998 WL 882848, *1 n.2 (C.D. Cal. 1998) (holding that plaintiff "cannot seek statutory damages or attorney's fees for infringement which occurred when the work was unpublished and unregistered").

These cases confirm that "[t]o recover statutory damages or attorney's fees for the infringement of an unpublished work, the effective date of registration must be prior to the commencement of the infringement."  Hawes and Dietz, Copyright Registration Practice (2d ed.), §§ 23:9.1-23:9.2.  This rule defeats Plaintiff's prayers for statutory damages and attorneys' fees here, because the allegations in the SAC and the information on the face of the Copyright Registration Certificate demonstrate that the "Settler's Day" Screenplay was both unpublished and unregistered when the alleged infringement purportedly commenced.[5]

---

[5] When ruling on a motion to strike under Rule 12(f), a court may consider not only the plaintiff's allegations, but also material that properly is the subject of judicial notice.  See Fantasy, 984 F.2d at 1528 (granting motion to strike and explaining that "requests for judicial notice … could properly be considered by the court in ruling on the motion to strike").  This Court may take judicial notice of copyright registration certificates.  See, e.g., Warren v. Fox Family Worldwide, 171 F. Supp. 2d 1057, 1062 (C.D. Cal. 2001) (taking judicial notice of copyright registration certificates); Tokidoki v. Fortune Dynamic, 2009 WL 2366439, *6 (C.D. Cal. 2009) (taking judicial notice of certificate of registration from U.S. Patent & Trademark Office).  The Court also may consider any registration certificate attached to the SAC.  See Dichter-Mad Family Partners, LLP v. U.S., 709 F. 3d 749, 762 (9th Cir. 2013) (in ruling on Rule 12 motions, court may consider materials attached to the complaint).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**B.**     **The Alleged Infringement Of "Settler's Day" "Commenced" Months
Before The Screenplay Was Registered.**

According to the registration certificate for "Settler's Day," the effective date
of the Screenplay's copyright registration is October 1, 2013.  See SAC, ¶ 16 and Ex.
B.  This means that Plaintiff only is entitled to statutory damages or attorney's fees if
the alleged infringement of his Screenplay commenced after October 1, 2013.  In his
SAC, however, Plaintiff alleges that the Film Defendants infringed his copyright in
"Settler's Day" "by copying wholly original elements" from the Screenplay in "The
Purge," which allegedly was released on June 7, 2013, and the Shooting Script used
to produce that film.  See id., ¶¶ 30, 48-51, 54-57.  Plaintiff further alleges that the
Film Defendants "continue to infringe" his copyright in "Settler's Day" by producing
and distributing sequels, like "Anarchy," which Plaintiff claims was released
nationwide on July 18, 2014.  See id., ¶¶ 44, 51.  Thus, Plaintiff's own allegations
unequivocally foreclose statutory damages or attorney's fees based on the production
and distribution of "The Purge" and the creation of the Film's Shooting Script,
because these purported infringing activities occurred months before Plaintiff's
Screenplay was registered.[6]

Nor can Plaintiff recover statutory damages or attorney's fees for the
production and distribution of "Anarchy" because, as Plaintiff acknowledges in his
SAC (see ¶¶ 44, 51), this post-registration conduct is part of a series of ongoing
purported infringements that he claims commenced, at the latest, when "The Purge"
was released.  The Fifth Circuit was the first federal appeals court to consider
whether multiple infringements of the same copyrighted work "commenced" a
separate infringement for purposes of Section 412.  In Mason v. Montgomery Data,

---

[6] Although Plaintiff does not identify the specific date(s) on which the
Shooting Script allegedly infringed "Settler's Day," it necessarily would have been
created before "The Purge" was released, meaning that the date of the first act of
infringement would predate the film's June 7, 2013 release, as alleged in the SAC.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Inc., 967 F. 2d 135 (5th Cir. 1992), the plaintiff claimed that the defendants had infringed his copyrights in more than 100 real estate maps.  See id. at 136.  With the exception of one map, the defendants' initial copying of each map occurred before the effective date of the plaintiff's copyright registration.  See id. at 137.  The plaintiff argued that Section 412 allowed him to recover statutory damages and attorney's fees for any infringement occurring after he registered his copyrights, even though the defendants' infringements of these works commenced pre-registration.  See id. at 143.  The district court disagreed, holding that Section 412 barred statutory damages and attorney's fees for all of the defendants' infringements of a single copyrighted work, if any one of those infringements commenced prior to registration.  See id.

The Fifth Circuit affirmed, finding support for the district court's decision in Section 504(c) of the Copyright Act, which provides for a single award of statutory damages for all infringements with respect to any one work.  See id. at 143-144.  "It would be inconsistent to read section 504 to include all of one defendant's infringements of one work within 'an award of statutory damages,' and then read section 412 to treat each infringement separately for purposes of barring that award."  Id. at 143.  The court reasoned that treating all infringements of a single work as "commencing" upon the first act of infringement promotes the purpose of Section 412 to encourage copyright owners to promptly register the copyrights in their works.  See id. (emphasis in original).  Accordingly, the Fifth Circuit held that "a plaintiff may not recover an award of statutory damages and attorney's fees for infringements that commenced after registration if the same defendant commenced an infringement of the same work prior to registration."  Id. at 144.

Numerous courts have adopted the Fifth Circuit's holding in Mason, including the Ninth Circuit.  In Derek Andrew, the plaintiff argued that the defendants' pre-registration and post-registration infringements were not part of a series of ongoing infringements because the allegedly infringing work – a hang-tag for clothing – had

been attached to different garments before and after the plaintiff registered its copyright. 528 F. 3d at 701. The district court awarded the plaintiff statutory damages for the post-registration infringements of the plaintiff's hang-tag, but the Ninth Circuit reversed, concluding that allowing statutory damages and attorney's fees when an infringing act occurs before registration and then reoccurs thereafter "clearly would defeat the dual incentives of § 412." Id. at 700. Agreeing with every other court that had considered the issue, the Ninth Circuit held that infringement "commences" for purposes of Section 412 when "the first act in a series of acts constituting infringement occurs." Id. at 700-701. Thus, "the first act of infringement in a series of ongoing infringements of the same kind marks the commencement of one continuing infringement under § 412." Id. at 701 (emphasis in original).

Applying that interpretation of Section 412, the Derek Andrew Court found no legally significant difference between the defendant's pre-registration and post-registration distribution of the infringing hang-tags. See id. As a result, the defendant's post-registration distributions of the hang-tag were deemed to be an ongoing continuation of the defendant's initial infringement, and the infringing activity thus was found to have "commenced" before the effective date of the registration. See Derek Andrew, 528 F. 3d at 701. Consequently, the Ninth Circuit concluded that Section 412 precluded the plaintiff's recovery of statutory damages or attorney's fees, reversing the district court's decision. See id. at 701-702.

Courts have considered a variety of arguments by plaintiffs seeking to establish that pre-registration and post-registration activities "commenced" separate and distinct infringements – e.g., because the allegedly infringing work was used on different merchandise before and after registration; because the allegedly infringing work was modified following the plaintiff's registration; or because the pre-registration and post-registration activities infringed different exclusive rights of the copyright holder. But courts uniformly have rejected these attempted end-runs

DEFENDANTS' MOTION TO STRIKE PORTIONS OF PLAINTIFF'S SAC
DWT 25589558v8 0020040-000121

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

around Section 412.  See Gardner v. CafePress Inc., 2014 U.S. Dist. LEXIS 25405, *25-*28 (S.D. Cal. Feb. 26, 2014) (rejecting plaintiff's argument that post-registration infringements of artwork commenced separate infringements because the artwork was printed on different products); City of Carlsbad v. Shah, 850 F. Supp. 2d 1087, 1101-1103 (S.D. Cal. 2012) (incorporating copyrighted logo into a variety of media post-registration was ongoing continuation of pre-registration infringement); Yue v. Chordiant Software, Inc., 2009 U.S. Dist. LEXIS 118824, *12-*13 (N.D. Cal. Dec. 21, 2009) (incorporating copyrighted computer code into different software program post-registration did not commence a new and distinct infringement); Parfums Givenchy, Inc. v. C & C Beauty Sales, Inc., 832 F. Supp. 1378, 1394-1395 (C.D. Cal. 1993) (Section 412 barred award of statutory damages and attorney's fees, even though post-registration acts were alleged to violate different exclusive right than earlier infringements); Dyer v. Napier, 2006 WL 680551, *4 (D. Ariz. Mar. 16 2006) (post-registration customization of allegedly infringing sculpture did not commence new infringement for purposes of Section 412).

Of particular importance here, courts also have rejected the notion that a defendant's post-registration production and distribution of a revised edition of an allegedly infringing work commences a new infringement for purpose of Section 412.  The court's decision in B2B CFO Partners, LLC v. Kaufman, 787 F. Supp. 2d 1002 (D. Ariz. 2011), is instructive on this point.  There, the plaintiff created a training manual, which was updated in 2005 ("2005 Manual") and distributed to partners of B2B – a company that provides CFO services to medium-sized business owners.  See id. at 1005.  The defendant, who was a partner at B2B, left the company to start his own CFO business, and created two training manuals for his business – the 2008 Manual and the 2009 Manual – which purportedly infringed the copyright in the plaintiff's training manual.  See id.

The parties agreed that the plaintiff could not recover statutory damages or attorney's fees for the defendant's distribution of the 2008 Manual, because it was

DEFENDANTS' MOTION TO STRIKE PORTIONS OF PLAINTIFF'S SAC
DWT 25589558v8 0020040-000121

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

created and distributed before the plaintiff registered the 2005 Manual.  See id. at 1011-1012.  The central issue in the case was whether statutory damages and attorney's fees were available for the alleged infringement of the 2009 Manual, which was created and distributed post-registration.  See id. at 1012.  The defendant's 2009 Manual was a revised version of the 2008 Manual, and the plaintiff argued that the defendant's distribution of the 2009 Manual (a different work) commenced a separate infringing act under Section 412.  See id.  The court disagreed, finding "no legally significant difference" between the defendant's pre-registration distribution of the 2008 Manual and his post-registration distribution of the 2009 Manual.  Id.  As the court explained:

> Although the [2008 Manual] may differ somewhat from the 2009 version, the same person … allegedly copied the same copyrighted work, the 2005 Manual, when he drafted both [the 2008 and 2009] Manuals.  The [2009 Manual] constituted the same kind of alleged copying as the [2008 Manual].
>
> [Defendant's] alleged infringement therefore commenced for § 412 purposes when he distributed the [2008 Manual], which was the first act of infringement in a series of ongoing infringements of the same kind by the same person.

B2B, 787 F. Supp. 2d at 1012 (internal quotations omitted; emphasis in original).  Because the defendant's distribution of the 2009 Manual "did not start a new and separate series of infringing acts," and instead was a part of a series of ongoing infringements that commenced with the distribution of the 2008 Manual, the plaintiff could not recover statutory damages or attorney's fees.

The court reached a similar conclusion in Morgan v. Hawthorne Homes, Inc., 2011 U.S. Dist. LEXIS 59210 (W.D. Pa. June 2, 2011).  There, the plaintiff alleged that the infringement of his architectural drawings began in 2001, prior to registration, when defendant Hanna Holdings acquired the drawings.  See id. at *1.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

The plaintiff also contended that Hanna Holdings transferred the drawings to defendant Hawthorne Homes "for the purpose of re-drafting the plans into a computer format and then using the plans to create new homes." See id. "With these plans," the plaintiff alleged, "the various subsidiaries of Hanna Holdings … continued the infringement by using [the plaintiff's] plans to construct, market, and sell houses." See id. In seeking statutory damages and attorney's fees, the plaintiff asserted that later post-registration infringement of those drawings by Hanna Holdings' subsidiaries, for which the plaintiff sought to hold Hanna Holdings and Hawthorne Homes liable on contributory and vicarious liability theories, should not be considered part of a continuing infringement that commenced in 2001. See id. at *2. The court rejected that argument:

> [The plaintiff] asserts that Defendants violated his copyrights by making copies of the plans[,] and by making copies of the plans, by making derivative works, and by building houses according to his plans. Insofar as [the plaintiff] alleges that Hawthorne Homes began infringing on his copyrights in 2001, by repeatedly copying his drawings, and that all infringement by the subsidiaries of Hanna Holdings arose out of this initial infringement, any post-registration conduct is therefore traceable to pre-registration conduct. As such, the pre-registration infringement and the post-registration infringement … constitute one continuing infringement for purposes of [Section 412]. There is no legally significant difference between the pre-registration conduct and the post-registration conduct (if at all) that would suggest that the alleged infringement was anything but an ongoing series of infringements that commenced in 2001.

Id. at *3 (internal quotations omitted). Because each act of infringement stemmed from the initial acquisition and copying of the plaintiff's drawings by Hawthorne

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Homes, and their later use by the subsidiaries of Hanna Holdings, "any incidences of post-registration infringement were ongoing acts that 'commenced' prior to registration[.]" Id. Therefore, Section 412 prevented the plaintiff's recovery of statutory damages and attorney's fees. See id.

The same result should be reached here. The post-registration production and distribution of "Anarchy" is directly traceable to the alleged pre-registration infringement of Plaintiff's Screenplay. Just as the 2009 Manual in B2B was a revised version derived from the 2008 Manual (which was created and distributed pre-registration), "Anarchy" is a sequel derived from "The Purge," which was produced and distributed pre-registration. Although "The Purge" and "Anarchy" may differ in some respects, Plaintiff has alleged that the same defendants infringed the same work when they created, produced, and distributed both films. Indeed, in his SAC, Plaintiff expressly acknowledges that "*Anarchy* is a direct sequel to *The Purge*," and that "*Anarchy* utilizes the same basic core expression of *Settler's Day*." SAC, ¶ 44. Plaintiff also explicitly claims that the production and distribution of "Anarchy" is a continuing infringement. See SAC, ¶ 51 ("the named Defendants continue to infringe upon Plaintiff's copyrights" by producing and distributing cinematic sequels, like "Anarchy").

Because the alleged post-registration acts of infringement stem from the initial purported copying of Plaintiff's Screenplay in "The Purge," any alleged incidents of post-registration infringement were ongoing acts that "commenced," at the latest, when "The Purge" was released on June 7, 2013 – nearly four months before Plaintiff registered his Screenplay. Plaintiff has not alleged any legally significant difference between the Film Defendants' pre-registration creation, production, and distribution of "The Purge," and their post-registration production and distribution of that film's sequel, "Anarchy." The pre-registration release of "The Purge" is alleged to be the first act of purported infringement in a series of ongoing alleged infringements of the same kind by the Film Defendants. As a result, Section 412 precludes Plaintiff's

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

recovery of statutory damages or attorney's fees based on the production and distribution of "Anarchy," just as it precludes such an award for the production and distribution of "The Purge."

## C. Because Plaintiff Cannot Recover Statutory Damages Or Attorney's Fees, References To Those Remedies Should Be Stricken From The SAC.

As explained above, Rule 12(f) authorizes a court to strike "immaterial" and "impertinent" matter from a complaint.  Because Plaintiff cannot recover statutory damages or attorneys' fees here (see Section II(B), supra), the language in his SAC relating to these items of damages is "immaterial" – it simply has "no essential or important relationship" to Plaintiff's copyright-infringement claims.  See Fantasy, 984 F.2d at 1527; Gerig, 58 F. Supp. 2d at 1268-1269; Cognotec, 862 F. Supp. at 52. The Court, therefore, should strike from the SAC the following references to these remedies:

- **First Claim for Relief (p. 19) – Paragraph 51:19-21 (underlined portion)**:  "Said infringement entitles Plaintiff to actual <u>and statutory</u> damages, injunctive and other relief provided by the Copyright Act."
- **Second Claim for Relief (p. 20) – Paragraph 57:16-17 (underlined portion)**:  "Said infringement entitles Plaintiff to actual <u>and statutory</u> damages, injunctive and other relief provided by the Copyright Act."
- **Prayer (p. 24) – Paragraph 4:17-18 (underlined portion)**:  "For <u>statutory damages,</u> costs, <u>and attorney fees</u> with respect to *The Purge: Anarchy* and any other derivative works."

Striking these portions of the SAC will fulfill Rule 12(f)'s policy of "avoid[ing] the expenditure of time and money that must arise from litigating spurious issues[.]"  Fantasy, 984 F. 2d at 1527.  Unless stricken, Plaintiff's improper prayers for relief may lead to irrelevant discovery and unnecessary discovery disputes, may produce costly and time-consuming motion practice regarding matters

that should not be a part of the lawsuit in the first place, and may impede any attempt to resolve the dispute informally.

## III.

## COURT SHOULD STRIKE PORTIONS OF PLAINTIFF'S DECLARATORY RELIEF CLAIM THAT SEEK AN ORDER GIVING HIM "CREDIT" AS A WRITER OF THE FILMS AND SCRIPT.

Plaintiff's claim for declaratory relief appears to be an unartfully crafted "reverse-passing-off" claim under Section 43(a) of the Lanham Act.[7] Plaintiff alleges that the Film Defendants and others engaged in an "orchestrated, willful and malicious effort … to steal the core plot and story of Plaintiff's copyrighted expression, camouflage it, and pass it off as the script and motion picture, *The Purge*[.]" SAC, ¶¶ 59, 77-79. These allegations parallel Section 43(a) of the Lanham Act, which prohibits the use in commerce of "any false designation of origin … which is likely to cause confusion, or to cause mistake, or to deceive … as to the origin, sponsorship, or approval of [] goods, services, or commercial activities[.]" 15 U.S.C. § 1125(a)(1)(A).

But the United States Supreme Court has held that a plaintiff cannot maintain a reverse-passing-off claim based on a defendant's purported use of the plaintiff's ideas, concepts, or "communicative products," such as Plaintiff's Screenplay here. Dastar Corp. v. 20th Century Fox Film Corp., 539 U.S. 23 (2003). In Dastar, the defendant, anticipating renewed interest in World War II, purchased videotapes of a 26-episode television series called "Crusade in Europe" ("Crusade") that had fallen into the public domain. Id. at 26. Defendant copied, edited, and repackaged the series, and retitled it "World War II Campaigns in Europe" ("Campaigns"). Id. Although Campaigns retained much of Crusade's original content, Campaigns did

---

[7] Reverse-passing-off "occurs when one party obtains a second party's goods, removes the second party's name, and then markets the product under its own name." Aagard v. Palomar Builders, 344 F. Supp. 2d 1211, 1217 (E.D. Cal. 2004).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

not include any reference to Crusade in the credits.  Id. at 27.  The plaintiffs sued,
alleging that the defendant's sale of Campaigns, without crediting Crusade, violated
Section 43(a) of the Lanham Act.  Id.  The Dastar plaintiffs argued that by
"marketing and selling Campaigns as its own product without acknowledging its
nearly wholesale reliance on the Crusade television series," the defendant was "likely
to cause confusion as to the origin of his or her goods."  Id. at 31.

The Supreme Court rejected the claim, however, finding that the Lanham Act
did not provide relief for the defendant's alleged conduct:

> [R]eading the phrase 'origin of goods' in the Lanham Act in
> accordance with the Act's common-law foundations (which were
> not designed to protect originality or creativity), and in light of
> the copyright and patent laws (which were), we conclude that the
> phrase refers to the producer of the tangible goods that are offered
> for sale, and not to the author of any idea, concept, or
> communication embodied in those goods.

Dastar, 539 U.S. at 37 (emphasis in original).  Any other interpretation, the Court
reasoned, "would not only stretch the text, but [] would be out of accord with the
history and purpose of the Lanham Act and inconsistent with precedent."  Id. at 32.
The Court also refused to create an exception to this rule for communicative products
– those valued "for the intellectual content that [they] convey."  Id. at 33.
"[A]ccording special treatment to communicative products [would] cause[] the
Lanham Act to conflict with the law of copyright, which addresses that subject
specifically," and impermissibly extend "trademark and related protections into areas
traditionally occupied by patent or copyright."  Id.

Although the plaintiff's work in Dastar had fallen into the public domain
before the defendant used it, courts have made clear that the Dastar rule also bars
reverse-passing-off claims based on a defendant's alleged use of a plaintiff's
copyrighted work, like the "Settler's Day" Screenplay here.  For example, in

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Williams v. UMG Recordings, 281 F. Supp. 2d 1177, 1185 (C.D. Cal. 2003), the plaintiff reedited and rescored a film entitled "Baller Blockin," and allegedly incorporated his copyrighted narration script into the film. Id. at 1179. The plaintiff sued after learning that his name did not appear in the film's credits, alleging reverse-passing-off in violation of the Lanham Act, among other claims. Id. In finding that Dastar barred the plaintiff's reverse-passing-off claim, the court explained that "the Supreme Court's holding [in Dastar] did not depend on whether the works were copyrighted or not," and instructed that the plaintiff's claim "is more appropriately addressed under copyright law rather than under the Lanham Act." Id. at 1185.

Similarly, in A Slice of Pie Productions v. Wayans Bros. Entm't, 392 F. Supp. 2d 297, 312 (D. Conn. 2005), the plaintiff alleged that the defendants violated Section 43(a) of Lanham Act by purportedly misrepresenting the origin of their film "White Chicks," which plaintiff claimed was based on his copyrighted screenplay. Relying on Dastar, the court granted the defendants' motion to dismiss, explaining that "where defendants are alleged only to have appropriated the originality of the screenplay, the Lanham Act does not apply." Id. at 313.[8]

As in these cases, Plaintiff's masked reverse-passing-off claim is barred by Dastar to the extent Plaintiff purports to demand "credit" as a writer of The Purge, its Shooting Script, or Anarchy. His declaratory relief claim is based on the Film Defendants' alleged copying of his Screenplay without crediting him as a writer. But Dastar and its progeny make clear that "any protection for the misappropriation of [] content comes from the Copyright Act, not from the Lanham Act." Slice of Pie, 392 F. Supp. 2d at 313. Accordingly, his declaratory relief claim, inasmuch as it seeks a

---

[8] See also Hustlers Inc. v. Thomasson, 73 U.S.P.Q.2d 1923, 1925 (N.D. Ga. 2004) (granting summary judgment for defendants on false designation of origin claim based on allegation that ownership of copyrights to musical compositions was incorrectly attributed); Carroll v. Kahn, 2003 WL 22327299, *6 (N.D.N.Y. 2003) ("the Supreme Court left the protection to the creative talent behind communicative products to the copyright laws").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

writing credit, fails as a matter of law and should be stricken as "immaterial" and "impertinent" within the meaning of Rule 12(f).[9]  For that reason, the following portions of the SAC should be stricken:

- **Fifth Claim for Relief (p. 23) – Paragraphs 77-79 (underlined portions)**: "An actual dispute and controversy now exists between the Defendants and Plaintiff as to whether Plaintiff should be entitled to compensation, <u>and credit</u> as writer and creator of both *The Purge* and the Shooting Script.  Plaintiff believes that he is <u>both</u> entitled to compensation, <u>and credit</u> as writer of both *The Purge* and the Shooting Script, as well (*Anarchy*) [sic] <u>(which again credits DeMonaco as the sole author</u>.  Plaintiff is informed and believes and on that basis alleges, that Defendants dispute Plaintiff's contentions.  Plaintiff therefore desires and requests a judicial determination and declaration of the respective rights and obligations of the parties."

- **Prayer (pp. 24-25) – Paragraph 9 (underlined portion)**: "For declaratory relief to <u>credit and</u> pay Plaintiff as the writer of *The Purge*,

---

[9] If Plaintiff were to argue that his declaratory relief claim is not intended as a reverse-passing-off claim under Section 43(a), then the claim would be preempted because the Screenplay falls within the subject matter of copyright, and the declaratory relief claim, which is based solely on the purported copying of Plaintiff's copyrighted Screenplay, is indistinguishable from his copyright infringement claims.  The declaratory relief claim thus would fail for this additional reason.  <u>See</u> 17 U.S.C. § 301 ("all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . are governed exclusively by this title"); <u>Jules Jordan Video, Inc. v. 144942 Canada Inc.</u>, 617 F.3d 1146, 1152 (9th Cir. 2010) ("Section 301 of the Act provides for exclusive jurisdiction over rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified in the Act."); <u>Moore v. Lightstorm Entm't</u>, 2013 WL 4052813, *2 (D. Md. Aug. 9, 2013) ("[t]he Court also dismissed Moore's 'claims' for an accounting and declaratory relief, noting that these were essentially requests for relief under the Federal Copyright Act and thus preempted."); <u>Eb-Bran Prods., Inc. v. Warner Elektra Atl., Inc.</u>, 2005 WL 3107738, *3 (W.D. Mich. Nov. 18, 2005) (claims for "injunctive and declaratory relief were properly recharacterized as copyright claims and thus completely preempted by the Copyright Act").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

and to <u>credit and</u> pay Plaintiff as the writer on all future broadcasts, DVD releases, licenses, etc. of *The Purge*, without exclusion."

## IV.

## PLAINTIFF'S NEW ALLEGATIONS CONCERNING A DIFFERENT THEORY OF "ACCESS" VIOLATE THE COURT'S ORDER AND SHOULD BE STRICKEN.

This Court's Order dismissing Plaintiff's breach of implied-in-fact contract with leave to amend was clear that any amendments were <u>limited</u> to addressing the defects in that specific claim. <u>See</u> Dkt. No. 26 at 6. Undeterred, however, Plaintiff has advanced a new theory of access (albeit an even more attenuated one), without seeking this Court's permission to do so. SAC, ¶ 41. This Court should strike Plaintiff's allegations concerning this newly minted theory of access, in keeping with orders from other courts that routinely have used F.R.C.P. 12(f) to strike amendments to pleadings that exceed the scope of permission granted by the court.

In <u>Benton v. Baker Hughes</u>, 2013 WL 3353636, *3 (C.D. Cal. June 30, 2013), for example, the court granted the plaintiff "leave to amend <u>only</u> to address the deficiencies in his existing causes of action identified in [the] order." (Emphasis added). When the plaintiff ignored the limiting language and added new claims, the court held that "[t]he addition of [the plaintiff's] new claims therefore exceeds the scope of the leave to amend granted," and concluded that it was "appropriate to strike the newly added claims on this basis." <u>Id.</u> <u>See also</u> <u>Inland Cities Express, Inc. v. Diamond Nat'l Corp.</u>, 524 F.2d 753, 755 (9th Cir. 1975) (refusing to consider an amendment to the plaintiff's complaint that "did not conform" to the district court's grant of leave to amend); <u>Crane v. Yarborough</u>, No. 2012 WL 1067965, *13 n.14 (C.D. Cal. Feb. 6, 2012) ("it would be appropriate to strike plaintiff's … claim because the addition of such claim which has been raised for the first time in the Second Amended Complaint exceeds the scope of the leave to amend granted in the … Order"); <u>Palm Beach Strategic Income, LP v. Salzman</u>, 457 F. App'x 40, 43 (2d

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Cir. 2012) ("[d]istrict courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted").

The same should happen here. This Court's February 13, 2014 Order was unambiguous. Plaintiff was "granted to leave to file a Second Amended Complaint" and "[a]ny amendments shall be limited to the fourth claim for relief [breach of implied-in-fact contract]." Dkt. No. 26 at 6. Plaintiff defied this clear instruction, however, by adding allegations of access to support his copyright claims.[10] Plaintiff's disregard of the Court's Order should not be countenanced, and this Court should exercise its broad discretion to strike the improper allegations in Paragraph 41 of the SAC, which exceed the scope of its February 13 Order, as follows:[11]

- **Paragraph 41 (in its entirety)**: "In the alternative, Plaintiff is informed and believes and thereon alleges that Defendants accessed and copied from *Settler's Day* via another route of access. On or about February 2,

---

[10] Plaintiff cannot claim that the new allegations as to Universal and Platinum Dunes in Paragraph 41 apply to his breach of implied contract claims, because those claims have been asserted only against UTA, DeMonaco, and WNP. SAC at p. 22. Nor could these new allegations be used to support Plaintiff's implied contract claim because Plaintiff does not allege that Levin – a "literary agent" for an unidentified agency – had authority to take pitches for Universal or Platinum Dunes, or had authority to bind Universal or Platinum Dunes to any contractual obligation. Plaintiff merely alleges vaguely that Levin had an unidentified "preexisting working relationship" with Universal and with the owner of Platinum Dunes, but "[t]he fact that parties had a preexisting relationship is not sufficient to make one party the agent for the other." van't Rood v. County of Santa Clara, 113 Cal. App. 4th 549, 572 (2003) (citing Kim v. Sumitomo Bank, 17 Cal. App. 4th 974, 983 (1993)). See also concurrently-filed Special Motion to Strike at III(B)(2).

[11] To the extent Plaintiff belatedly seeks leave to amend to include these new factual allegations, this Court should deny the application. See Becker v. Wells Fargo Bank, NA, Inc., 2012 WL 3647916, *5 (E.D. Cal. Aug. 22, 2012) (denying leave to amend because "the facts alleged in support of this new claim appear to have been available to plaintiff when he filed his First Amended Complaint, and plaintiff has not explained why he delayed until now to add such a claim"). Plaintiff already has had three opportunities to plead his purported implied contract claim.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

2011, Plaintiff electronically submitted *Settler's Day* to Ken F. Levin ('Levin'), a literary agent.  Plaintiff is informed and believes and thereon alleges that Levin has and had a preexisting working relationship with Defendant Universal and Michael Bay ('Bay'), who is the owner of Defendant Platinum Dunes.  Therefore, in the alternative, Defendants accessed *Settler's Day* through Universal/Platinum Dunes as early as February 2011."

## V.

## CONCLUSION

For all the reasons set forth above, the portions of the Second Amended Complaint identified in this Motion should be stricken.

DATED: March 13, 2015

DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER
KAREN A. HENRY
COLLIN J. PENG-SUE

By:_____/s/ Kelli L. Sager_____
Kelli L. Sager

Attorneys for Defendants
UNIVERSAL CITY STUDIOS LLC,
BLUMHOUSE PRODUCTIONS, LLC,
OVERLORD PRODUCTIONS, LLC,
PLATINUM DUNES PRODUCTIONS,
WHY NOT PRODUCTIONS, INC., and
JAMES DEMONACO

21

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899