**DAVIS WRIGHT TREMAINE LLP**
865 S. FIGUEROA ST.
SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
TELEPHONE (213) 633-6800
FAX (213) 633-6899

KELLI L. SAGER (State Bar No. 120162)
 kellisager@dwt.com
KAREN A. HENRY (State Bar No. 229707)
 karenhenry@dwt.com
COLLIN J. PENG-SUE (State Bar No. 302227)
 collinpengsue@dwt.com

Attorneys for Defendants
UNIVERSAL CITY STUDIOS LLC,
BLUMHOUSE PRODUCTIONS, LLC,
OVERLORD PRODUCTIONS, LLC,
PLATINUM DUNES PRODUCTIONS,
WHY NOT PRODUCTIONS, INC., and
JAMES DEMONACO

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS JORDAN-BENEL, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> UNIVERSAL CITY STUDIOS LLC, a Delaware corporation; UNITED TALENT AGENCY, INC., a California corporation; BLUMHOUSE PRODUCTIONS, LLC, a Delaware Limited Liability Company; OVERLORD PRODUCTIONS LLC, a California Limited Liability Company; PLATINUM DUNES PRODUCTIONS, a California Corporation, WHY NOT PRODUCTIONS, INC. d/b/a WHY NOT FILMS, a Nevada Corporation; JAMES DEMONACO, an individual; and DOES 1 to 50, inclusive, <br><br> Defendants. | Case No. **14-cv-05577-MWF-MRW** <br> Assigned to Hon. Michael W. Fitzgerald <br><br> **FILM DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE FOURTH AND FIFTH CLAIMS FOR RELIEF ALLEGED IN SECOND AMENDED COMPLAINT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** <br> **[C.C.P. 425.16]** <br><br> Hearing Date:  May 18, 2015 <br> Time:          10:00 a.m. <br> Courtroom:      1600 <br><br> [Motion To Dismiss (FRCP 12(b)(6)); Motion To Strike (FRCP (12(f)); Request For Judicial Notice; Notice Of Lodging With Exhibits I-J; and Declaration Of Karen A. Henry With Exhibits A-H, K Filed Concurrently] <br><br> Action Filed: July 17, 2014 |

SPECIAL MOTION TO STRIKE
DWT 26388691v6 0020040-000121

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 18, 2015, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Michael W. Fitzgerald of the United States District Court for the Central District of California, in Courtroom 1600 of the Spring Street Courthouse, located at 312 N. Spring Street, Los Angeles, California 90012, defendants Why Not Productions, Inc. ("WNP"), and James DeMonaco ("DeMonaco") will and hereby do move this Court, pursuant to California Code of Civil Procedure § 425.16, for an order striking the Fourth Claim For Relief in Plaintiff's Second Amended Complaint ("SAC"), which purports to assert a claim against WNP and DeMonaco for breach of implied-in-fact contract involving a full-length feature film, "The Purge" (the "Film"), and its shooting script (collectively "the Works").[1]

In addition, defendants WNP, DeMonaco, Universal City Studios LLC ("Universal"), Blumhouse Productions, LLC ("Blumhouse"), Overlord Productions, LLC ("Overlord"), and Platinum Dunes Productions ("Platinum Dunes") (collectively, "Film Defendants"), will and hereby do move this Court, pursuant to California Code of Civil Procedure § 425.16, for an order striking the Fifth Claim For Relief in the SAC, which purports to assert a claim for declaratory relief against all of the Film Defendants.

This Motion is made on the grounds that Plaintiff's Fourth and Fifth Claims For Relief arise solely from the exercise of the Film Defendants' right of free speech, namely, from the creation, production, and distribution of the full-length feature film "The Purge" ("the Film") and its shooting script (collectively, "the Works"), which

---

[1] This claim also is asserted against defendant United Talent Agency ("UTA"), which is separately represented. This Court previously granted UTA's motion to dismiss the Fourth Claim For Relief, finding that Plaintiff had failed to state a claim against any of the seven named defendants, but gave Plaintiff leave to amend this claim. Dkt. No. 26 at 6. Plaintiff repleaded the claim in the SAC against WNP, DeMonaco, and UTA, but he abandoned it with respect to the remaining defendants.

SPECIAL MOTION TO STRIKE
DWT 26388691v6 0020040-000121

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

involve topics of widespread public interest.  SAC, ¶¶ 70-75, 77-79.  Plaintiff claims that the Works were copied from a screenplay that he authored ("the Screenplay"), and consequently, that he is entitled to damages and to a writing "credit" on the Film. Id.  Because the Fourth and Fifth Claims For Relief arise from the Film Defendants' exercise of free speech and acts in furtherance of free speech, they fall squarely within the scope of Section 425.16, and the burden shifts to Plaintiff to establish a probability that he will prevail.  C.C.P. § 425.16(b).  As set forth below, however, Plaintiff cannot meet his burden, and his Fourth and Fifth Claims For Relief should be stricken, with prejudice, for each of the following reasons:

1.    Plaintiff's Fourth Claim for Relief for breach of implied-in-fact contract against DeMonaco and WNP should be stricken because Plaintiff has failed to adequately plead facts that, if proven, would meet his burden of demonstrating that DeMonaco or WNP had access to his screenplay.  He does not allege any direct contact with either DeMonaco or WNP; instead, he asserts a convoluted theory of "access" based on the submission of his Screenplay to two men who were employed at the same talent agency (UTA) as an agent who represented DeMonaco and WNP. SAC ¶¶ 31, 40.   But the law does not support a finding of "access" based on this kind of bare corporate receipt, particularly involving a third party.  See Memorandum of Points & Authorities, Section III(A)(2).[2]

---

[2] See also Film Defendants' concurrently-filed Motion To Dismiss Plaintiff's Second Amended Complaint (F.R.C.P. 12(b)(6)) ("12(b)(6) Motion").  Plaintiff also has attempted to add a new theory of "access" in his SAC, in violation of this Court's order granting only limited leave to amend. Dkt. No. 26 at 6.  He now claims that his Screenplay also was submitted to a literary agent who previously had some kind of unspecified "working relationship" at some unspecified time with two other defendants, Universal and Platinum Dunes. SAC at ¶ 41.  Even if this improper pleading is allowed, it is even more absurdly attenuated than Plaintiff's original claim of "access," and should be rejected.  See Memorandum of Points & Authorities, Section III(A)(2); see also Film Defendants' Motion To Strike Portions Of Plaintiff's SAC (F.R.C.P. 12(f) ("12(f) Motion")).  The Film Defendants also incorporate by reference the arguments and authorities included in their 12(b)(6) Motion and 12(f) Motion.

SPECIAL MOTION TO STRIKE
DWT 26388691v6 0020040-000121

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

2.      Plaintiff's Fourth Claim for Relief for breach of implied-in-fact contract against DeMonaco and WNP should be stricken for the independent reason that Plaintiff has failed to plead facts that, if proven, would meet his burden of demonstrating the necessary elements of a claim for breach of an implied contract:

a.      Plaintiff has not pleaded facts establishing any privity between him, on the one hand, and DeMonaco or WNP, on the other hand; nor has he pleaded facts sufficient to show that the two UTA employees to whom Plaintiff's agent allegedly submitted the Screenplay had any authority to bind DeMonaco and/or WNP to contractual obligations.  See Section III(B)(1), infra.

b.      Plaintiff also has failed to plead facts sufficient to establish the other required elements for an implied-in-fact contract claim, including a mutual understanding about the purpose for and conditions upon which he was submitting his Screenplay.  This deficiency is especially glaring where, as here, the purported submission was not to DeMonaco or WNP, or even to an agent at UTA who is alleged to represent either of them.  There is not – nor could there be – any claim that Plaintiff submitted his Screenplay to UTA with the intention of "selling" it to DeMonaco or WNP.  Nor is there any allegation that the two UTA agents to whom the Screenplay was emailed voluntarily accepted it with the understanding that they were thereby binding DeMonaco and WNP – along with every client of every other agent at UTA, according to Plaintiff's theory – to an implied contract.  See Section III(B)(2), infra.

3.      Plaintiff's Fifth Claim for Relief against the Film Defendants for declaratory relief should be stricken:

a.      This entire claim based on the same deficient allegations as his breach of implied-in-fact contract claim; and

3

b.   Plaintiff's demand for a writing "credit" on the Film is a disguised reverse-passing-off claim that is barred by controlling United States Supreme Court authority.

c.   To the extent this claim is not intended to allege a reverse passing-off claim, it is preempted by federal copyright law.  <u>See</u> Section III(C)(1), (2), <u>infra</u>.

For each of these reasons, this Court should grant the Film Defendants' Motion, strike Plaintiff's Fourth and Fifth Claims For Relief with prejudice,[3] and award the Film Defendants their attorneys' fees and costs incurred in defending against these meritless claims.[4]

This Motion is based on this Notice; on the attached Memorandum Of Points And Authorities; on the concurrently-filed Declaration Of Karen A. Henry with Exhibits A-H, K; on any matters of which this Court may take judicial notice; on all pleadings, files and records in this action; and on such argument as may be received by this Court at the hearing on this Motion.

//

---

[3] If the Court finds that some claims can proceed, it nonetheless can and should strike the defective claim(s).  <u>Shekhter v. Financial Indem. Co.</u>, 89 Cal. App. 4th 141, 150 (2001) (motions brought under Section 425.16 need not dispose of the entire complaint, and may be granted as to some, even if not all, claims asserted).  <u>See</u> <u>also</u> <u>Wallace v. McCubbin</u>, 196 Cal. App. 4th 1169, 1209 (2011) ("in response to an anti-SLAPP motion brought as to an entire complaint containing several causes of action, a <u>part</u> of a cause of action could be struck because the plaintiff failed to establish a probability of prevailing <u>as to that particular part</u>") (citing <u>Taus v. Loftus</u>, 40 Cal. 4th 683, 742-43 (2007)) (original emphasis); <u>Cho v. Chang</u>, 219 Cal. App. 4th 521, 527 (2013) ("[i]t would make little sense if the anti-SLAPP law could be defeated by a pleading … in which several claims are combined into a single cause of action, some alleging protected activity and some not").

[4] C.C.P. § 425.16(c) mandates that the prevailing defendant on a SLAPP motion "shall" recover that party's attorneys' fees and costs.  If the Court grants this Motion, the Film Defendants will file a separate fee motion.  <u>See</u> <u>Ketchum v. Moses</u>, 24 Cal. 4th 1122, 1131-1132 (2001).

SPECIAL MOTION TO STRIKE
DWT 26388691v6 0020040-000121

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

This Motion is made following the conference of counsel that occurred on March 5, 2015, pursuant to Local Rule 7-3.  See Henry Decl. ¶¶ 2-3.

DATED: March 13, 2015

DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER
KAREN A. HENRY
COLLIN J. PENG-SUE


By: _/s/  Kelli L. Sager_____
           Kelli L. Sager

Attorneys for Defendants
UNIVERSAL CITY STUDIOS LLC,
BLUMHOUSE PRODUCTIONS, LLC,
OVERLORD PRODUCTIONS, LLC,
PLATINUM DUNES PRODUCTIONS,
WHY NOT PRODUCTIONS, INC., and
JAMES DEMONACO

SPECIAL MOTION TO STRIKE
DWT 26388691v6 0020040-000121

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF CONTENTS

Page

I. SUMMARY OF ARGUMENT .................................................................. 1

II. SECTION 425.16 APPLIES TO PLAINTIFF'S CLAIMS .......................... 3

    A. Plaintiff's Fourth And Fifth Claims For Relief Arise From Conduct Protected Under Section 425.16. ............................................ 4

    B. The Speech At Issue Involves A Matter Of Public Interest. ................ 6

III. PLAINTIFF CANNOT SHOW A PROBABILITY OF PREVAILING. ...... 8

    A. Plaintiff's Implied Contract Claim Fails Because He Has Not Adequately Alleged Access To His Screenplay. .................................. 8

        1. Access Is An Essential Element Of An Implied Contract Claim. ........................................................................ 9

        2. Alleging Bare Corporate Receipt Does Not Infer Access. ................................................................................. 10

    B. Plaintiff's Claim Independently Fails Because He Has Not Pleaded Facts Sufficient To Demonstrate Contractual Privity. ......... 13

        1. Plaintiff Did Not Allege Privity With DeMonaco Or WNP. ..................................................................................... 14

        2. Plaintiff's Attempt To Allege An Agency Relationship Cannot Salvage His Implied Contract Claim. ....................................................................................... 16

        3. Plaintiff's Claim Fails Because He Failed To Adequately Allege Other Elements Required For An Implied-In-Fact Contract. .................................................... 19

    C. Plaintiff's Declaratory Relief Claim Also Should Be Dismissed. ..... 21

        1. Plaintiff's Declaratory Relief Claim Is Impermissibly Duplicative. .............................................. 21

        2. Plaintiff's Request For A Writing Credit Is A Disguised Reverse-Passing-Off Claim That Is Barred As A Matter of Law. .................................................. 22

IV. CONCLUSION ..................................................................................... 25

SPECIAL MOTION TO STRIKE
DWT 26388691v6 0020040-000121

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

Page

**Cases**

A Slice of Pie Productions v. Wayans Bros. Entm't,
   392 F. Supp. 2d 297 (D. Conn. 2005)..................................................4-25

Aagard v. Palomar Builders,
   344 F. Supp. 2d 1211 (E.D. Cal. 2004) ...............................................22

Aliotti v. R. Dakin & Co.,
   831 F.2d 898 (9th Cir. 1987) .........................................................19, 21

Ashcroft v. Iqbal,
   556 U.S. 662 (2009)..........................................................................10

Bell Atl. Corp. v. Twombly,
   550 U.S. 544 (2007)..........................................................................10

Benay v. Warner Bros. Entm't, Inc.,
   607 F.3d 620 (9th Cir. 2010) ............................................................14

Braun v. Chronicle Publ'g,
   52 Cal. App. 4th 1036 (1997) .............................................................3

Briggs v. Eden Council for Hope & Opportunity,
   19 Cal. 4th 1106 (1999) ......................................................................4

Buchanan v. Neighbors Van Lines,
   2010 WL 4916644 (C.D. Cal. Nov. 29, 2010)..............................16, 18

Carroll v. Kahn,
   2003 WL 22327299 (N.D.N.Y. Oct. 9, 2003) ....................................24

Chandler v. Roach,
   156 Cal. App. 2d 435 (1957) ........................................................15, 16

City of Cotati v. Cashman,
   29 Cal. 4th 69 (2002) ..........................................................................4

Cross v. Cooper,
   197 Cal. App. 4th 357 (2011) .............................................................6

SPECIAL MOTION TO STRIKE
DWT 26388691v6 0020040-000121

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

D.R. Horton L.A. Holding Co. v. Am. Safety Indem. Co.,
    2012 U.S. Dist. LEXIS 1881 (S.D. Cal. Jan. 5, 2012)........................................ 22

Dastar Corp. v. 20th Century Fox Film Corp.,
    539 U.S. 23 (2003) .................................................................................... 23, 24

Desny v. Wilder,
    46 Cal. 2d 715 (1956) ................................................................................ passim

Dillon v. NBCUniversal Media LLC,
    2013 WL 3581938 (C.D. Cal. June 18, 2013) .................................................. 17

Doe v. Gangland Prods., Inc.,
    730 F.3d 946 (9th Cir. 2013) ............................................................................ 6

Donahue v. Ziv Television Programs, Inc.,
    245 Cal. App. 2d 593 (1966) ............................................................................ 5

Dyer v. Childress,
    147 Cal. App. 4th 1273 (2007) ......................................................................... 7

Equilon Enters. v. Consumer Cause,
    29 Cal. 4th 53 (2002) ....................................................................................... 4

Faris v. Enberg,
    97 Cal. App.3d 309 (1979) ................................................................... 9, 14, 20-21

Fintland v. Luxury Marine Group, LLC,
    2010 U.S. Dist. LEXIS 24959 (C.D. Cal. March 1, 2010) .................................. 5

Gable v. Nat'l Broad. Co.,
    727 F. Supp. 2d 815 (C.D. Cal. 2010) ........................................................ 9, 11-12

General of America Ins. v. Lilly,
    258 Cal. App. 2d 465 (1968) .......................................................................... 22

Goodspeed v. Nichols,
    2012 U.S. Dist. LEXIS 165927 (E.D. Cal. Nov. 19, 2012).............................. 22

Greater Los Angeles Agency on Deafness, Inc. v. Cable News
    Network, Inc.,
    742 F.3d 414 (9th Cir. 2014) ............................................................................ 5

Hall v. Time Warner, Inc.,
    153 Cal. App. 4th 1337 (2007) ......................................................................... 6

SPECIAL MOTION TO STRIKE
DWT 26388691v6 0020040-000121

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Hill v. Gaylord Entm't,
    2008 WL 783756 (S.D. Fla. March 20, 2008)....................................................10

Hilton v. Hallmark Cards,
    599 F.3d 894 (9th Cir. 2010) ................................................................4-6

Hood v. Superior Court,
    33 Cal. App. 4th 319 (1995) ................................................................22

Howard v. First Horizon Loan Corp.,
    2013 U.S. Dist. LEXIS 85585 (N.D. Cal. June 18, 2013)..................................22

Hupp v. City of Beaumont,
    2011 U.S. Dist. LEXIS 151709 (C.D. Cal. Dec. 12, 2011) ................................22

Hustlers Inc. v. Thomasson,
    73 U.S.P.Q.2d 1923 (N.D. Ga. Dec. 29, 2004)............................................24

Ingels v. Westwood One Broadcasting,
    129 Cal. App. 4th 1050 (2005) ..............................................................7

J.L. v. Children's Inst., Inc.,
    177 Cal. App. 4th 388 (2009) ................................................................17

Joseph Burstyn, Inc. v. Wilson,
    343 U.S. 495 (1952)..........................................................................5

Kenney v. Warner Bros. Entm't, Inc.,
    984 F. Supp. 2d 9 (D. Mass. 2013) ........................................................10

Mann v. Columbia Pictures, Inc.,
    128 Cal. App. 3d 628 (1982) ........................................................9, 12, 14

Meta-Film Assocs., Inc. v. MCA Inc.,
    586 F. Supp. 1346 (C.D. Cal. 1984) ....................................................12, 19

Navellier v. Sletten,
    29 Cal. 4th 82 (2002) ....................................................................4, 5

No Doubt v. Activision Publishing, Inc.,
    192 Cal. App. 4th 1018 (2011) ..............................................................7

Nygard, Inc. v. Uusi-Kerttula,
    159 Cal. App. 4th 1027 (2008) ..............................................................6

iv

SPECIAL MOTION TO STRIKE
DWT 26388691v6 0020040-000121

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

_Polydoros v. Twentieth Century Fox Film Corp._,
   67 Cal. App. 4th 318 (1998) ................................................................5

_Ray Charles Found. v. Robinson_,
   919 F. Supp. 2d 1054 (C.D. Cal. 2013) ..............................................5

_Rokos v. Peck_,
   182 Cal. App. 3d 604 (1986) ............................................................14

_Sarver v. Hurt Locker LLC_,
   2011 U.S. Dist. LEXIS 157503 (C.D. Cal. Oct. 13, 2011), _appeal
   pending_ ................................................................................................5

_Seelig v. Infinity Broadcasting Corp._,
   97 Cal. App. 4th 798 (2002) ...........................................................6, 7

_Shulman v. Group W. Prods._,
   18 Cal. 4th 200 (1998) ........................................................................5

_Spinner v. ABC, Inc._,
   215 Cal. App. 4th 172 (2013) ....................................................._passim_

_Sutton v. Walt Disney Prods._,
   118 Cal. App. 2d 598 (1953) ..............................................................9

_Tamkin v. CBS Broadcasting, Inc._,
   193 Cal. App. 4th 133 (2011) ..........................................................5-6

_Tarantino v. Gawker Media, LLC_,
   2014 U.S. Dist. LEXIS 77726 (C.D. Cal. April 22, 2014) .................11

_Teixeira v. County of Alameda_,
   2013 WL 4804756 (N.D. Cal. Sept. 9, 2013) ...................................10

_Three Boys Music Corp. v. Bolton_,
   212 F.3d 477 (9th Cir. 2000) ..............................................................9

_U.S. Commodity Futures Trading Comm'n v. Paron Capital Mgmt.,
   LLC_,
   2012 WL 1156396 (N.D. Cal. Apr. 6, 2012) ....................................16

_van't Rood v. County of Santa Clara_,
   113 Cal. App. 4th 549 (2003) ...........................................................17

SPECIAL MOTION TO STRIKE
DWT 26388691v6 0020040-000121

**Davis Wright Tremaine** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

<u>Vivendi SA v. T-Mobile USA Inc.</u>,
   586 F.3d 689 (9th Cir. 2009) ........................................................................ 11

<u>Williams v. UMG Recordings</u>,
   281 F. Supp. 2d 1177 (C.D. Cal. 2003) ....................................................... 24

**Statutes**

15 U.S.C. § 1125(a)(1)(A) ............................................................................... 23

California Civil Code
   § 2316 ............................................................................................................ 16
   § 2317 .............................................................................................................. 6

California Code of Civil Procedure
   § 425.16 ..................................................................................................... *passim*
   § 425.16(b) ...................................................................................................... 4
   § 425.16(b)(1) ............................................................................................. 4, 8
   § 425.16(c) .................................................................................................... 25
   § 425.16(e) ...................................................................................................... 4
   § 425.16(e)(4) .................................................................................................. 4

**Rules**

Fed. R. Civ. P. 8(a)(2) ...................................................................................... 11

**Other Authorities**

Melville B. Nimmer & David Nimmer, Nimmer on Copyright
   (Bender, 2011) ............................................................................................... 14

SPECIAL MOTION TO STRIKE
DWT 26388691v6 0020040-000121

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# I.

## II.   SUMMARY OF ARGUMENT

This lawsuit arises from the creation, production, and distribution of the shooting script and full-length feature film entitled "The Purge" ("the Film") (collectively "the Works").  Plaintiff claims that his ideas, embodied in an unpublished Screenplay, were "stolen" by writer James DeMonaco and producer Why Not Productions ("WNP"), and that Plaintiff is entitled to what amounts to a monopoly on the concepts contained in these dramatic fictional works.  Notably, Plaintiff does not claim that he <u>ever</u> had any direct contact with DeMonaco or WNP – or with any of the other Film Defendants – nor does he claim that he ever sent  his Screenplay to <u>any</u> of them.  Instead, he claims that his manager emailed a copy of the Screenplay to two agents at United Talent Agency ("UTA") – Emerson Davis and David Kramer – and because DeMonaco and WNP were represented by a different agent at UTA, Charlie Ferraro, access was somehow imputed to these defendants.

Plaintiff then attempts to makes an even more farfetched claim:  that this submission to third parties somehow created an implied-in-fact contract between him, DeMonaco and WNP.  He relies on a narrow body of law that allows the legal fiction of an "implied" contract under certain limited circumstances, where both parties understand and impliedly agree that the disclosure of confidential information creates an obligation to pay the "idea man" if the information is used.

Under the circumstances alleged here, however, Plaintiff's theory would mean that anyone who disclosed an idea to <u>any</u> agent at a talent agency like UTA could claim that it was effectively submitted to every client of <u>every</u> agent working at the same company, and that an "implied contract" was created with dozens – if not hundreds – of writers, directors, actors, and entertainment industry executives.  This attempt to dramatically expand  the law has not been adopted by a single court, and, if permitted here, would turn well-established contract and agency law on its head.

SPECIAL MOTION TO STRIKE
DWT 26388691v6 0020040-000121

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Fortunately, the Legislature has provided a remedy for defendants who face meritless claims that target their exercise of the right of free speech or their acts in furtherance of that right, about topics of public interest.  Under California's SLAPP statute, C.C.P. § 425.16, such claims are subject to immediate dismissal unless the plaintiff can demonstrate a <u>probability</u> of prevailing at the outset of the case.

As explained below, Plaintiff's implied contract and declaratory relief claims each arise from the creation, production, and distribution of expressive works – conduct that falls well within the broad scope of the SLAPP statute.  <u>See</u> Section II(A), <u>infra</u>.  Because the content of the Works and their creation involve matters of public interest (Section II(B), <u>infra</u>), the SLAPP statute applies, and the burden shifts to Plaintiff to demonstrate a probability of prevailing on his claims.  He cannot meet this burden as to either of these claims.

<u>First</u>, Plaintiff's implied contract claim fails because he fails to plausibly allege that DeMonaco or WNP ever had access to Plaintiff's Screenplay, which is an essential element of a claim for breach of implied-in-fact contract.  At most, Plaintiff alleges that two agents at UTA received the unpublished Screenplay.  But it is well established that mere corporate receipt is inadequate to establish access even for copyright infringement, let alone the requisite nexus for an implied-in-fact contract claim.  His Fourth Claim For Relief fails for this reason alone.  Section III(A), <u>infra</u>.

<u>Second</u>, Plaintiff's implied contract claim independently fails because he has not and cannot allege facts sufficient to meet his burden of proving contractual privity with DeMonaco or WNP.  Plaintiff does not claim that there was any direct contact with DeMonaco or anyone from WNP, nor has he alleged facts that would establish that the UTA agents he contacted, Davis and Kramer, had any authority to bind DeMonaco or WNP to a contract, particularly that they are not (and cannot be) alleged to be the agents for these two defendants.[5]  Section III(B)(1), <u>infra</u>.

_____

[5] According to news reports, UTA is one of the biggest talent agencies in the world, with more than 130 talent agents and thousands of clients.  See concurrently-

SPECIAL MOTION TO STRIKE
DWT 26388691v6 0020040-000121

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Third, Plaintiff has not sufficiently alleged the other elements of an implied-in-fact contract claim.  This limited claim requires the Plaintiff to plead and prove a mutual understanding that the defendants will pay for the ideas disclosed if they are used.  But here, the purported submission was not to DeMonaco or WNP, or even to an agent at UTA who represented either of them, so there could be no such "understanding."  Moreover, Plaintiff does not allege that he submitted the Screenplay with the intention of "selling" it to DeMonaco or WNP.  Nor is there any allegation that Davis and Kramer voluntarily accepted the Screenplay with the understanding that they were thereby binding DeMonaco and WNP to a contract.  No court has ever stretched the legal fiction of an implied contract claim so far, nor should this Court do so here.  Section III(B)(2), infra.

Fourth, Plaintiff's declaratory relief claim fails because it arises from the same allegations as his implied contract claim, and fails for the same reasons.  Moreover, because this claim seeks an order compelling the Film Defendants to "credit" him as a writer of the Works, it is a thinly disguised claim for reverse passing off, which independently is barred by controlling United States Supreme Court authority.  Section III(C), infra.

Because Plaintiff cannot meet his burden as to the Fourth or Fifth Claims For Relief, the Court should grant the Motion, and award the Film Defendants their fees and costs incurred in defending against them.  C.C.P. § 425.16(c).

## III.    SECTION 425.16 APPLIES TO PLAINTIFF'S CLAIMS

In 1992, the Legislature enacted C.C.P. § 425.16 "to nip SLAPP litigation in the bud[,]" by quickly disposing of claims that target the exercise of free-speech rights.  Braun v. Chronicle Publ'g, 52 Cal. App. 4th 1036, 1042 (1997).  Under the

___

submitted Declaration of Karen A. Henry and Exhibit K; Request For Judicial Notice Section III.  The reported size and scale of representation makes it not only implausible, but impossible that anyone submitting a screenplay to one UTA agent would believe that doing so creates any kind of "contract" – let alone an "implied" contract – with every client of every agent at UTA.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

statute, any "cause of action against a person arising from any act … in furtherance of the person's right of … free speech … in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." C.C.P. § 425.16(b)(1).  The Legislature subsequently amended Section 425.16 to ensure that it "shall be construed broadly."[6]

The California Supreme Court has outlined a "two-step process" for determining whether a claim must be stricken under Section 425.16.  "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity."  Navellier, 29 Cal. 4th at 88. This requires the defendant to show that the alleged conduct "underlying the plaintiff's cause fits one of the categories spelled out" in Section 425.16(e).  Id. These categories include "any … conduct [by the defendant] in furtherance of the exercise of the constitutional right ... of free speech in connection with a public issue or an issue of public interest."  C.C.P. § 425.16(e)(4) (emphasis added).  If the claim arises from such conduct, the court "must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim."  Id.  If the plaintiff cannot meet this burden, the claim must be stricken.  Id.

## A.    Plaintiff's Fourth And Fifth Claims For Relief Arise From Conduct Protected Under Section 425.16.

Plaintiff's claims arise from the creation, production, and distribution of expressive works – a script and a feature film – and thus fall well within the scope of Section 425.16(b).  Courts routinely have applied the statute to claims targeting

---

[6] The California Supreme Court similarly declared that "the broad construction expressly called for in [Section 425.16] is desirable from the standpoint of judicial efficiency," and cautioned "that [a narrow construction] would serve Californians poorly."  Briggs v. Eden Council for Hope & Opportunity, 19 Cal. 4th 1106, 1120-1121 (1999).  See also Equilon Enters. v. Consumer Cause, 29 Cal. 4th 53, 61 (2002); City of Cotati v. Cashman, 29 Cal. 4th 69, 76 (2002); Navellier v. Sletten, 29 Cal. 4th 82, 92 (2002).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

similar creative works.  See, e.g., Sarver v. Hurt Locker LLC, 2011 U.S. Dist. LEXIS 157503 (C.D. Cal. Oct. 13, 2011), appeal pending (fictional film); Hilton v. Hallmark Cards, 599 F.3d 894, 905-906 (9th Cir. 2010) (greeting card); Tamkin v. CBS Broadcasting, Inc., 193 Cal. App. 4th 133, 143 (2011) (script and related materials for fictional television program); Kronemyer v. Internet Movie Database, Inc., 150 Cal. App. 4th 941, 950 (2007) (website listing credits for creative works).[7]

Moreover, to prevent plaintiffs from using artful pleading to evade the SLAPP statute, courts have held that it covers any claim – regardless of its label – arising from protected conduct.  Navellier, 29 Cal. 4th at 92 (contract); Ray Charles Found. v. Robinson, 919 F. Supp. 2d 1054, 1064-1065 (C.D. Cal. 2013) (same); Fintland v. Luxury Marine Group, LLC, 2010 U.S. Dist. LEXIS 24959, *17 (C.D. Cal. March 1, 2010) (declaratory relief); Kronemyer, 150 Cal. App. 4th at 950 (same).

Here, Plaintiff's implied contract and declaratory relief claims arise entirely from protected activity.  The Fourth Claim For Relief alleges that DeMonaco and WNP breached an implied contract by using ideas from Plaintiff's Screenplay in the Works.  SAC, ¶¶ 74-75.  Thus, Plaintiff's implied contract claim arises directly from the creation, production, and distribution of expressive works – conduct that is both directly and indirectly "in furtherance of" their free speech rights.  E.g., Sarver, 2011 U.S. Dist. LEXIS 157503 at *13 (creation and content of fictional film); Tamkin, 193 Cal. App. 4th at 143 (creation and use of script and related materials for casting of

---

[7] These decisions reflect that "constitutional guarantees of freedom of expression apply with equal force to [a] publication whether it be a news report or an entertainment feature."  Shulman v. Group W. Prods., 18 Cal. 4th 200, 225 (1998).  "While the California Supreme Court has not drawn the outer limits of activity that furthers the exercise of free speech rights[,]" (Hilton, 599 F. 3d at 903), "expression by means of motion pictures is included within the free speech and free press guaranty of the First and Fourteenth Amendments."  Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 501, 502 (1952).  See also Polydoros v. Twentieth Century Fox Film Corp., 67 Cal. App. 4th 318, 323-324 (1998) ("[f]ilm is a 'significant medium for the communication of ideas'") (citation omitted).  Fictional works are entitled to the same constitutional protection as non-fiction.  Polydoros, 67 Cal. App. 4th at 324 (citation omitted); see also Sarver, 2011 U.S. Dist. LEXIS 157503 at *13.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

fictional television program).  Courts also have recognized that conduct "in furtherance" of speech involves all kinds of pre-broadcast conduct.  See, e.g., Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc., 742 F.3d 414, 424 (9th Cir. 2014) (decision to display videos on website without close captioning); Doe v. Gangland Prods., Inc., 730 F.3d 946, 954 (9th Cir. 2013) (alleged agreement concerning plaintiff's interview was act in furtherance of speech rights); Hall v. Time Warner, Inc., 153 Cal. App. 4th 1337, 1341 (2007) (newsgathering conduct).

The Fifth Claim For Relief for declaratory relief relies on the same alleged conduct as Plaintiff's implied contract claim, and thus falls within the scope of the SLAPP statute for the same reasons.  Moreover, Plaintiff's claim that he is entitled to a writing "credit" (SAC ¶¶ 77-78) independently arises from protected conduct.  As the court explained in Kronemyer, the decision not to identify a person in the credits of an expressive work is an act in furtherance of free speech.  150 Cal. App. 4th at 947 (SLAPP statute applied to declaratory relief action arising from refusal to credit plaintiff as film producer).  Thus, the SLAPP statute applies to this claim as well.

**B.      The Speech At Issue Involves A Matter Of Public Interest.**

The "public interest" requirement, "like all of section 425.16, is to be construed broadly …."  Seelig v. Infinity Broadcasting Corp., 97 Cal. App. 4th 798, 808 (2002).  Matters of public interest are not limited to traditional news reports; instead, an issue of public interest has been broadly defined as "any issue in which the public is interested" and  "need not be 'significant' to be protected by the anti-SLAPP statute …."  Nygard, Inc. v. Uusi-Kerttula, 159 Cal. App. 4th 1027, 1042 (2008); Cross v. Cooper, 197 Cal. App. 4th 357, 372-373 (2011) (same).  As the Ninth Circuit held in applying the statute to a greeting card, "the activity of the defendant need not involve questions of civic concern; social or even low-brow topics may suffice …."  Hilton, 599 F.3d at 905-06.  This broad standard is easily met here.  As a widely disseminated expressive work, the Film is itself a matter of public interest.  See, e.g., Tamkin, 193 Cal. App. 4th at 143 (popularity of television

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

program showed public was "demonstrably interested in the creation and broadcasting of that episode" for the purposes of SLAPP statute); <u>Seelig</u>, 97 Cal. App. 4th at 807-08 (noting popularity of reality television program in finding that it was of "significant interest"); SAC, ¶¶ 34-37, ¶44 (referencing news reports about Film and related media).

But the topics addressed <u>in</u> the Works also involve social and cultural issues of interest to the public.[8]  The Works present a seemingly utopian future society where crime rates are nearly non-existent, purportedly due to the opportunity citizens have to purge their negative emotions annually by committing crimes (including murder) without punishment.  Exs. D, I.[9]  The Film focuses on how the system impacts one family, whose patriarch has been a proponent and beneficiary of the annual "purging."  The Works also delve into the more sinister economic implications of permitting crime, given that the primary targets of the government-sanctioned killing-spree are the poorer members of society.  Ex. I.

This disturbing premise captured the public's attention and sparked extensive public discussion.  <u>See</u> Exs. B, H.[10]  The broad topic of government-sanctioned murder has been widely debated, both in connection with fictional works, and in real

---

[8] In considering this part of the first prong test, the Court should consider the broad topics that are included in the work at issue.  <u>See</u>, <u>e.g.</u>, <u>Seelig</u>, 97 Cal. App. 4th at 808 (court focused on the overall topic of the radio show, rejecting argument that the "public interest" clause should be interpreted narrowly); <u>Ingels v. Westwood One Broadcasting</u>, 129 Cal. App. 4th 1050, 1056, 1064 (2005) (court held that on-air discussion between actor Marty Ingels and radio host Tom Leykis involved an issue of public interest because it "occurred in connection with a live call-in radio show addressing subjects of interest to the public at large," including "relationships between men and women"); <u>No Doubt v. Activision Publishing, Inc.</u>, 192 Cal. App. 4th 1018, 1027 (2011) ("Guitar Hero" video game involved matter of public interest); <u>Dyer v. Childress</u>, 147 Cal. App. 4th 1273, 1277, 1280, 1284 (2007) (broad topic of fictional film depicting issues facing Generation X was of public interest).

[9] A DVD of the Film has been concurrently lodged.  <u>See</u> Notice Of Lodging and Ex. I; <u>see</u> <u>also</u> Henry Decl. at ¶ 12.

[10] Courts have considered articles and news reports in evaluating the extent of public interest in a topic, for purposes of the SLAPP analysis.  <u>See</u> RJN Section I.

---

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

life.[11]  Similarly, the concept of excising "undesirable" members of society – and the economic motivation for such action – has been examined in a variety of contexts, from academic studies investigating ethnic cleansing in Darfur, to newspaper articles examining the economics of gentrification in Harlem.  Ex. F.[12]  And Utopian fiction has been a hallmark of the social imagination since Thomas More's "Utopia" in 1516.[13]  For all these reasons, the broad topics examined in the Works easily satisfy the public interest requirement of Section 425.16.

## IV.   PLAINTIFF CANNOT SHOW A PROBABILITY OF PREVAILING.

Because the Film Defendants' conduct falls within the scope of Section 425.16, the burden shifts to Plaintiff to establish a probability that he will prevail on his Fourth and Fifth Claims For Relief.  Where, as here, a plaintiff fails to satisfy this burden, the Court must strike the claim.  C.C.P. § 425.16(b)(1).

### A.   Plaintiff's Implied Contract Claim Fails Because He Has Not Adequately Alleged Access To His Screenplay.

For an implied contract claim, as for his copyright claims, Plaintiff has the

---

[11] Ex. E.  A report published by the Pew Research Center observes that "[f]ew public policy issues have inflamed passions as consistently and strongly as the debate over capital punishment."  Ex. E at 248.  The idea of government-sanction violence also has been examined in other fictional films, including "Escape from New York," "The Hunger Games," "Mad Max," "The Lottery," "Red State," and "The Stoning of Soraya M."  Ex. A.

[12] Ethnic and social cleansing has been a central theme in a variety literary works, including films like "Tears of the Sun," "Hotel Rwanda," "Schindler's List," "The Pianist," "The Boy in the Striped Pajamas," "The Reader," "Beyond Borders," "The Devil's Arithmetic," "In the Land of Blood and Honey," "Surviving the Game," "The Running Man," and in classic novels like "Lord of the Flies."  Ex. B.

[13] In an essay examining society's "recurrent preoccupation" with the subject, one scholar explains that utopian thinking "maintains a compelling hold upon the ways in which we individually and collectively conceive life and its possibilities, the ways we imagine, past, present and future."  Ex. G at 326.  Not surprisingly, the concept of utopias, and false utopias specifically, are core themes in contemporary literature, including in works like "The Giver," "The Time Machine," "Logan's Run," "Soylent Green," "The Lottery," "The Hunger Games," "Aeon Flux," "The Island," "Divergent," "Brave New World," and "Elysium."  Ex. C.

---

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

burden of pleading and proving that the defendants had access to the Screenplay that he claims was improperly copied.  But despite his third attempt to plead a claim, Plaintiff's SAC fails to allege facts sufficient to meet his burden of demonstrating that DeMonaco or WNP had access to the unpublished Screenplay.  His attenuated claim, based on the emailing of the Screenplay to two agents at UTA who do not represent these defendants, is inadequate.

### 1.    Access Is An Essential Element Of An Implied Contract Claim.

To state a claim for breach of implied-in-fact contract, a plaintiff must plead, among other things, that the defendant "used" his idea without authorization or compensation.  See Desny v. Wilder, 46 Cal. 2d 715, 738-739 (1956); Spinner v. ABC, Inc., 215 Cal. App.4th 172, 184 (2013); Mann v. Columbia Pictures, Inc., 128 Cal. App. 3d 628, 647 n.6 (1982); Faris v. Enberg, 97 Cal. App.3d 309, 318 (1979).  A plaintiff can raise an inference of "use" by showing that the defendant had access to his idea and that the defendant's work and the plaintiff's idea are "substantially similar."  See Sutton v. Walt Disney Prods., 118 Cal. App. 2d 598, 603 (1953).

Of particular importance here, "[r]easonable access requires more than a bare possibility, and may not be inferred through mere speculation or conjecture."  Gable v. Nat'l Broad. Co., 727 F. Supp. 2d 815, 824 (C.D. Cal. 2010) (emphasis added); see also Three Boys Music Corp. v. Bolton, 212 F.3d 477, 482 (9th Cir. 2000) (same).[14] Instead, the plaintiff's showing must permit the court to reasonably infer access, either because the plaintiff's work was widely disseminated, or through specific facts allege a chain of events that shows access was not only "possible" but "plausible."  See Gable, 727 F. Supp. 2d at 824.  Failure to plausibly allege facts that demonstrate access subjects an implied contract claim to dismissal.  Id.

---

[14] Because the framework for establishing "use" in connection with an idea submission claim is parallel to the framework for establishing copying in a copyright claim, courts may rely on copyright cases to evaluate whether a plaintiff alleging a Desny claim has established the requisite access.  Spinner, 215 Cal. App. 4th at 186.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

As discussed in detail in the Film Defendants' concurrently-filed 12(b)(6) Motion, Plaintiff has not met his burden of pleading facts sufficient to demonstrate access, despite three attempts.  Because the Screenplay was unpublished, and there is no allegation that it was otherwise widely or publicly disseminated (SAC ¶ 16),[15] Plaintiff must allege specific facts that, if proven, would meet his burden of demonstrating access.  12(b)(6) Motion at III(A); see also Hill v. Gaylord Entm't, 2008 WL 783756, *2 (S.D. Fla. March 20, 2008) (claim that plaintiff sent unpublished manuscript to "publishers and literary agents" was insufficient to show access).[16]

Here, Plaintiff does not claim that he had any contact whatsoever with DeMonaco or WNP, nor does he plead any specific facts establishing that either of these defendants had direct access to the Screenplay.  See generally, SAC.  Instead, his theory of "access" to these defendants for his theft-of-ideas claim is based entirely on the allegation that Plaintiff's manager emailed a copy of the Screenplay to two agents at UTA – neither of whom is alleged to be the agent for these defendants – and his speculative leap that access to the Screenplay was therefore imputed to the defendants.[17]  To the contrary, as discussed below, this is insufficient to adequately plead "access" by either DeMonaco or WNP.

---

[15] The allegation that a work was registered with the Writer's Guild of America does not satisfy this requirement.  Kenney v. Warner Bros. Entm't, Inc., 984 F. Supp. 2d 9, 11, 13 (D. Mass. 2013) (registering a work with the Guild does not infer access because "registration does not place a work in the public arena").

[16] Under controlling United States Supreme Court cases, Plaintiff must do more than make conclusory allegations; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  See also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "[A] complaint does not suffice if it tenders naked assertions devoid of further factual enhancement." Teixeira v. County of Alameda, 2013 WL 4804756, *4 (N.D. Cal. Sept. 9, 2013) (quoting Iqbal, 556 U.S. at 678).

[17] Plaintiff previously alleged that DeMonaco is represented by UTA agent Charlie Ferraro.  See Plaintiff's FAC, Dkt. No. 11, ¶ 24.  In a transparent attempt to evade dismissal, Plaintiff's SAC omits this paragraph (although it still mentions Mr. Ferraro), and instead alleges that DeMonaco and WNP are represented "by UTA." SAC ¶¶ 31, 38.  This kind of disingenuous editing does not permit Plaintiff to pretend as if the prior allegation does not exist.  See 12(b)(6) Motion at III(B)(3).

SPECIAL MOTION TO STRIKE
DWT 26388691v6 0020040-000121

Davis Wright Tremaine LLP
865 S. Figueroa St, Suite 2400
Los Angeles, California 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## 2.    Alleging Bare Corporate Receipt Does Not Infer Access.

Plaintiff alleges that, on July 8, 2011, his manager emailed his unpublished draft of a Screenplay titled "Settler's Day" to two agents at UTA – David Kramer and Emerson Davis – who rejected it a few days later.  SAC, at ¶¶ 22, 24.  Almost two years later, on June 7, 2013, the Film was released.  Id. at ¶¶ 30, 44.  Based solely on these allegations, Plaintiff concludes that "'Settler's Day' was received by DeMonaco's agency, which in the entertainment industry, is receipt by DeMonaco[,]"and that, on information and belief,[18] UTA transmitted "Settler's Day" to DeMonaco.  Id. at ¶¶ 32, 40.  This premise – that Plaintiff can establish "access" to his unpublished work by alleging that it was sent to someone at UTA – even though that person does not represent defendants – is absurd.  Under this theory, a pitch to any agent at a talent agency would be deemed to have been made to every single client of every other agent who works at the same agency.  No court has ever adopted such a dramatic departure from well-established laws of agency.  To the contrary, courts unequivocally have rejected this sweeping theory of access.

In Gable, for example, the plaintiff sued the creator of "My Name Is Earl" (among others), alleging the television program infringed the copyright in his script titled "Karma!"  727 F. Supp. 2d at 818.  He argued the television program's creator – Gregory Thomas Garcia – had access to "Karma!" because the plaintiff had submitted the script to a person at the talent agency that represented Garcia.  See id. at 825.  According to the plaintiff, once the agency received his screenplay, "it [was] reasonable that Garcia, as a client of [the agency], would have access to it."  Id.

The court disagreed, explaining that a plaintiff cannot establish access by showing "bare corporate receipt of his work [.]"  Id. at 826 (internal quotations

---

[18] Under Rule 8(a)(2), allegations made on information and belief generally are insufficient to meet the plaintiff's pleading burden.  See, e.g., Vivendi SA v. T-Mobile USA Inc., 586 F. 3d 689, 694 (9th Cir. 2009) (finding allegations on information and belief insufficient); Tarantino v. Gawker Media, LLC, 2014 U.S. Dist. LEXIS 77726, *14 n. 4 (C.D. Cal. April 22, 2014) (same).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

omitted).  Instead, "a plaintiff must show that he submitted his work to an intermediary who is in a position to transmit the plaintiff's work to the creators of the infringing work."  Id.  The plaintiff in Gable failed to establish the requisite nexus.  The fact that the recipient and Garcia's agent were at the same agency did not mean that they ever discussed the plaintiff's submission.  Id. at 828.  Thus, the court held that the plaintiff had failed to meet his burden.

The court in Spinner also rejected a theory of access based on corporate receipt.  There, the plaintiff brought a claim for breach of implied-in-fact contract against the creators of the popular television program "LOST," alleging the program was based on a script he had submitted decades earlier to development executives at ABC.  215 Cal. App. 4th at 175-176.  Although the plaintiff could not plead or prove direct access to any of the defendants, he theorized that the development executives involved in the creation of "LOST" had an opportunity to view his script "because ABC had a policy of permanently retaining unreturned scripts, and [his] script must have been present somewhere in a script library at ABC."  Id. at 187.  The court rejected this theory as pure "guesswork."  Id.  As the court explained, "[a]ccess means that the defendants had an opportunity to view or to copy the plaintiff's work[,]" and more than a "bare possibility" of access is required to make that showing.  Id. at 185.  As the court noted, "[t]he relationship linking the intermediary and the creator should be more than the simple fact that they share a common employer."  Id.  See also Mann, 128 Cal. App. 3d at 631, 636 (rejecting idea submission claim based on allegations that plaintiff submitted her story outline to an executive for a company that was affiliated with the defendant studio); Meta-Film Assocs., Inc. v. MCA Inc., 586 F. Supp. 1346, 1356-1359 (C.D. Cal. 1984) (claim rejected where the plaintiff allegedly showed its work to a director who was under contract with the defendant and worked on the studio lot, but could not demonstrate any connection between the director and the studio's allegedly infringing project).

Similarly, Plaintiff has failed to plead facts sufficient to support his theory of

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

access here.  He does not allege that DeMonaco or WNP ever had any relationship or communications with Kramer or Davis, or that Kramer or Davis ever talked to the defendants' agent, Charlie Ferraro, about Plaintiff's Screenplay.  Instead, he simply speculates that there <u>might</u> have been contact – which is precisely the kind of "conjecture" that courts have found to be inadequate to demonstrate access.  For this reason alone, Plaintiff's Fourth Claim for Relief should be dismissed.

**B.** **Plaintiff's Claim Independently Fails Because He Has Not Pleaded Facts Sufficient To Demonstrate Contractual Privity.**

The California Supreme Court has recognized the general principles that ideas are not property, and "become, after voluntary communication to others, free as the air to common use." <u>Desny</u>, 46 Cal. 2d at  731-732; <u>see</u> <u>also</u> <u>Spinner</u>, 215 Cal. App. 4th at 184 (citing <u>Desny</u>).  The Supreme Court recognized a limited exception to this general rule, however, if parties <u>contract</u> for the right to receive payment for disclosing ideas, under very narrowly-conscribed circumstances.  <u>Desny</u>, 46 Cal. 2d at 731.  The Court reasoned that if a person "commercially solicits" the disclosure of a "valuable idea," and "voluntarily accepts it knowing that it is tendered for a price," that contract may be enforced.  <u>Id.</u> at 734 (emphasis added).

But that does not mean every disclosure of an idea for a television show or film creates an implied contract.  As the <u>Desny</u> Court observed, "[t]he law will not imply a promise to pay for an idea from the mere facts that the idea has been conveyed, is valuable, and has been used for profit; this is true even though the conveyance has been made with the hope or expectation that some obligation will ensue." <u>Id.</u> at 739.  Instead, a "<u>Desny</u>" claim requires a <u>clear and mutually understood</u> expectation of payment for an idea <u>before</u> it is disclosed, or no liability can be imposed.  Thus, to state a claim for breach of implied-in-fact contract under California law, the plaintiff must allege <u>specific facts</u> from which the court can reasonably infer:  (1) the plaintiff clearly conditioned the submission of his idea to the defendant on the defendant's promise to pay for it if the defendant used it; (2) the

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

defendant, knowing this condition <u>before</u> the plaintiff disclosed the idea, voluntarily accepted the submission of the idea; (3) the defendant actually used the idea – that is, the defendant based its work substantially on the plaintiff's idea, rather than on its own idea or ideas from other sources; and (4) the plaintiff incurred damages.  <u>See</u> <u>Desny</u>, 46 Cal. 2d at 738-739; <u>Spinner</u>, 215 Cal. App. 4th at 184; <u>Mann</u>, 128 Cal. App. 3d at 647 n.6; <u>Faris</u>, 97 Cal. App. 3d at 318.  As the Court explained, "[o]ne party cannot, by unilateral words or deeds, thrust upon another a contractual relationship <u>unless</u> the latter has, <u>by his own words and deeds</u>, consented thereto."  <u>Desny</u>, 46 Cal. 2d at 730 (emphasis added).  Plaintiff has not pleaded facts sufficient to meet this strict burden, nor has any Court adopted his theory that an implied-in-fact contract claim can be imposed on a defendant who has no contact whatsoever with the Plaintiff, and does not expressly authorize a third party to accept disclosures and enter into implied agreements on the defendant's behalf.

### 1.     Plaintiff Did Not Allege Privity With DeMonaco Or WNP.

"Privity between the parties is a necessary element of an implied-in-fact contract claim."  <u>Benay v. Warner Bros. Entm't, Inc.</u>, 607 F.3d 620, 634 (9th Cir. 2010).  "[T]he creation of an implied-in-fact contract between an author, on the one hand, and an agent, producer, or director, on the other hand, is of such a personal nature that it is effective <u>only</u> between the contracting parties."  <u>Rokos v. Peck</u>, 182 Cal. App. 3d 604, 617 (1986) (emphasis added); <u>see also</u> <u>Chandler v. Roach</u>, 156 Cal. App. 2d 435, 441 (1957) ("[u]nlike a copyright, a contract … is effective only between the contracting parties; it does not withdraw the idea from general circulation").  <u>See also</u> 4 Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 19D.05[C] (Bender, 2011).  Thus, "a contract action will fail if the person to whom the plaintiff submitted the idea was not authorized – actually or apparently – to enter into contracts on behalf of the defendant."  <u>Id.</u>

This limitation only makes sense:  a plaintiff cannot possibly have "clearly conditioned" his submission to the defendant on a promise to pay – nor can the

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

defendant "voluntarily" have accepted such a condition prior to the disclosure, as Desny requires – if there was never any contact between the plaintiff and the defendant, and the person receiving the submission was never asked about the particular defendant, did not accept it on behalf of that particular defendant, or was not expressly authorized to accept it on behalf of that particular defendant.

Here, even though this is Plaintiff's third attempt to plead a claim, the SAC still fails to include any factual allegations showing privity between Plaintiff, on the one hand, and DeMonaco and/or WNP, on the other hand.  Clearly there was no direct contact – Plaintiff effectively has conceded as much.  Moreover, nothing in the SAC alleges any facts showing that Plaintiff was seeking to submit the Screenplay to these defendants, or that Kramer or Davis had the authority to accept submissions on behalf of either DeMonaco or WNP.  Indeed, the SAC does not contain a single factual allegation showing any mention whatsoever of DeMonaco or WNP in any communications between or by Plaintiff, his manager, Kramer, or Davis.

Instead, Plaintiff simply recites the language from Desny, making the conclusory assertion that DeMonaco and WNP "voluntarily accepted the disclosure knowing they had an obligation to compensate and credit Plaintiff[,]" and "had multiple opportunities to reject" the submission (SAC ¶¶ 23, 28), without alleging any facts to support the conclusion.  The remarkably ambiguous allegations in the SAC make clear that Plaintiff's manager simply sent the Screenplay to Kramer and Davis with no direction whatsoever about what they should do with it, and certainly without any indication that it was to be sent to these defendants.  The notion that a contract can somehow be formed under these circumstances is completely untenable.  See, e.g., Donahue v. Ziv Television Programs, Inc., 245 Cal. App. 2d 593, 607 (1966) (rejecting idea submission claim because no contractual privity existed between the plaintiffs and defendant, where defendant was a former employee of an entity with whom the plaintiff had alleged an implied contract; court noted "[i]t was not [the defendant] who before or at the time of the submission

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

impliedly promised to pay and certainly he, at no time, made any express promise").

Similarly, Plaintiff has alleged that there was a submission to a corporate entity – UTA.  Even taking that allegation at face value, that does not establish privity with uninvolved third parties, namely, DeMonaco and WNP.  Because Plaintiff has failed to plead privity between himself and these defendants, his claim for breach of implied-in-fact contract against DeMonaco and WNP must be stricken.

**2.     Plaintiff's Attempt To Allege An Agency Relationship Cannot Salvage His Implied Contract Claim.**

Plaintiff's bald allegation that DeMonaco and WNP are represented "by UTA" is insufficient to establish that the two agents receiving Plaintiff's Screenplay had any authority to bind DeMonaco or WNP.  "To plead an agency relationship, a plaintiff must allege: (1) that the agent or apparent agent holds power to alter legal relations between the principal and third persons and between the principal and himself; (2) that the agent is a fiduciary with respect to matters within the scope of the agency; and (3) that the principal has right to control the conduct of the agent with respect to matters entrusted to him." Buchanan v. Neighbors Van Lines, 2010 WL 4916644, *3 (C.D. Cal. Nov. 29, 2010) (internal marks omitted).

With respect to the first prong, California recognizes two types of authority that are sufficient to permit an agent to bind a third party "principal" to a contract:  actual authority and ostensible authority.  Actual authority is that which "a principal intentionally confers upon the agent," or "by want of ordinary care, allows the agent to believe himself to possess." Cal. Civ. Code § 2316.  Ostensible authority occurs when a principal "causes or allows a third person to believe the agent to possess" authority to bind the principal.  Cal. Civ. Code § 2317; see also U.S. Commodity Futures Trading Comm'n v. Paron Capital Mgmt., LLC, 2012 WL 1156396, *3 (N.D. Cal. Apr. 6, 2012).  For ostensible authority, "the representations of the purported agent are irrelevant; instead the relevant inquiry is whether … the principals, did anything that intentionally or negligently caused" the plaintiff to

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

reasonably believe that the agent was authorized.  Id. (emphasis added).

The SAC is devoid of any facts that would show Kramer or Davis had authority to bind these defendants.  Plaintiff does not allege that they had actual authority to bind DeMonaco or WNP to any contractual obligations; instead, he asserts only that "DeMonaco is, and at all times was, represented by UTA." (SAC, ¶ 31.) That statement, even taken as true, does not come close to meeting Plaintiff's burden.[19]  Thus, even if Plaintiff knew at the time of his submission that an agent at UTA represented DeMonaco and/or WNP, and that there was a relationship between Kramer and Davis and DeMonaco's agent (neither of which is alleged), Plaintiff still could not plausibly allege a mutual understanding that Kramer or Davis had actual authority to bind DeMonaco or WNP to a contract.  "Persons dealing with an assumed agent are bound at their peril to ascertain the extent of the agent's authority."  van't Rood, 113 Cal. App. 4th at 573.

Nor has Plaintiff sufficiently pled the existence of ostensible authority.  Under California law, "[b]efore recovery can be had against the principal for the acts of an ostensible agent, three requirements must be met: The person dealing with an agent must do so with a reasonable belief in the agent's authority, such belief must be generated by some act or neglect by the principal sought to be charged and the person relying on the agent's apparent authority must not be negligent in holding that belief." J.L. v. Children's Inst., Inc., 177 Cal. App. 4th 388, 403-04 (2009) (emphasis added).  But the SAC does not contain a single allegation that the principals – DeMonaco and WNP – gave Plaintiff  (or his manager) any reason to believe that Kramer or Davis had any authority to bind them, let alone that Plaintiff (or his manager) relied on such a belief.  Nor could such an allegation be made, given that Plaintiff never had any contact with DeMonaco or WNP.

---

[19] In fact, Plaintiff alleged previously that a different agent, Charles Ferraro, represents DeMonaco.  See 12(b)(6) Motion at Section III(B)(2)(3).

17

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

In <u>Dillon v. NBCUniversal Media LLC</u>, 2013 WL 3581938 (C.D. Cal. June 18, 2013), another judge in this District rejected this kind of vague and attenuated pleading.  In that case, the plaintiff alleged that David Hurwitz, a producer of the NBC program "Stars Earn Stripes," had "actual or apparent authority to act on behalf of NBC and/or Universal" and that "Hurwitz indicated that he discussed [plaintiff]'s Work with an 'exec' of either NBC or Universal."  2013 WL 3581938, at *11.  Nonetheless, the Court granted NBCUniversal's 12(b)(6) motions as to the breach of implied contract claims, noting that the Plaintiff's allegation was "nothing more than the kind of threadbare recital of the elements of a cause of action, supported by mere conclusory statements that the Supreme Court found to be insufficient in <u>Iqbal</u> and <u>Twombly</u>."  <u>Id.</u> (internal marks omitted).  Moreover, as the Court noted, "Hurwitz's actions … are not relevant as to whether he had the authority to so bind NBC and Universal; rather, it is the actions of NBC and Universal that are the subject of inquiry."  <u>Id.</u>  Because there were insufficient allegations that Hurwitz had authority to act on behalf of NBC and Universal, those defendants could not be bound by an implied-in-fact contract based on an alleged "pitch" to Hurwitz.   <u>Id.</u>

Here, Plaintiff's allegations provide even <u>less</u> plausible and more attenuated allegations about the purported relationship between Kramer, Davis, UTA, DeMonaco, and WNP.  Plaintiff has alleged only that his Screenplay "was received by DeMonaco's <u>agency</u>, which in the entertainment industry, is receipt by DeMonaco."  SAC, ¶ 40 (emphasis added).  But such bare, conclusory allegations are insufficient to allege agency as a matter of law.  <u>See Buchanan</u>, 2010 WL 4916644, at *3 (generic allegations that defendants were all agents etc. of each other "are nothing more than legal conclusions of the type prohibited by <u>Iqbal</u> and <u>Twombly</u>") (internal citations omitted); <u>Imageline, Inc. v. CafePress.com, Inc.</u>, 2011 WL 1322525, *4 (C.D. Cal. Apr. 6, 2011) (same).

Indeed, allowing an implied-in-fact contract claim against DeMonaco and WNP based on Plaintiff's bare allegations of supposed authority would dramatically

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

expand the law of implied-in-fact contracts, with absurd consequences.  If any submission to any agent at a large, successful agency could bind all of the clients of all of the agents, would-be authors like Plaintiff could force nearly any member of the entertainment industry into court to defend against meritless claims, no matter how attenuated the relationship between the parties involved.  As one court noted, "countless unsolicited scripts are submitted to numbers of individuals on studio lots every day."  Meta-Film, 586 F. Supp. at 1357.  A contract claim cannot be based on such shaky ground, nor has any court adopted this expansive theory of privity.  Plaintiff's implied contract claim should be dismissed for this additional reason.

### 3.    Plaintiff's Claim Fails Because He Failed To Adequately Allege Other Elements Required For An Implied-In-Fact Contract.

Plaintiff also has failed to include other factual allegations necessary to support his implied contract claim – namely, that the Screenplay was submitted under the express condition that he would be paid if UTA (or, under his theory, any of UTA's clients) "used" his ideas, and that UTA, knowing of this broad condition, voluntarily accepted the submission of the ideas.  California law is clear that, to state a claim for breach of implied-in-fact contract, the plaintiff must allege facts from which the court can reasonably infer that:  (1) the plaintiff clearly conditioned the submission of his idea to the defendant upon the defendant's promise to pay for it if the defendant used it; and (2) the defendant, knowing this condition before the plaintiff disclosed the idea, voluntarily accepted the submission of the idea.  Desny, 46 Cal. 2d at 738-739.  See also Faris,  97 Cal. App. 3d at 318 ("for an implied-in-fact contract one must show: that he or she prepared the work; that he or she disclosed the work to the offeree for sale; under all circumstances attending disclosure it can be concluded that the offeree voluntarily accepted the disclosure knowing the conditions on which it was tendered").  Thus, "no contract may be implied where an idea has been disclosed not to gain compensation for that idea but

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

for the sole purpose of inducing the defendant to enter a future business relationship." Aliotti v. R. Dakin & Co., 831 F.2d 898, 902 (9th Cir. 1987).

In its prior ruling dismissing Plaintiff's breach of implied contract claim, this Court pointed these requirements, noting  that Plaintiff had "identified no allegations to show that UTA ever understood [Plaintiff's intent to be compensated], or agreed to that condition before receiving the idea." Dkt. No. 26 at 3-4.  As the Court stated, "there needs to be more than a unilateral offer and Benel only offers argument as to his intent, not UTA's understanding or conduct." Id. at 4.  Plaintiff failed to allege facts that "show that UTA voluntarily accepted the conveyance on the condition that it had an obligation to pay for it"; instead, "[t]he facts alleged by Benel would remove any requirement of assent or an agreement that is the heart of the claim he asserts." Id. at 5.

The SAC does not correct this critical defect.  Plaintiff now claims that his manager asked for "permission to submit the Screenplay," but requesting and receiving permission to send someone something does not constitute an understanding or agreement as to payment, let alone an understanding or agreement that the two agents involved were effectively contracting for every client of the entire agency.  The email correspondence attached to the SAC states simply that the manager "look[ed] forward to hearing [Davis's] thoughts on the material," (SAC, Ex. C).  The new allegations that UTA and Peck's clients are involved in purported unrelated "entertainment-related projects," and that Peck's wife is represented by UTA (SAC, ¶¶ 26-28), are entirely irrelevant; neither provides any factual support for an assumption that any submission would result in an implied contract with every client represented by any agent at UTA.

Plaintiff's new allegations echo those made by the plaintiff in Faris.  In that case, the plaintiff claimed that his "idea was to go to Mr. Enberg with this format in an attempt to go with me on it."  97 Cal. App. 3d at 315-16.  The court held that there was "no reason to think that Enberg, or anyone else with whom Enberg spoke, would

20

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

have believed that Faris' submission was an offer to sell something, which if used would oblige the user to pay." Faris 97 Cal. App. 3d at 319.  Similarly, although Plaintiff apparently hoped to enter into some kind of business relationship with UTA (SAC, ¶ 22), his mere hope for a prospective business relationship is not a mutual understanding, and does not state a Desny claim.  See also Aliotti, 831 F.2d at 902.[20]

Plaintiff's allegations are even more far afield with respect to DeMonaco and WNP.  There are no facts alleged that can support a conclusion that Plaintiff's manager, Kramer, and Davis arrived at a clear and mutual understanding that Kramer and Davis were accepting the condition of payment on behalf of all of UTA's clients such that Plaintiff would be paid if any client of the agency ever used a similar idea.  As this Court previously found, if Plaintiff did not have a mutual understanding with UTA – the only party with whom he had contact – then it certainly cannot be said there was a mutual understanding with DeMonaco or WNP.  Because Plaintiff's allegations are woefully inadequate, despite three opportunities to plead a claim, his breach of implied contract claim should be dismissed with prejudice.

## C.   Plaintiff's Declaratory Relief Claim Also Should Be Dismissed.

Plaintiff's SAC asserts a claim for declaratory relief against all Film Defendants.  This claim also should be stricken because it is based on the same inadequate allegations made for Plaintiff's implied contract claim, and because it seeks relief foreclosed by controlling United States Supreme Court authority.

### 1.   Plaintiff's Declaratory Relief Claim Is Impermissibly Duplicative.

It is well settled that "[t]he declaratory relief statute should not be used for the

---

[20] In Faris, the plaintiff also argued that Enberg had solicited the submission by returning his phone call.  The court rejected the argument, holding that "[i]t would be entirely inconsistent with Desny to hold that an implied-in-fact contract could be created because a telephone call was returned or because a request was made for an opportunity to read the work that was unconditionally submitted."  Id.  The same result is compelled here.  Even assuming that Plaintiff's manager sought and was granted permission to send Plaintiff's Screenplay to UTA, that does not demonstrate that it was solicited, let alone plead facts sufficient to meet his burden of showing a mutual understanding.

SPECIAL MOTION TO STRIKE
DWT 26388691v6 0020040-000121

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

purpose of anticipating and determining an issue which can be determined in the main action.  The object of the statute is to afford a new form of relief where needed and not to furnish a litigant with a second cause of action for the determination of identical issues."  <u>General of America Ins. v. Lilly</u>, 258 Cal. App. 2d 465, 470 (1968).  Where a declaratory relief claim does not clarify the rights and obligations of the parties beyond the other claims in the action, or where "[t]he issues invoked in [the declaratory-relief claim] already were fully engaged by other causes of action," the claim for "declaratory relief [i]s unnecessary and superfluous."  <u>Hood v. Superior Court</u>, 33 Cal. App. 4th 319, 324 (1995).[21]

The declaratory relief claim here purports to arise from the same conduct as his implied contract claim and seeks the same relief – compensation and credit.  <u>Compare</u> SAC, ¶ 73 with ¶ 78.  That issue, however, is "fully engaged by" his implied contract claim, making the declaration Plaintiff seeks "unnecessary and superfluous."  For this reason, and because this claim suffers from the same defects as his contract claim, it should be dismissed with prejudice.

### 2. Plaintiff's Request For A Writing Credit Is A Disguised Reverse-Passing-Off Claim That Is Barred As A Matter of Law.

Plaintiff's claim for declaratory relief also appears to be an inartfully crafted

---

[21] Numerous federal courts have followed this rule.  <u>See, e.g.</u>, <u>Howard v. First Horizon Loan Corp.</u>, 2013 U.S. Dist. LEXIS 85585, *16 (N.D. Cal. June 18, 2013) (dismissing declaratory relief against Metlife where all other substantive claims were dismissed); <u>D.R. Horton L.A. Holding Co. v. Am. Safety Indem. Co.</u>, 2012 U.S. Dist. LEXIS 1881, *65 (S.D. Cal. Jan. 5, 2012) (finding declaratory relief claim "unnecessary and superfluous" because issues raised in that claim fully addressed in other claims); <u>Goodspeed v. Nichols</u>, 2012 U.S. Dist. LEXIS 165927, *23-*24 (E.D. Cal. Nov. 19, 2012) (well-recognized that where plaintiff has alleged substantive causes of action, declaratory relief claim should not be used as a superfluous additional claim); <u>Hupp v. City of Beaumont</u>, 2011 U.S. Dist. LEXIS 151709, *18 (C.D. Cal. Dec. 12, 2011) (declaratory relief "should not be used to determine issues already fully engaged by other causes of action").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

"reverse-passing-off" claim under Section 43(a) of the Lanham Act.[22]  Plaintiff alleges that the Film Defendants' and others engaged in an "orchestrated, willful and malicious effort … to steal the core plot and story of Plaintiff's copyrighted expression, camouflage it, and pass it off as the script and motion picture, *The Purge*[.]"  SAC ¶ 59, 76.  These allegations parallel Section 43(a) of the Lanham Act, which prohibits the use in commerce of "any false designation of origin … which is likely to cause confusion, or to cause mistake, or to deceive … as to the origin, sponsorship, or approval of [] goods, services, or commercial activities[.]"  15 U.S.C. § 1125(a)(1)(A).

But the United States Supreme Court has held that a plaintiff cannot maintain a reverse-passing-off claim based on a defendant's purported use of the plaintiff's ideas, concepts, or "communicative products," like Plaintiff's screenplay here. Dastar Corp. v. 20th Century Fox Film Corp., 539 U.S. 23 (2003).  In Dastar, the defendant purchased videotapes of a television series called "Crusade in Europe" ("Crusade") that had fallen into the public domain; edited and repackaged the series, and retitled it "World War II Campaigns in Europe" ("Campaigns").  Id.  Although much of the original content was retained, the new series did not give any credit to the original series.  Id. at 27.  The plaintiffs sued, alleging that the failure to give them credit violated Section 43(a) of the Lanham Act.  Id.  The plaintiffs argued that by "marketing and selling Campaigns as its own product without acknowledging its nearly wholesale reliance on the Crusade television series," the defendant was "likely to cause confusion as to the origin of his or her goods."  Id. at 31.

The Supreme Court rejected the claim, however, finding the phrase "origin of goods" in the Lanham Act "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication

---

[22] Reverse-passing-off "occurs when one party obtains a second party's goods, removes the second party's name, and then markets the product under its own name." Aagard v. Palomar Builders, 344 F. Supp. 2d 1211, 1217 (E.D. Cal. 2004).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

embodied in those goods." <u>Dastar</u>, 539 U.S. at 37.  Any other interpretation of that phrase, the Court reasoned, "would not only stretch the text, but [] would be out of accord with the history and purpose of the Lanham Act and inconsistent with precedent." <u>Id.</u> at 32.  The Court also refused to create an exception to this rule for communicative products – those valued "for the intellectual content that [they] convey." <u>Id.</u> at 33.  "[A]ccording special treatment to communicative products [would] cause[] the Lanham Act to conflict with the law of copyright, which addresses that subject specifically," and impermissibly extend "trademark and related protections into areas traditionally occupied by patent or copyright." <u>Id.</u>

Courts have made clear that the <u>Dastar</u> rule also bars reverse-passing-off claims based on a defendant's alleged use of a plaintiff's copyrighted work.  For example, in <u>Williams v. UMG Recordings</u>, 281 F. Supp. 2d 1177, 1185 (C.D. Cal. 2003), the plaintiff reedited and rescored a film entitled "Baller Blockin," and allegedly incorporated his copyrighted narration script into the film. <u>Id.</u> at 1179.  The plaintiff sued after learning that his name did not appear in the film's credits, alleging violation of the Lanham Act, among other claims.  <u>Id.</u>  In finding that <u>Dastar</u> barred the plaintiff's reverse-passing-off claim, the court explained that "the Supreme Court's holding [in <u>Dastar</u>] did not depend on whether the works were copyrighted or not," and instructed that the plaintiff's claim "is more appropriately addressed under copyright law rather than under the Lanham Act." <u>Id.</u> at 1185.  <u>See</u> also <u>A Slice of Pie Productions v. Wayans Bros. Entm't</u>, 392 F. Supp. 2d 297, 312-313 (D. Conn. 2005) (rejecting claim that defendants violated Section 43(a) of Lanham Act by purportedly misrepresenting the origin of their film "White Chicks," which plaintiff claimed was based on his copyrighted screenplay).[23]

---

[23] <u>See</u> also <u>Hustlers Inc. v. Thomasson</u>, 73 U.S.P.Q.2d 1923, 1925 (N.D. Ga. Dec. 29, 2004) (granting summary judgment for defendants on false designation of origin claim based on allegation that ownership of copyrights to musical compositions was incorrectly attributed); <u>Carroll v. Kahn</u>, 2003 WL 22327299, *6 (N.D.N.Y. Oct. 9, 2003) ("the Supreme Court left the protection to the creative talent behind communicative products to the copyright laws").

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Plaintiff's masked reverse-passing-off claim is similarly barred. His declaratory relief claim complains that the Film Defendants allegedly used his screenplay without crediting him. But <u>Dastar</u> and its progeny make clear that "any protection for the misappropriation of [] content comes from the Copyright Act, not from the Lanham Act." <u>Slice of Pie</u>, 392 F. Supp. 2d at 313. Accordingly, his declaratory relief claim should be stricken.[24]

## V.   CONCLUSION

For all the reasons set forth above, this Court should strike Plaintiff's implied contract and declaratory relief claims alleged against Film Defendants, and award them attorneys' fees and costs pursuant to C.C.P. § 425.16(c).

DATED: March 13, 2015          DAVIS WRIGHT TREMAINE LLP


                               By: /s/ Kelli Sager
                                       Kelli L. Sager
                               Attorneys for Defendants
                               UNIVERSAL CITY STUDIOS LLC,
                               BLUMHOUSE PRODUCTIONS, LLC,
                               OVERLORD PRODUCTIONS, LLC, PLATINUM
                               DUNES PRODUCTIONS,  WHY NOT
                               PRODUCTIONS, INC., and JAMES DEMONACO

---

[24] If Plaintiff's declaratory relief claim is <u>not</u> intended as a reverse-passing-off claim under Section 43(a), the claim would be preempted by federal copyright law, and should be dismissed for this additional reason. The Screenplay falls within the subject matter of copyright, and the declaratory relief claim, which is based solely on the purported copying of Plaintiff's screenplay, is indistinguishable from his copyright infringement claims. The declaratory relief claim thus would fail for this additional reason. <u>See</u> 17 U.S.C. § 301 ("all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . are governed exclusively by this title"); <u>Jules Jordan Video, Inc. v. 144942 Canada Inc.</u>, 617 F.3d 1146, 1152 (9th Cir. 2010) ("[s]ection 301 of the Act provides for exclusive jurisdiction over rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified in the Act"); <u>Moore v. Lightstorm Entm't</u>, 2013 WL 4052813, *2 (D. Md. Aug. 9, 2013) ("[t]he Court also dismissed Moore's 'claims' for an accounting and declaratory relief, noting that these were essentially requests for relief under the Federal Copyright Act and thus preempted"); <u>Eb-Bran Prods., Inc. v. Warner Elektra Atl., Inc.</u>, 2005 WL 3107738, *3 (W.D. Mich. Nov. 18, 2005) (claims for "injunctive and declaratory relief were properly recharacterized as copyright claims and thus completely preempted by the Copyright Act").

SPECIAL MOTION TO STRIKE
DWT 26388691v6 0020040-000121