UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5577 MWF (MRWx) | Date | November 5, 2018 |
|---|---|---|---|
| Title | Jordan-Benel v. Universal City Studios | | |

Present: The Honorable   Michael R. Wilner

| Veronica Piper | n/a |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None present | None present |

**Proceedings:**   ORDER RE: DISCOVERY MOTIONS

1.  This is a civil action for copyright infringement. Plaintiff Jordan-Benel contends that he developed an idea that became the basis for the film "The Purge" and its successful progeny. The film's author, Defendant DeMonaco, argues that he independently wrote the film long before Plaintiff began circulating his iteration of the story. To back this up, the Film Defendants (that is, Mr. DeMonaco and various entertainment industry entities) point to e-mails and draft screenplays that pre-date Mr. Jordan-Benel's work.[1]

2.  Earlier in the action, Plaintiff and his forensic computer expert claimed that there were anomalies with the electronically-generated evidence (the e-mails and computer files) that they received from the defense. After extended proceedings, the Court ordered the Film Defendants to produce some of those items in native format (that is, in their original format as used in the software or application that generated them) to "allow a limited amount of additional discovery" regarding the documents' metadata. (Docket # 190 at 1.)

3.  That supplemental discovery led to the two pending motions. Plaintiff moved to compel the production of several thousand more electronic records in native format. Plaintiff contends that he has "compelling evidence that numerous files were manipulated, manufactured, or modified" and "are not authentic." (Docket # 207 at 10-11.)

---

[1] To be fair, the Film Defendants also rely on other evidence to lay out the "independent creation" defense, including Mr. DeMonaco's handwritten notebooks, contemporaneous testimony of percipient witnesses, etc.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5577 MWF (MRWx) | Date | November 5, 2018 |
|---|---|---|---|
| Title | Jordan-Benel v. Universal City Studios | | |

4.  The Film Defendants disagree. They moved for a protective order to shut down Plaintiff's "abusive discovery gamesmanship" because the "tampering accusations have been refuted" by the parties' cumulative forensic analysis. (Docket # 213 at 7, 8.)

5.  The Court reviewed the parties' extensive motion submissions, and the reports, declarations, and cross-declarations of their expert analysts. The Court also conducted another extensive hearing with the lawyers (all after hearing approximately 10 hours of live testimony several weeks ago). The Court now concludes that there is no basis to require the Film Defendants to produce thousands of e-mails in native format as Plaintiff requests. As for the draft screenplay files, though, the Court will allow a minimal amount of further sampling of these items in native format. The motions to compel and for a protective order are therefore granted in part and denied in part as set forth below.

* * *

6.  The Court repeats its earlier iteration of the key principles involved in discovery motions such as these. First, a litigant is entitled to conduct pretrial discovery regarding "any nonprivileged matter that is relevant to a party's claim or defense." Fed. R. Civ. P. 26(b)(1). Second, relevant discovery must be "proportional to the needs of the case, considering [1] the importance of the issues at stake in the action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." Id.

7.  Analysis of electronic files in native format – particularly when there is a credible basis to believe that materials have been altered – can play a significant role in litigation. Singh v. Hancock Natural Resources Group, Inc., 2017 WL 710571 at *7 (E.D. Cal. 2017) ("Plaintiffs previously produced e-mails that appeared to have been altered[.] Plaintiffs' refusal to comply with the Court's order to produce the metadata for the e-mails – which would reveal the alterations – strongly suggests this is the correct conclusion."); Hullinger v. Anand, No. CV 15-7185 SJO (FFMx), 2016 WL 7444623 at *3, 6 (C.D. Cal. 2016) (ordering production of metadata where document production had "readability issues" and e-discovery vendors prevented from meeting to resolve "garbled" data fields).

8.  The decision of whether to require the production of materials in native format is itself governed by the standard rules of relevance and proportionality. See, e.g., Bailey v. Alpha Technologies Inc., 2017 WL 2378921 at *2 (W.D. Wash. 2017) ("the Court finds that metadata

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5577 MWF (MRWx) | Date | November 5, 2018 |
|---|---|---|---|
| Title | Jordan-Benel v. Universal City Studios | | |

and native format production are relevant and proportional to the needs of discovery" in action). A party seeking extensive native format discovery may be required to demonstrate more than "a few isolated examples" or "a few alleged discrepancies" with an electronic production, especially in the absence of proof that a producing party's "preservation and production of ESI was inadequate." Larsen v. Coldwell Banker Real Estate Corp., No. SA CV 10-401 AG (MLGx), 2012 WL 359466 at *7-8 (C.D. Cal. 2012). "A producing party should not be required to undertake more heroic efforts merely because the party seeking discovery is suspicious of the efforts undertaken by the producing party." Id. at *8 (quoting The Sedona Principles: Best Practices Recommendations & Principles for Addressing Electronic Document Production, Principle 7, at comment 6.a).

9.     A district court's ruling on a discovery motion, including issues regarding the "proportionality" component of Rule 26(b)(1), "are ordinarily reviewed for abuse of discretion." Stevens v. Corelogic, Inc., 899 F.3d 666, 676 (9th Cir. 2018).

\* \* \*

10.    In its previous orders in July and August 2018 (Docket # 175, 190), the Court found that the balancing of the Rule 26(b)(1) factors tipped somewhat in favor of allowing additional electronic discovery. Evidence of the timing of Mr. DeMonaco's creation of the Purge-related materials was potentially relevant to the claims and defenses in the case. The Court also easily worked its way through the first four factors, finding that additional evidence about the electronic evidence was proportional to the issues in the case, the amount of money in dispute, and the Film Defendants' superior resources and access to the info [factors 1-4].

11.    But the Court now has additional technical reports from the parties' experts. Those reports are based on the results of forensic work after the August evidentiary hearing. This information now leads the Court to a different conclusion about the potential value of additional, prolonged inquiry into the provenance of Mr. DeMonaco's electronic materials [factors 5-6].

12.    Plaintiff's computer expert previously testified about anomalies he observed with various e-mails that Mr. DeMonaco sent and received with versions of the Purge screenplay. The Court concluded that Plaintiff demonstrated "colorable" suspicions about certain items. On that basis, the Court ordered the Film Defendants to produce those items in native format to allow for a more complete analysis of them. (Docket # 190.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5577 MWF (MRWx) | Date | November 5, 2018 |
|---|---|---|---|
| Title | Jordan-Benel v. Universal City Studios | | |

13. The result today: "FTI analyzed this information for anomalies and noted no irregularities." The tech analyst further noted that the e-mail metadata "do support authenticity" of the e-mails, even though the expert contended that other observations prevented him from concluding "with certainty the authenticity of these e-mails." (Docket # 211-3 at 10.)

14. If further technical review of the <u>most</u> suspicious e-mails on Plaintiff's wish list – remember that the Court let Plaintiff pick the e-mails to be analyzed – then analysis of <u>less</u> suspicious (or, more fairly, non-suspicious) e-mails is less likely to lead to valuable results. The unexceptional results of the previous tranche of additional discovery significantly undermine Plaintiff's claim that data from many more of the DeMonaco emails is remotely proportional at this stage.[2]

15. Plaintiff's motion and expert report then pivot to alleged discrepancies in another e-mail chain <u>not</u> previously brought to the Court's attention for which Plaintiff neither asked for nor analyzed metadata. Plaintiff contends that the face of that e-mail raises concerns about the legitimacy of communications involving the producer of the Purge films. (Docket # 211-3 at 8.)

16. Let's put aside the "whack-a-mole" nature of Plaintiff's evolving complaints about e-mails that he's possessed for months. The defense expert presented a thorough, convincing, and supported explanation for the perceived date-omission issue that Plaintiff raised (save for the iPad-invention-date tangent discussed at the hearing). (Docket # 213-3 at 8-11.) Moreover, the defense lawyers suggested that they are willing to provide the producer's e-mails to Plaintiff in native format anyway. (Docket # 224-7.) That moots the need for more discovery regarding this e-mail trail from Mr. DeMonaco's e-mail, and thins Plaintiff's evidentiary submission even more.

17. Bottom line – Plaintiff does not convincingly demonstrate to the Court that a deeper dive into the many e-mails will produce any evidence to resolve Plaintiff's suspicions

---

[2] The lone exception is Plaintiff's strained analysis of an e-mail trail from January 22, 2010. Plaintiff contends that his expert's time-zone-based analysis led him to conclude – <u>without</u> reference to the available metadata – that the email "was edited or manufactured and is **not authentic**." (Docket # 211-3 at 8 (dramatic emphasis in original).) The defense convincingly relied on the very metadata that Plaintiff demanded to show that the e-mails were properly sequenced based on the independent local time of AOL's servers. That explanation was ingeniously bolstered by non-DeMonaco e-mails that the Film Defendants' expert was able to present with the same phenomenon. (Docket # 213-4 at 8-12.) Plaintiff's expert offered no credible response. (Docket # 226-6 at 13.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5577 MWF (MRWx) | Date | November 5, 2018 |
|---|---|---|---|
| Title | Jordan-Benel v. Universal City Studios | | |

about their authenticity. That raises real doubt about the relevance and proportionality of his updated discovery demand. The Court exercises its discretion under Rule 26 to deny the request for native examination of all of the DeMonaco e-mails. Singh, 2017 WL 710571 at *7; Bailey, 2017 WL 2378921 at *2; Stevens, 899 F.3d at 676.

* * *

18. Then there's Plaintiff's continued complaints about the "Final Draft" software files with which Mr. DeMonaco generated numerous iterations of the screenplays. Plaintiff argues that date and textual anomalies in some of those documents demonstrate "unusual manipulation including backdating the creation date." (Docket # 209 at 11.) The FTI analyst based that statement on his analysis of "Final Draft," the program's settings, and its functions when he installed a mid-2000s version of the software on a mid-2000s computer for testing. (Docket # 209 at 7-9, 211-3 at 11-19.)

19. The FTI expert insists that he could not replicate some of the alleged discrepancies and formatting modifications in the manner that Mr. DeMonaco described in his deposition and declaration. In response, the defense attacked FTI's methodology – particularly the use of a Windows-based device rather than an Apple computer that Mr. DeMonaco actually used – and other aspects of Plaintiff's analysis of the Final Draft materials. (Docket # 213-3 at 11-20.)

20. This component of the parties' dispute appears to derive from Mr. DeMonaco's own (inadvertent?) involvement in the data management portion of the case. The defense presented evidence that Mr. DeMonaco's personal computer – the one on which the Final Draft files had apparently been generated and stored – crashed in early 2009. That (a) prevented him from producing the original device in this civil litigation years later, and (b) led him to reconstruct those files by downloading them from his AOL e-mail account. And then, (c) Mr. DeMonaco personally transferred materials from his current computer to his lawyers and their tech advisors after the lawsuit began. (The Epiq staff may have directly re-done some of the imaging at a later time.) That may have involved opening files and printing / saving the items in PDF format.

21. Could analysis of this information lead one to conclude that Mr. DeMonaco falsified or tampered with these files to gain an advantage in this lawsuit? Perhaps. Could there be a plausible, non-nefarious explanation for the observed data glitches? Same response. But the perceived defects with the data may route back to Mr. DeMonaco's unfortunate role in handling this data. There remains a concern about the adequacy of the preservation of this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5577 MWF (MRWx) | Date | November 5, 2018 |
|---|---|---|---|
| Title | Jordan-Benel v. Universal City Studios | | |

material, particularly after the commencement of the litigation. Larsen, 2012 WL 359466 at *7-8. Additional limited discovery in this area does not seem unreasonable, particularly given the centrality of the screenplay files (rather than the corroborative e-mails) to Plaintiff's claims and the defense's assertions.

    22.    But there are hundreds of those files, too. And, in response to the Court's direct questions, the parties' lawyers could not articulate a principled method for moving forward with this prong of discovery in a proportional way. Plaintiff says he needs all of the files for a comprehensive review, while the Film Defendants argue that none should be turned over. In an absolutely discretionary decision, the Court directed Plaintiff to pick twenty additional Final Draft files for review in native format. That figure was intended to allow Plaintiff the opportunity to examine a reasonably broad amount of data (each screenplay file appears to exceed 100 pages of text) without unduly burdening the defense or focusing on irrelevant materials.[3] The parties are further directed to meet and agree upon other system files/data that reasonably should be produced with the specified Final Draft items.[4]

\* \* \*

    23.    The Court makes no finding at present about whether to award Rule 37(a)(5) fees. The parties are directed to separately submit their fee requests (if desired) and the appropriate statements regarding "substantial justification" under the rule.

    24.    The Court also memorializes its finding regarding the sealing of materials associated with these discovery motions. The Court finds good cause to order that the evidentiary materials submitted in the course of the motion practice (which include expert reports, raw e-mails with personal identifiers, etc.) be filed under seal. Oliner v. Kontrabecki, 745 F.3d 1024, 1026 (9th Cir. 2014). However, the parties must file unsealed, publicly-accessible versions of their briefs by Friday, November 9. If minimal redactions are necessary

---

[3] The Court rejects Plaintiff's contention that any burden on Plaintiff under Rule 26 "is minimal" given that the electronic evidence has already been secured and need only be produced with a few hours' work. (Docket # 207 at 14.) As is manifest from the docket, there is an ever-increasing cost associated with the forensic discovery process for both sides. An order requiring a massive production of more data will undoubtedly run up those costs – with fading hope of resolving the controversy.

[4] Plaintiff also sought to reopen the deposition of Mr. DeMonaco. However, at the motion hearing, Plaintiff's lawyers were unable to explain the need for further questioning. The request to reopen his deposition is denied without prejudice.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-5577 MWF (MRWx) | Date | November 5, 2018 |
|---|---|---|---|
| Title | Jordan-Benel v. Universal City Studios | | |

for privacy reasons (FRCP 5.2 and Local Rule 5.2.1), appropriately redacted versions may be filed.